## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NEAL MILLER and DONNA MILLER,                    :
Individually and as Administrators of the Estate of  :
RYAN MILLER, a Minor, Deceased                   :
5723 Charles Street                              :
Philadelphia, PA 19135                           :
     Plaintiffs           :
  v.                                    :
          :
CITY OF PHILADELPHIA                             :  NO.
1515 Arch Street                                 :
Philadelphia, PA 19102                           :
          :
  and                                  :
CITY OF PHILADELPHIA POLICE DEPARTMENT           :
1515 Arch Street                                 :
Philadelphia, PA 19102                           :
          :
  and                                  :
POLICE OFFICER JOSEPH WOLK, Individually and     :
in his Official Capacity,                        :
c/o City of Philadelphia                         :
1515 Arch Street                                 :
Philadelphia, PA 19102                           :
          :
  and                                  :
GARY BOVE                                        :
4574 Melrose Street                              :
Philadelphia, PA 19124                           :
          :
  and                                  :
POLICE OFFICERS JOHN DOE 1-15                     :
Individually and in their Official Capacities    :
c/o City of Philadelphia                         :
1515 Arch Street                                 :
Philadelphia, PA 19102                           :
          :
  and                                  :
POLICE OFFICERS JANE DOE 1-15                     :
Individually and in their Official Capacities    :
c/o City of Philadelphia                         :
1515 Arch Street                                 :
Philadelphia, PA 19102                           :
     Defendants          :

1

## COMPLAINT – CIVIL ACTION

Plaintiffs, Neal & Donna Miller, h/w, Administrators of the Estate of Ryan Miller, a Minor, Deceased (hereinafter "Plaintiffs"), by and through their undersigned counsel, hereby bring this action against Defendants City of Philadelphia, City of Philadelphia Police Department, Police Officer Joseph Wolk, Gary Bove and 30 unidentified police officers identified herein as John Doe 1 through John Doe 15 and Jane Doe 1 through Jane Doe 15, and aver as follows:

## INTRODUCTORY STATEMENT

1.      This is a civil rights action for money damages brought under 42 U.S.C. §§ 1983, 1985 and 1988 as well as the Fourth and Fourteenth Amendments to the United States Constitution, which also raises supplemental state law claims against the above-captioned defendants.

2.      The case revolves around the needless and tragic death of 15-year old Ryan Miller, Plaintiff's Decedent, who was pursued to his death for an alleged non-violent traffic offense while riding a motorbike by Philadelphia police officers, as well as by a rogue civilian who took it upon himself, without any right or legal privilege, to join in with uniformed police in an illegal, improper and unlawful high-speed chase, which culminated in the death of the minor Decedent.

## THE PARTIES

3.      Plaintiffs, Neal & Donna Miller, h/w, are adult individuals, and citizens and residents of the Commonwealth of Pennsylvania, residing therein at 5723 Charles Street, Philadelphia, PA 19135.

4.    Plaintiffs are co-administrators of the Estate of Ryan Miller, a Minor, Deceased (hereinafter "Decedent" or "Plaintiffs' Decedent"), who died on May 7, 2019, at age 15, and are the parents of the Decedent.

5.    Defendant, City of Philadelphia (hereinafter referred to as "City"), is a municipal corporation of the First Class of the Commonwealth of Pennsylvania, with its principal office located at 1515 Arch Street, Philadelphia, Pennsylvania.

6.    Defendant, City of Philadelphia Police Department is a department of the City of Philadelphia responsible for law enforcement and investigations within the City of Philadelphia, Pennsylvania, and is the direct employer of all police officers in the City, including Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15.

7.    Defendant, Police Office Joseph Wolk, individually and in his official capacity, was at all times relevant hereto a police officer employed by the City of Philadelphia and/or Philadelphia Police Department and was, at all times relevant, acting within the course and scope of his employment as a Philadelphia Police Officer.

8.    Defendant, Gary Bove is an adult individual and citizen and resident of the Commonwealth of Pennsylvania, residing therein at 4574 Melrose Street, Philadelphia, PA 19124.

9.    Defendants Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 are fictitious designations for other Philadelphia police officers, currently unknown to Plaintiffs, but known to the Defendant City and Defendant Police Department, who were or may have been involved in the course of events from which this action arose.

10.    Defendants, Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 (hereinafter referred to collectively as the "Police Defendants")

were at all times relevant duly appointed and acting officers of the City of Philadelphia Police Department and/or the City of Philadelphia, acting under the color of law and under the statutes, ordinances, regulations, policies, customs and usages of the City of Philadelphia.

11.     Defendants, Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 are being sued in their individual and official capacities.

12.     Defendants, Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 were at all times relevant acting within the course and scope of their employment with the City of Philadelphia Police Department.

13.     At all times relevant, Defendants City of Philadelphia and City of Philadelphia Police Department had responsibility over the policies, procedures, practices and training of police officers under the employ of the City of Philadelphia Police Department, including Police Officers Joseph Wolk, John Does 1-15 and Jane Does 1-15.

14.     At all times relevant hereto, Defendants City of Philadelphia and City of Philadelphia Police Department had responsibility for hiring, supervising, retaining, disciplining and terminating police officers under the employ of the City of Philadelphia Police Department, including Police Officers Joseph Wolk, John Does 1-15 and Jane Does 1-15.

15.     At all relevant times, the unconstitutional actions of Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 were the result of the policies, practices, customs and/or procedures of the City of Philadelphia and/or City of Philadelphia Police Department, which were implemented, overseen, approved, ratified and/or controlled by the City and the Police Department.

16.     Defendant, the City of Philadelphia, is a municipality that owns, operates, manages, controls and/or is otherwise responsible for the City of Philadelphia Police Department, including the employment, supervision and retention of Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15.

17.     Defendant City of Philadelphia funds and maintains the City of Philadelphia Police Department, which operates under and administers a set of law enforcement policies, procedures, practices and customs involving the hiring, training, supervision, retention and termination of its officers, employees, agents, servants and ostensible agents, including but not limited to Police Officer Joseph Wolk, Police Officers John Does 1-15 and Police Officers Jane Doe 1-15.

18.     These policies, practices, and customs include training in traffic encounters with civilians, the use of force, vehicular pursuits and the safe operation of police vehicles.

19.     The City of Philadelphia is being sued individually and under the theory of *respondeat superior*.

20.     The policies, procedures, practices and protocols include written directives that are created, implemented, drafted, revised, ratified and/or approved by Defendants, City of Philadelphia and/or City of Philadelphia Police Department, and include Directive 9.4, relating to vehicular pursuits.

## STATEMENT OF JURISDICTION

21.     The Court has federal subject matter jurisdiction in this Action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims under 42 U.S.C. §§ 1983, 1985 and 1988 arise under the laws of the United States.

22.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs'

additional claims under state law because Plaintiffs' state law claims relate to Plaintiffs'

federal law claims, arise out of a common nucleus of operative facts, and form part of the

same case.

## FACTUAL BACKGROUND

23.     The primary and most fundamental purpose of a police department, and the core of the job

of being a police officer, is the protection of the safety and welfare of the general public

through the enforcement of laws.

24.     At all times relevant hereto, it was known in and throughout the law enforcement

community, including by all of the Police Defendants named herein, that vehicular pursuits

are amongst the most dangerous of all police activities.

25.     Police vehicular pursuits are responsible for hundreds of deaths annually, and in the period

from 1996 through 2015, an average of 355 persons were killed annually in police pursuit-

related crashes.[1]

26.     The City of Philadelphia and City of Philadelphia Police Department know that the safety

of residents must be a primary consideration for Philadelphia Police Officers participating

in any vehicular pursuit.

27.     Defendants also know that vehicular pursuits in urban population centers are dangerous

and may result in unintentional deaths and/or serious injuries to suspects, police and

bystanders.

---

[1] U.S. Dept. of Justice Special Report, "Police Vehicle Pursuits, 2012-2013" NCJ 250545 (May, 2017), available at: https://www.bjs.gov/content/pub/pdf/pvp1213.pdf

28.     In what has been held out to the public as an effort to protect innocent citizens and bystanders from the dangers posed by unnecessary and unreasonably dangerous police vehicular pursuits, as well as to insulate itself from legal liability, the Philadelphia Police Department promulgated and implemented a policy, designated as Directive 9.4 ("the Directive"), which governs vehicular pursuits by Philadelphia Police Officers.  See Exhibit "A".

29.     The Directive limits vehicular pursuits to select circumstances to avoid unnecessary risk to health and life. See Exhibit "A."

30.     By its express terms, Directive 9.4 allows Philadelphia police officers to engage in vehicular pursuit only under specifically enumerated and limited circumstances.

31.     Specifically, Directive 9.4 provides that in order to initiate a pursuit, the pursuit must be "necessary to effect the arrest or prevent escape, AND…the officer has probable cause to believe that the person being pursued has committed or attempted a forcible felony…or possesses a deadly weapon…" See Exhibit "A."

32.     Despite its public-facing pursuit "policy" as embodied by Directive 9.4, the actual policy observed and pursued by the Philadelphia Police Department is extremely different, and almost affirmatively contradicts and disregards the dictates of the Directive.

33.     In actual practice, it is the policy, practice and custom of the Philadelphia Police Department to initiate highly dangerous police pursuits under circumstances where those pursuits would not only be unlawful under Directive 9.4, but where the substantial likelihood of death or bodily injury to fleeing suspects and the public at large is clearly present and utterly disregarded.

34.     In particular, and as relevant to this action, police officers employed by the City of Philadelphia and/or City of Philadelphia Police Department have an ongoing policy, practice and custom of aggressively engaging in highly dangerous vehicular pursuits of dirt bikes, ATVs and other off-road vehicles when operated on the streets of Philadelphia.

35.     Through a consistent pattern and practice of condoning its police officers' pervasive misconduct and abuse of authority evidenced by these unlawful vehicular pursuits, while simultaneously relying on the public-facing provisions of Directive 9.4 as a cover for their actual policies and practices, the Defendant City and Defendant Police Department have engaged in deliberate, systematic and ongoing attempts to cover up the dangerous policy, practice and custom of pursuing individuals for riding dirt bikes, ATVs and other off-road vehicles on the streets of Philadelphia.

36.     The City of Philadelphia and Philadelphia Police Department further this "cover-up" of its ongoing knowingly reckless conduct by creating the impression through statements to the media that their police officers do not chase riders of dirt bikes, ATVs and other off-road vehicles, even though such representations were knowingly false and/or misleading at the time they were made.

37.     To cite but one example, on or about April 30, 2013, Philadelphia Police spokesperson Lieutenant John Stanford told news outlets that "[Philadelphia Police Officers] don't get involved in chasing [dirt bike riders] because you have to look at the danger you can cause potentially to innocent motorists or even them for that matter."

38.     The statement by Lieutenant Stanford evidences the Police Defendants' subjective awareness that vehicular pursuit of dirt bike and ATV riders represents an unwarranted and unjustifiable risk of bodily harm or death to the public under circumstances where that risk

is simply never justified, and where the Constitutional rights of the public would be needlessly jeopardized, infringed and harmed.

39.   Despite the known dangers to the public involved, the defendants have continued the admittedly dangerous policy, practice and custom of initiating vehicular pursuits of dirt bikes and ATVs on Philadelphia streets, including on May 7, 2019 when Defendant, Police Officer Joseph Wolk, initiated an unlawful high speed pursuit of Plaintiffs' Decedent for riding a motorbike, during the course of which he attempted to use his vehicle as an offensive weapon to take the Decedent off his bike, before the Decedent ultimately crashed into a truck trying to evade the unlawful pursuit, sustaining fatal injuries.

40.   In practice, the City of Philadelphia and City of Philadelphia Police Department habitually and consistently ignore their own written Directive, and instead engage in a significant number of knowingly improper and illegal pursuits, putting life and property at substantial risk.

41.   The number of improper pursuits has increased substantially in recent years, according to the Police Department's own statistics, but the City of Philadelphia and City of Philadelphia Police Department ratify and condone these illegal actions by failing to provide appropriate discipline, and "circling the wagons" around officers who engage in such pursuits.

42.   Defendants City of Philadelphia and City of Philadelphia Police Department exacerbate this dangerous policy by creating and fostering a culture within the Philadelphia Police Department whereby rank-and-file officers are indoctrinated into the belief that "aggressive" on-duty behavior is the primary means to advancement through the ranks of the Department, and where unduly aggressive and even rogue and unlawful behavior is not

only unpunished, but affirmatively covered for and condoned by the Department and its supervisors.

43.    Defendant Police Officer Joseph Wolk has a demonstrable history of engaging in high-speed, dangerous and reckless vehicular pursuits of persons operating motorcycles, ATVs, dirt bikes and/or motorized scooters, while acting in his official capacity as a Philadelphia Police Officer.

44.    Indeed, Defendant Wolk is currently a named defendant in *another* case pending before this court, in which he is alleged to have improperly used his police vehicle as a weapon during the pursuit of an ATV rider, which resulted in catastrophic injury and the ultimate death of that ATV rider after months in a coma.

45.    Tellingly, Defendant Wolk was set to testify in his deposition in that similar case the very day after he engaged in the pursuit that resulted in the death of Plaintiffs' Decedent.

46.    Despite these repeated acts of carelessness, recklessness and callousness, the Philadelphia Police Department has repeatedly failed to sufficiently discipline Officer Wolk or others involved in improper, illegal and unconstitutional pursuits.

47.    The policy, practice and custom of engaging in vehicular pursuits for non-violent traffic offenses violates the prohibition on excessive use of force arising under the Fourth Amendment to the United States Constitution, which is made applicable to state and municipal actors under the Fourteenth Amendment.

48.    Although Defendants City of Philadelphia and City of Philadelphia Police Department are subjectively aware of the Constitutional harms which are caused by such improper vehicular pursuits, they have tacitly and/or expressly condoned these serious violations of their vehicular pursuit Directive so uniformly that the practice of engaging in vehicular

pursuits for non-violent traffic offenses has proliferated and risen to the level of an affirmative *de facto* policy, practice and custom which is grounds for imposition of liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

49.   The fact that such unlawful and dangerously reckless pursuits of ATV and motor bike riders rises to the level of a policy is demonstrated by the disturbing frequency with which such incidents not only occur, but result in the loss of human life, without any meaningful consequences for the officers engaging in those pursuits, even when they cause serious bodily harm or death.[2]

50.   By way of example, on March 13, 2012, Philadelphia Police officers pursued a 14-year-old for riding a dirt bike on the streets of Philadelphia, resulting in the minor being fatally injured in a collision with another motorist, an incident extremely similar to the incident involved in this case.

51.   On November 14, 2016, Philadelphia Police officers including Defendant Wolk, engaged in a high-speed pursuit of an ATV rider on Torresdale Avenue which culminated in Defendant Wolk turning his Police SUV directly into the path of the ATV, causing the ATV to collide with his vehicle, and causing catastrophic and ultimately fatal injuries to the 18-year-old rider, Bailey McKenna, whose estate has brought an action against Wolk and the Police Department currently pending before this Court.

52.   Numerous other incidents of Philadelphia Police officers engaging in vehicular pursuits of motorbike and ATV riders have been documented, including one in March of 2018[3] and a

---

[2] The Philadelphia Police Department maintains a separate directive specific to ATVs designated Directive 3.21 which specifically forbids police officers from pursuing ATVs with motor vehicles, without exception. As discussed herein that Directive, like directive 9.4, is more honored in the breach than the observance.

[3] Video available at https://www.youtube.com/watch?v=9_iTfWpNOBw (accessed 11/25/2020)

compilation of multiple chases of this type posted to the platform YouTube on November 4, 2018[4], which comprise but a fraction of such incidents.

53.     At all relevant times, the City of Philadelphia and City of Philadelphia Police Department knew, or reasonably should have known that their ongoing policy, practice and/or custom of pursuing ATV and motorbike riders for non-violent traffic offenses was substantially certain to result in death or serious bodily injury, but they recklessly continued to allow such pursuits to occur with regularity, without meaningful repercussions for officers who engage in them, even when actual harm ensued.

## FACTS RELATING TO PLAINTIFFS' INCIDENT

54.     On or about May 7, 2019, Decedent, Ryan Miller, who was 15 at the time, was operating an electric scooter/motorcycle northbound on Tacony Street near Bridge Street in Philadelphia, PA.

55.     Upon seeing Decedent on the scooter, Defendant Wolk initiated an improper and illegal high speed pursuit.

56.     The pursuit was improper according to the Directive as no forcible felony had taken place.

57.     No probable cause existed for an alleged forcible felony committed by Decedent, Decedent was not in possession of a deadly weapon, and Decedent had a clearly-established constitutional right to be free from excessive force.

58.     Once he initiated pursuit, and throughout the entirety of the same, Officer Wolk failed to call in the pursuit to his superiors or the police station, which was also in violation of the provisions of Directive 9.4.

---

[4] Video available at https://www.youtube.com/watch?v=B6bImSzoH-Y (accessed 11/25/2020).  Note that not all chases seen in this video occurred in Philadelphia.

59.     During the course of the pursuit, Officer Wolk failed to engage his sirens and emergency lights, both of which were in violation of Directive 9.4 and other police policies and procedures.

60.     Upon information and belief, Defendant Wolk failed to use his loud speaker in his pursuit vehicle to identify the nature of any alleged violations committed by the Decedent or the reason for the pursuit.

61.     During the course of the pursuit, Defendant Bove, a private citizen with no legal authority to initiate or participate in a police pursuit, observed the pursuit of the Decedent by Defendant Wolk, and began to operate his vehicle in a tandem pursuit of the Decedent with Defendant Wolk.

62.     Upon information and belief, Defendant Bove is not a Philadelphia Police Officer, nor any other type of law enforcement officer authorized to make arrests, engage in vehicular pursuits or any other related law enforcement activity.

63.     Despite that, Defendant Bove operated his vehicle at a high rate of speed, ignoring and/or disregarding numerous traffic laws to improperly and/or illegally participate in an already improper and/or illegal vehicular pursuit with Defendant Wolk.

64.     At no time was Defendant Bove deputized or authorized to participate in this vehicular pursuit.

65.     At no time did Defendants Bove or Wolk have any factual basis, reasonable suspicion or probable cause to believe that Decedent had committed a forcible felony or had a deadly weapon, and the vehicle he was operating was not considered a deadly weapon under the relevant written policy.

66.    Despite the complete absence of legal justification to initiate or engage in a pursuit, Defendants Wolk and Bove pursued Decedent in tandem throughout the neighborhood, traversing Tacony Street, Eadom Street, Fraley Street, James Street and Scattergood Street, among others.

67.    During the pursuit, Defendants Wolk and Bove drove erratically, violated the posted speed limit signs, swerved and committed numerous other violations of the motor vehicle code, Philadelphia code and the Directive.

68.    During the course of the pursuit, Defendant Wolk also attempted to use his vehicle as an offensive weapon, trying to knock the Decedent off the bike, despite knowing that his actions in doing so had already resulted in catastrophic injuries to another individual previously.

69.    Defendants Wolk and Bove continued to improperly and/or illegally chase Decedent, when, while attempting to get away from them, Decedent collided with a tractor-trailer truck, which led to Decedent's death at the scene.

70.    Although for most of the pursuit Defendant Wolk was in the lead, at the time of the crash Defendant Bove was closest to Decedent and was at that time leading the pursuit.

71.    At no time did Defendant Wolk make any attempt to disengage the pursuit or attempt to have Defendant Bove disengage, and instead allowed and condoned Defendant Bove's improper and unlawful vigilante conduct.

72.    But for the fact of the improper and/or illegal pursuit, Decedent would not have collided with the trailer, and would not have died as a result of the same.

73.     The pursuit initiated by Defendant Wolk and the ensuing death of Plaintiffs' Decedent was a direct result of the flagrant violation of Philadelphia Police Department Directive 9.4

prohibiting vehicular pursuits, and in contravention of the Decedent's Fourth and Fourteenth Amendment Rights.

74. The actions of Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 were due to Philadelphia Police Department policies which encouraged and condoned the aggressive vehicular pursuit of dirt bike, ATV and off-road vehicles in the City notwithstanding the provisions of Directive 9.4, and also condoned and/or encouraged physically aggressive policing as a means to advancement within the ranks of the Philadelphia Police Department.

75. Alternatively, Plaintiffs allege that Defendant Wolk and Defendant Bove operated their vehicles recklessly in violation of their common-law duties to operate their vehicles in a safe and reasonable manner, under circumstances where they knew or reasonably should have known that vehicular pursuit of a motorbike rider was substantially certain to result in serious injury or death, and in conscious disregard of that risk.

76. The actions of Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 were the direct result of the policies, practices, customs and/or deliberate indifference on the part of Defendants City of Philadelphia and City of Philadelphia Police Department to the dangers of initiating pursuit and chasing citizens through the City and County of Philadelphia for non-violent traffic offenses.

77. The actions of Defendants Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 were the direct result of the policies, practices, customs and/or deliberate indifference on the part of defendants City of Philadelphia and City of Philadelphia Police Department to the dangers of using unlawful and excessive force to apprehend citizens for the commission of non-violent traffic offenses.

78.     Defendants City of Philadelphia, City of Philadelphia Police Department, Police Officer
        Joseph Wolk, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 clearly
        violated federal law, including the United States Constitution, because the Police
        Defendants individually and collectively were on notice of Philadelphia Police Department
        Directive 9.4 regarding vehicular pursuits, as well as a consensus of other cases involving
        serious injuries and/or deaths caused in the United States of America by the unlawful,
        excessive and gratuitous use of force to apprehend citizens for the suspected commission
        of non-violent traffic offenses.

79.     As a result of the actions, conduct and omissions of the Defendants named herein, the
        Decedent was caused to suffer catastrophic injuries that led to his death at the scene of the
        collision aforesaid.

80.     As a direct result of the aforesaid acts, conduct and/or omissions of the Defendants, the
        Plaintiffs have sustained damages and losses compensable pursuant to the Pennsylvania
        Wrongful Death Act, including, but not limited to, the loss of companionship of the
        Plaintiffs' Decedent, the loss of services of the Plaintiffs' Decedent, as well as various and
        diverse sums of money for funeral, burial and related expenses.


**COUNT I**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFFS v. JOSEPH WOLK**

81.     Plaintiffs hereby incorporate by reference the averments set forth in the foregoing
        paragraphs of this Complaint as though the same were fully set forth at length herein.

82.     At all times relevant herein, Defendants City of Philadelphia, City of Philadelphia Police
        Department, Police Officer Joseph Wolk, Police Officers John Doe 1-15 and Police

Officers Jane Doe 1-15 (the "Police Defendants") were "persons" within the meaning of 42 U.S.C. § 1983.

83. At all times relevant herein, the Police Defendants were acting "under color of state law" pursuant to 42 U.S.C. § 1983.

84. On May 7, 2019, the Police Defendants herein initiated, continued and failed to supervise, discontinue and/or terminate an unlawful vehicular pursuit of Plaintiffs' Decedent.

85. Defendant Wolk intentionally and maliciously initiated and continued the pursuit, which included efforts to use his police vehicle to unseat Plaintiffs' Decedent, and failed to break off the pursuit until Plaintiffs' Decedent suffered catastrophic and fatal injuries.

86. Defendant Wolk's conduct violated Ryan Miller's constitutional rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution and as remediable pursuant to 42 U.S.C. §1983, as set forth elsewhere in the Complaint and in the following respects:

   a.   Disregarding the safety and welfare of Ryan Miller and other members of the public;

   b.   Ignoring considerations militating against the initiation of vehicular pursuit, including knowledge of Ryan Miller's identification and address, thereby eliminating any exigent need to engage in pursuit;

   c.   Initiating an unlawful vehicular pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that vehicular pursuit was not necessary to prevent the death or serious bodily injury of another person;

   d.   Initiating an unlawful pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that the pursuit was not necessary to effect his arrest or apprehension, and without holding the belief that Ryan Miller had committed or attempted to commit a forcible felony;

   e.   Initiating an unlawful pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that the pursuit was not necessary to effect his arrest or apprehension, and without holding the belief that Ryan Miller possessed a deadly weapon;

17

f.     Pursuing Ryan Miller at an unsafe following distance in which a deadly crash was virtually certain to result given the speed of the pursuit, local road conditions and the traffic conditions in the area;

g.     Allowing and/or condoning a private citizen to engage and assist in the unlawful pursuit initiated by Wolk, despite a lack of any reasonable basis for the belief that the individual in question, Defendant Gary Bove, was legally privileged or adequately trained to do so, thereby further endangering the life of Ryan Miller for a non-violent traffic offense.

h.     Consciously disregarding the safety of Ryan Miller, members of the public and others by failing to self-terminate the pursuit after having initiated the pursuit;

i.     Deliberately, intentionally and purposefully attempting to use his police SUV as an offensive weapon by trying to bump and/or ram Ryan Miller while he rode on the motorbike, despite the knowledge that serious bodily injury or death was virtually certain to result; and

j.     Failing and refusing to terminate the pursuit until Ryan Miller had sustained fatal injuries as a direct result of Wolk's unlawful and unjustified pursuit.

87.    Alternatively or in addition to the foregoing, Defendant Wolk used clearly unlawful, excessive and deadly force to apprehend Plaintiffs' Decedent who at most was suspected of having committed a non-violent traffic offense.

88.    Defendant Wolk's conduct and/or inaction violated Ryan Miller's constitutional rights to substantive and procedural due process, and freedoms from unreasonable seizure and the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

89.    Defendant Wolk's conduct was directly attributable to the City of Philadelphia Police Department's persistent, pervasive and ongoing unofficial policy of aggressively pursuing dirt bike and ATV riders through Philadelphia streets, in contravention of the Department's publicly stated policy.

90.     Defendant Wolk's conduct constituted the reckless operation of a police vehicle in contravention of his common law duty to operate his police vehicle in a safe and reasonable manner on the roads of Pennsylvania, and in violation of Ryan Miller's constitutional rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution, and as remediable pursuant to 42 U.S.C. § 1983 as set forth in the foregoing paragraphs of this Complaint.

91.     As a direct result of the reckless disregard and the willful and intentional misconduct of Defendant Wolk, Plaintiffs' Decedent sustained catastrophic and fatal injuries, and the Administrators of his Estate hereby bring this action against said Defendant pursuant to the provisions of the Pennsylvania Wrongful Death statute, 42 Pa.C.S.A. § 8301 to recover all damages available at law, including loss of companionship, loss of support, and all other damages available at law.

WHEREFORE, Plaintiffs Neal Miller and Donna Miller, individually and as co-Administrators of the Estate of Ryan Miller, a Minor, Deceased, demands judgment against all Defendants individually and/or jointly and severally, for compensatory and punitive damages in excess of $150,000, together with interest and costs thereon.

## COUNT II
## CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFFS v. POLICE OFFICERS JOHN DOE 1-15 AND JANE DOE 1-15

92.     Plaintiffs incorporate by reference each and every allegation set forth above.

93.     At all times relevant herein, Police Officers John Doe 1-15 and Police Officers Jane Doe 1-15 (the "Police Officers") were "persons" acting "under color of state law" pursuant to 42 U.S.C. § 1983.

94.   On May 7, 2019, the Police Officers named herein initiated, continued and failed to supervise, discontinue and/or terminate an unlawful vehicular pursuit of Plaintiff's Decedent.

95.   The Police Officers intentionally and maliciously initiated and continued the pursuit, which included efforts to use one or more police vehicles to unseat Plaintiffs' Decedent, and failed to break off the pursuit until Plaintiffs' Decedent suffered catastrophic and fatal injuries.

96.   The Police Officers' conduct and/or inaction violated Ryan Miller's constitutional rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution and as remediable pursuant to 42 U.S.C. §1983, as set forth elsewhere in the Complaint and in the following respects:

a.   Disregarding the safety and welfare of Ryan Miller and other members of the public, including police;

b.   Ignoring considerations militating against the initiation of vehicular pursuit, including knowledge of Ryan Miller's identification and address, thereby eliminating any exigent need to engage in pursuit;

c.   Initiating an unlawful vehicular pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that vehicular pursuit was not necessary to prevent the death or serious bodily injury of another person;

d.   Initiating an unlawful pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that the pursuit was not necessary to effect his arrest or apprehension, and without holding the belief that Ryan Miller had committed or attempted to commit a forcible felony;

e.   Initiating an unlawful pursuit of Ryan Miller in and throughout the streets of Philadelphia knowing that the pursuit was not necessary to effect his arrest or apprehension, and without holding the belief that Ryan Miller possessed a deadly weapon;

f.   Pursuing Ryan Miller at an unsafe following distance in which a deadly crash was virtually certain to result given the speed of the pursuit, local road conditions and the traffic conditions in the area;

g. Allowing and/or condoning a private citizen to engage and assist in the unlawful pursuit initiated by Defendant Wolk, despite a lack of any reasonable basis for the belief that the individual in question, Defendant Bove, was legally privileged or adequately trained to do so, thereby further endangering the life of Ryan Miller for a non-violent traffic offense.

h. Consciously disregarding the safety of Ryan Miller, members of the public and others by failing to self-terminate the pursuit after having initiated the pursuit;

i. Deliberately, intentionally and purposefully attempting to use a police vehicle as an offensive weapon by trying to bump and/or ram Ryan Miller while he rode on the motorbike, despite the knowledge that serious bodily injury or death was virtually certain to result; and

j. Failing and refusing to terminate the pursuit until Ryan Miller had sustained fatal injuries as a direct result of the Police Officers' unlawful and unjustified pursuit.

97. Alternatively or in addition to the foregoing, the Police Officers used clearly unlawful, excessive and deadly force to apprehend plaintiff's decedent who at most was suspected of having committed a non-violent traffic offense.

98. The Police Officers' conduct and/or inaction violated Ryan Miller's constitutional rights to substantive and procedural due process, and freedoms from unreasonable seizure and the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

99. The Police Officers' conduct was directly attributable to the City of Philadelphia Police Department's persistent, pervasive and ongoing unofficial policy of aggressively pursuing dirt bike and ATV riders through Philadelphia streets, in contravention of the Department's publicly stated policy.

100. The Police Officers' conduct constituted the reckless operation of police vehicles in contravention of their common law duty to operate police vehicles in a safe and reasonable manner on the roads of Pennsylvania, and in violation of Ryan Miller's constitutional rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment to

the United States Constitution, and as remediable pursuant to 42 U.S.C. § 1983 as set forth in the foregoing paragraphs of this Complaint.

101. As a direct result of the reckless disregard and the willful and intentional misconduct of the Police Officers, Plaintiffs' Decedent sustained catastrophic and fatal injuries, and the administrators of his Estate hereby bring this action against said Defendant pursuant to the provisions of the Pennsylvania Wrongful Death statute, 42 Pa.C.S.A. § 8301 to recover all damages available at law, including loss of companionship, loss of support, and all other damages available at law.

WHEREFORE, Plaintiffs Neal Miller and Donna Miller, individually and as co-Administrators of the estate of Ryan Miller, a Minor, Deceased, demands judgment against all Defendants individually and/or jointly and severally, for compensatory and punitive damages in excess of $150,000, together with interest and costs thereon.

### COUNT III
### DEPRIVATION OF CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. §1983
### PLAINTIFFS v. CITY OF PHILADELPHIA
### AND CITY OF PHILADELPHIA POLICE DEPT.

102. Plaintiffs hereby incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

103. Defendants, City of Philadelphia and City of Philadelphia Police Department, acting under the color of law, established, mandated, approved, condoned and/or ratified the policy of engaging in aggressive pursuits of dirt bike and ATV riders on city streets in knowing and direct contravention of the Police Department's stated public-facing policy of not engaging in vehicular pursuits where no forcible felony has been committed.

104. The Defendant City and Defendant Police Department were, at all times relevant, aware that police officers in their employ and under their supervision and control were engaging in what both the Defendant City and Defendant Police Department publicly asserted to be unlawful vehicular pursuits in contravention of stated policy, but allowed, condoned and approved such pursuits by failing to take disciplinary action, defending police officers engaged in the same from legal liability, and failing and/or refusing to retrain police officers engaging in such unlawful and unconstitutional vehicular pursuits.

105. Both the Defendant City and the Defendant Police Department were aware that such unlawful pursuits needlessly put lives at risk, and had resulted in loss of life and limb, but refused to take any actions whatsoever to prevent officers from systematically and continuously engaging in such pursuits despite widespread community concerns expressed by lawyers, civil rights advocates, community advocates and the public at large.

106. The Defendants' habitual and continual allowance and tacit and/or express approval of these unlawful and unconstitutionally dangerous vehicular pursuits of dirt bike and ATV riders caused such pursuits to become a matter of official policy, since both the Defendant City and the Defendant Police Department habitually allowed officers to engage in such pursuits without consequences or discipline, even in cases which resulted in serious injury and/or death, leading to the incidence of such vehicular pursuits  consistently increasing year after year, according to the Defendants' own statistics.

107. Both the Defendant City and the Defendant Police Department, as well as their employees, have been sued before for excessive force used during unlawful vehicular pursuits but both Defendants have failed to investigate or take corrective action to prevent these excessive

force violations from happening again, resulting in police officers concluding that it is acceptable to engage in such unlawful pursuits as a matter of policy.

108. Defendants' actions deprived Plaintiffs' Decedent of his right to be free from excessive force, and they were motivated by an unconstitutional enforced policy, pattern of practice or custom by the Defendants, City of Philadelphia and City of Philadelphia Police Department.

109. Defendants City of Philadelphia and City of Philadelphia Police Department do not enforce their excessive force policies, do not properly document incidents of unlawful vehicle pursuits, do not investigate allegations of excessive force in unlawful vehicular pursuits and they engage in a policy, pattern of practice or custom of failing to reprimand or discipline any office for engaging in unlawful vehicular pursuits.

110. Defendants' failure to address these ongoing incidents of unlawful vehicle pursuits by Philadelphia Police officers amounted to tacit approval of the practice of engaging in unlawful vehicle pursuits, even when excessive force is involved.

111. Additionally, Defendants City of Philadelphia and Philadelphia Police Department maintain a series of policies and incentives which lead police officers, including all the police officer defendants named herein and particularly those assigned to Highway Patrol, to conclude that the more aggressive their tactics, the greater their likelihood of advancement within the police department is.

112. Following the death of Plaintiffs' Decedent, Plaintiff Neal Miller learned of Defendant Wolk's involvement in the prior vehicular pursuit which led to the death of Bailey McKenna, and made a post on social media critical of Wolk's conduct.

113.   Following the social media post, on July 6, 2019, at approximately 12:30 a.m., three Philadelphia Police officers (among those listed as John and/or Jane Does herein) appeared at Plaintiffs' residence, with one of them falsely identifying themselves as an agent of the Department of Homeland Security, and all three then proceeded to verbally threaten and harangue Plaintiff Neal Miller, calling him an "asshole" and threatening that they "would be coming for him."  When Plaintiff asked them for their names and badge numbers, they discontinued the interaction and stated that they would be coming back with an arrest warrant.  No such warrant was ever issued, and the Officers did not return.

114.   Additionally, the Defendant City and Defendant Police Department have purposefully concealed information regarding the incident involving Plaintiffs' Decedent which was lawfully requested by Plaintiffs' counsel, and has denied the existence of an Internal Affairs investigation into the subject incident which had been previously confirmed by the prior head of the Civil Rights Unit within the City's legal department.

115.   Despite Plaintiffs' request, Defendants City of Philadelphia and City of Philadelphia Police Department, by and through their employees, have conspired in violation of 42 U.S.C. § 1985 to cover up the deprivation of Ryan Miller's civil rights and conceal the conduct of Police Officer Joseph Wolk as well as the unknown police officers designated as John Does and Jane Does herein, withholding public information under the guise of "an ongoing investigation."

116.   As set forth above, the City of Philadelphia and City of Philadelphia Police Department have refused to supply Plaintiff with all investigative materials, and have denied the existence of an Internal Affairs investigation which was initially confirmed by a City representative.

117.    It is alleged that the refusal to supply information, coupled with the conduct of the officers who appeared at the Plaintiffs' residence at 12:30 a.m. in order to intimidate and harass them, constitutes a conspiracy to cover up the violations of Plaintiffs' Decedent's civil rights and silence his parents, and that said conspiracy was a result of the policies and customs of the City of Philadelphia and City of Philadelphia Police Department.

WHEREFORE, Plaintiffs Neal Miller and Donna Miller, individually and as co-Administrators of the Estate of Ryan Miller, a Minor, Deceased, demands judgment against all Defendants individually and/or jointly and severally, for compensatory and punitive damages in excess of $150,000, together with interest and costs thereon.

## COUNT IV
## NEGLIGENCE PURSUANT TO 42 PA.C.S.A. §8542(b)(1)
## PLAINTIFFS v. POLICE OFFICER JOSEPH WOLK,
## CITY OF PHILADELPHIA AND CITY OF PHILADELPHIA POLICE DEPARTMENT

118.    Plaintiffs hereby incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

119.    The catastrophic and fatal injuries sustained by Plaintiff's Decedent were caused by the negligence, carelessness and/or recklessness of Police Officer Joseph Wolk.

120.    The negligence, carelessness and/or recklessness of Defendant Wolk included, but is not limited to, the following:

(a)    Initiating a vehicular pursuit of a motor bike which was likely to result in serious injury or death under circumstances where the Decedent was not armed and did not commit any forcible felony;

(b)    Attempting to use his police vehicle as an offensive weapon to unseat Plaintiff's Decedent from his motor bike;

(c)     Failing and/or refusing to abide by Police Department procedures, directives and protocols for engaging in vehicular pursuit;

(d)     Failing to keep a safe following distance;

(e)     Persisting in an unlawful pursuit to such an unreasonable degree that the Decedent was placed in reasonable fear for his life; and

(f)     Such other negligence as may be ascertained through the course of discovery or at the time of trial of this case.

121.    As a result of Defendant Wolk's aforesaid negligence, Plaintiffs' Decedent sustained catastrophic and fatal injuries, Plaintiffs sustained damages as set forth in the foregoing paragraphs of this Complaint, and Plaintiffs claim all damages available pursuant to the provisions of the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301.

122.    No action was brought seeking damages during the lifetime of the Decedent.

123.    Plaintiffs' claim falls within the "motor vehicle" exception to sovereign immunity as set forth at 42 PA.C.S.A. §8542(b)(1), and accordingly Plaintiffs are entitled to recover against Wolk pursuant to the provisions of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8501 *et seq.*.

124.    Defendant Wolk was acting in the course and scope of his employment at the time of the incident in question, and accordingly, the City of Philadelphia and/or the City of Philadelphia Police Department are vicariously liable as his employer(s) pursuant to the doctrine of *respondeat superior*.

125.    In addition, the Defendants City of Philadelphia and/or City of Philadelphia Police Department failed to properly train, supervise and/or discipline Defendant Wolk, and those

27

failures were a substantial factor contributing to the incident in question as well as the Plaintiffs' harms and losses.

WHEREFORE, Plaintiffs Neal Miller and Donna Miller, individually and as co-Administrators of the Estate of Ryan Miller, a Minor, Deceased, demands judgment against all Defendants individually and/or jointly and severally, for compensatory and punitive damages in excess of $150,000, together with interest and costs thereon.

## COUNT V
## NEGLIGENCE
## PLAINTIFFS v. GARY BOVE

126. Plaintiffs hereby incorporate by reference the preceding paragraphs as though the same were set forth at length herein.

127. The catastrophic and fatal injuries sustained by Plaintiff's Decedent were caused by the negligence, carelessness and/or recklessness of Defendant, Gary Bove.

128. The negligence, carelessness and/or recklessness of Defendant Bove consisted of, but is not limited to, the following:

(a)     failure to properly operate and control his motor vehicle;

(b)     failure to observe and/or yield to Decedent's vehicle;

(c)     failure to stop his motor vehicle in a safe manner;

(d)     failure to maintain control over his vehicle;

(e)     failure to maintain an assured clear distance;

(f)     failure to properly and adequately observe traffic conditions;

(g)     failure to properly and adequately operate his vehicle at an acceptable and/or controllable rate of speed;

(h)     failing to take proper action to avoid a collision;

(i)     failing to use due care for the safety of Decedent under the circumstances;

(j)     following too closely;

(k)     improperly, illegally, carelessly, negligently and recklessly pursuing Decedent, despite no apparent or explicit authority to do so;

(l)     improperly engaging in a police vehicular pursuit;

(m)     impersonating a police officer;

(n)     engaging in unlawful vigilante conduct

(o)     operating the motor vehicle at a speed which was excessive under the circumstances;

(p)     failing to properly and adequately operate said motor vehicle in accordance with the statutes and regulations of the Commonwealth of Pennsylvania with respect to the proper operation of motor vehicles on public thoroughfares.

129.    As a result of Defendant Bove's negligence and/or recklessness, Plaintiffs' Decedent sustained catastrophic and fatal injuries Plaintiffs sustained damages as set forth in the foregoing paragraphs of this Complaint, and claim all damages available pursuant to the provisions of the Pennsylvania Wrongful Death Act, 42 Pa. C.S.A. §8301.

130.    Pennsylvania Courts have adopted Restatement (Second) of Torts § 908 for the law of punitive damages.

131.    The Restatement allows for an award of punitive damages for conduct that is "outrageous because of the defendant's evil motive or his reckless indifference to the rights of others."

132.    At the time of Decedent's fatal injury, Defendant Bove was recklessly engaging in a police vehicular pursuit, and had actually *taken the lead* in that pursuit, bearing down on the Decedent's motorbike while utterly and knowingly disregarding the clear risk of bodily

injury or death, and actively placing the Decedent in mortal fear for his life with the aggressiveness of his inexplicable pursuit, which Bove lacked any legal authority to engage in.

133.    The facts and circumstances of this incident, combined with Bove's absolute lack of legal authority to engage in the aforesaid conduct, clearly exhibit a reckless indifference to the safety of others upon the roadway which rises to the level necessary to impose punitive damages pursuant to section 908(2) of the Restatement (Second) of Torts, and represents a factual scenario where the circumstances of the incident itself are sufficient to establish recklessness or wanton misconduct without any showing of specific intent to injure.

134.    The conduct of Defendant Bove in this regard, such conduct having caused injuries to the Plaintiffs' Decedent as set forth herein, constitutes conduct that was malicious, wanton, reckless, willful, outrageous and oppressive and with reckless indifference to the rights, interests and safety of Plaintiffs' Decedent.

WHEREFORE, Plaintiffs Neal Miller and Donna Miller, individually and as co-Administrators of the Estate of Ryan Miller, a Minor, Deceased, demands judgment against all Defendants individually and/or jointly and severally, for compensatory and punitive damages in excess of $150,000, together with interest and costs thereon.

Respectfully submitted,

FLAGER & ASSOCIATES, P.C.


By:    /s/ Michael S. Levin
Attorney ID No. 78463
1210 Northbrook Drive, Suite 280
Trevose, PA 19053
Tel: 215.953.5200
Fax: 215.953.5124
Email: michael@flagerlaw.com

## JURY DEMAND

Plaintiffs hereby demand a jury trial of twelve jurors.

FLAGER & ASSOCIATES, P.C.


By:      /s/ Michael S. Levin
Attorney ID No. 78463
1210 Northbrook Drive, Suite 280
Trevose, PA 19053
Tel: 215.953.5200
Fax: 215.953.5124
Email: michael@flagerlaw.com

**VERIFICATION BASED UPON PERSONAL**
**KNOWLEDGE AND INFORMATION SUPPLIED BY COUNSEL**

I, Donna Miller, verify that I am the Plaintiff in the foregoing action and that the attached Complaint is based upon the information which has been gathered by my counsel in preparation of this lawsuit.   The language of the Complaint is that of counsel.   I have read the Complaint, and to the extent that it is based upon information which I have given to my counsel, it is true and correct to the best of my knowledge, information and belief.   To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification.

I understand that intentional false statements herein are made subject to the penalties of 18 Pa. C.S. A. ' 4904 relating to unsworn falsifications made to authorities.

_Donna Miller_ _____

DONNA MILLER, individually , and as
Administrator of the Estate of Ryan Miller

_December 15, 2020_____
DATED