EXHIBIT "A"



# PHILADELPHIA POLICE DEPARTMENT    DIRECTIVE 9.4

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 06-16-16 |
|---|---|---|

**SUBJECT:   VEHICULAR PURSUITS**
**PLEAC 4.2.1, 4.2.2**

---

## 1.    POLICY AND PURSUIT JUSTIFICATION

A. Policy

1. The primary consideration when participating in or supervising any pursuit is the safety and welfare of the public, other officers, as well as the suspect(s). Every officer and supervisor must always weigh the benefits of immediate capture with the risks inherent to the pursuit itself.

B. Justification for Initiating a Vehicular Pursuit

1. An officer is justified in initiating a vehicular pursuit only when they are:

a. In close proximity to a suspect vehicle and believes a pursuit is necessary to prevent the death or serious bodily injury of another person, or

b. In close proximity to a suspect vehicle and believes BOTH:

1) The pursuit is necessary to effect the arrest or prevent escape, <u>AND</u>

*1
2) The officer has <u>probable cause</u> to believe that the person being pursued has committed or attempted a forcible felony OR, has <u>probable cause</u> to believe that the person being pursued possesses a deadly weapon, other than the vehicle itself.

> REDACTED - LAW ENFORCEMENT SENSITIVE

---

## 2.    DEFINITIONS

A. <u>Vehicular Pursuit</u> -  The use of a motor vehicle to chase, follow, or go after a vehicle that has refused to stop.

B. <u>Forcible Felony</u> - A felony involving actual or threatened serious bodily injury, which include:

Definitions Continued:

1. Murder,
2. Voluntary Manslaughter,
3. Arson Endangering Persons, and
4. Aggravated Assault Causing Serious Bodily Injury

The following felonies shall also be classified as "Forcible" when their commission includes actual or threatened force. These include:

1. Rape,
2. Involuntary Deviate Sexual Intercourse,
3. Robbery, and
4. Kidnapping.

C. <u>Deadly Weapon</u> - Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury [18 Pa. C.S. 2301].

*5      **NOTE:** For the purposes of this directive, the suspect vehicle is excluded as a deadly weapon regardless of crime committed.

D. <u>Serious Bodily Injury</u> - Bodily injury, which creates a substantial risk of death, or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ [18 Pa. C.S. §2301].

E. <u>Marked Radio Patrol Sedan</u> – Standard four door marked police vehicle equipped with sirens and overhead lights, such as but not limited to District Patrol Vehicles (RPC), Highway Patrol Vehicle, Narcotics Vehicle, etc.

---

3. **GENERAL PURSUIT PROCEDURES AND GUIDELINES**

A. Acknowledgment of a pursuit must be made by the District Patrol Supervisor or Police Radio.

B. If no District Patrol Supervisor acknowledges, Police Radio will assign a Supervisor to monitor and control the pursuit. If the assigned Supervisor fails to acknowledge Police Radio, the Police Radio Room Supervisor will terminate the pursuit.

C. If a pursuit is initiated by a Special Unit and a Special Unit Supervisor is not available, Police Radio will assign the pursuit to a District Patrol Supervisor wherein the pursuit is happening.

D. If no justification for the pursuit is given by the initiating unit over Police Radio, it shall be the responsibility of all supervisors on the specific radio band, including the Police Radio Room Supervisor, to immediately terminate the pursuit. Also, any Supervisor is responsible for terminating a pursuit if they believe it has become too dangerous. The decision to terminate shall be final and not be subject to being countermanded.

E. A District Patrol Supervisor assigned to the area in which the pursuit is happening may, based upon his or her knowledge of the District, override any other outside supervisor monitoring and controlling the pursuit.

   NOTE: An "outside supervisor" is any supervisor not assigned to the district wherein the pursuit is happening.

F. During a pursuit, no more than two (2) marked radio patrol sedans will pursue a suspect vehicle (i.e. only the Primary and Secondary Units are permitted to engage in a pursuit and that no other vehicles will "caravan" behind the Secondary Unit).

G. Only sworn personnel may engage in a pursuit.

H. All other available sworn personnel (i.e. other than the Primary Unit, Secondary Unit, and Assigned Pursuit Supervisor) should be monitoring police radio and be prepared to stop or divert pedestrian or vehicular traffic that may be in the path of an oncoming pursuit in the areas of assignment. (e.g. Stopping cross traffic at a major intersection in the oncoming direction of a pursuit, etc.)

I. To lessen the possibility of a collision should the fleeing vehicle suddenly stop or change direction, a "safe distance" should always be maintained between the pursued vehicle, the Primary Unit, and Secondary Unit. A minimum of five (5) car lengths should always be maintained during any pursuit. However, a greater distance may be necessary based upon the speed of the pursuit, road and weather conditions, the suspect vehicle's behavior (i.e. how the vehicle is being operated, etc.), the Department's vehicle characteristics, officer's driving experience/capabilities, or any other circumstances that may exist.

J. All marked radio patrol sedans engaged in a pursuit must have, and will operate the police vehicle with emergency equipment activated continuously throughout the pursuit. This includes both light bars and red/blue lights and sirens.

   NOTE: Sworn personnel are reminded to use extreme caution when approaching any intersection during a pursuit and only proceed if clear of both vehicles and pedestrians.

K. During a pursuit, sworn personnel involved will not switch to another radio band should the pursuit enter another division or jurisdiction. If radio contact is lost for any reason, the pursuit shall be terminated.

L. Once the Secondary Unit arrives to assist, the main function of the Primary Unit is the apprehension of the fleeing suspect(s). The Secondary Unit's main functions are as communications for and backup to the Primary Unit.

M. Only the Primary Unit, Secondary Unit, and the Directing Supervisor may leave their assigned area in response to the pursuit unless ordered not to do so by a higher-ranking officer. No other units may leave their assigned area unless ordered to do so.

*3    N. In all inter-jurisdictional pursuits, the following actions will be taken by all Philadelphia Police personnel: (PLEAC 4.2.1)

1. Sworn personnel in fresh and continuous pursuit may NOT pursue outside of the boundaries of Philadelphia unless permission is granted by a higher ranking supervisor.

2. The initial pursuing officer will notify Police Radio when it is likely that a pursuit will continue into a neighboring jurisdiction. The exception is when the secondary unit arrives and takes over communications.

3. Police Radio will notify the neighboring jurisdiction of the pursuit as soon as possible.

4. When a pursuit is initiated by a law enforcement agency of another jurisdiction, Police Radio will notify the Patrol Supervisor who will immediately inquire into the circumstances surrounding the pursuit and what assistance is required by the pursuing agency,

5. Sworn personnel will not engage in pursuits initiated by other law enforcement agencies unless in accordance with all provisions of this directive. In the districts wherein a pursuit has been initiated by another law enforcement agency, Police Radio will assign the relevant District Patrol Supervisor to monitor and control Philadelphia Police Department personnel.

6. If an arrest is made outside of Philadelphia, but within the Commonwealth of Pennsylvania, the officer will transport the suspect(s) back to the Divisional Detective Headquarters. If an arrest occurs across any state line, the suspect(s) must go through the extradition procedures before being returned to Philadelphia.

O. Fleeing vehicles will not be stopped under any circumstances by the following techniques:

    1. Boxing-In – Surrounding the fleeing vehicles with police vehicles, which are then slowed to a stop with the fleeing vehicle.

    2. Ramming – The deliberate act of hitting a fleeing vehicle with a police vehicle for the purpose of forcing the fleeing vehicle off the road or into a fixed object.

    3. Roadblocks - The use of barricades, vehicles or other obstructions across a roadway to stop a fleeing vehicle.

\*3    4. Pursuit Termination Devices – The use of any pursuit termination or vehicle immobilization device (i.e, stop sticks, spike strips, etc.). (PLEAC 4.22)

\*3  P. Vehicles, other than a marked Radio Patrol Car (i.e., unmarked cars, EPW, SUV, Motorcycle, etc.) shall not, barring exigent circumstances, initiate a vehicle pursuit. However, if a pursuit is initiated based upon exigent circumstances, the operators of these types of vehicles shall relinquish the position as Primary Vehicle to the first responding marked RPC and withdraw from the pursuit immediately.

Q. Police vehicles being used to transport any non-sworn personnel, including but not limited to, prisoners, witnesses, recruits, police explorers, or any "ride-along" shall not engage in a pursuit. Additionally, any unit containing a canine shall not engage in a pursuit.

R. Sworn personnel will immediately terminate any pursuit if the suspect vehicle enters an interstate highway or divided roadway in the wrong direction.

REDACTED - LAW ENFORCEMENT SENSITIVE

T. Barring extenuating circumstances, all sworn personnel involved in a pursuit in any manner will complete and submit the relevant portion of both Pursuit Memoranda (city and state) found in Appendix "A" of this directive within three (3) days.

## 4 SPECIFIC RESPONSIBILITES

A. Initiating/Primary Unit

    1. Determine the necessity of commencing or terminating a pursuit by considering:

        a. Whether justification to initiate the pursuit exists (refer to Section 1-B),
        b. Whether the suspect's identification and address are known, thereby making available an alternate means of arrest (e.g. via an arrest warrant),

    c. The weather and road conditions,

    d. Location and population density (vehicular and pedestrian),

    e. The capabilities and characteristics of the department vehicle,

    f. The officer's own driving capabilities,

    g. The officer's familiarity with the pursuit area,

    h. Any other extraordinary circumstances or conditions (e.g. the proximity to school zones, playgrounds, shopping centers, etc.) and

    i. The speed and control of the suspect vehicle.

2. If a pursuit is initiated, immediately inform the radio dispatcher of:

    a. The fact that a pursuit has been initiated, along with the justification,

    b. The initial location, direction, and estimated distance to the suspect vehicle,

    c. The approximate speed of both the suspect and police vehicles,

    d. The vehicle description and, if possible, license information and a physical and clothing description of the occupants along with approximate ages,

    e. The continuous progress of the pursuit and if headed towards another district, division, or jurisdiction,

    f. Upon arrival of a Secondary Unit, relinquish communication responsibilities to the Secondary Unit.

3. Continuously evaluate the benefits of an immediate capture against the safety of the public, other officers and the suspect. An officer can self-terminate a pursuit at any time.

4. If ordered by a supervisor to relinquish the Primary Unit duties to another radio patrol sedan, immediately withdraw from the pursuit, return to area of assignment, and prepare to complete the relevant portion of the Pursuit Memoranda found in Appendix "A" of this directive.

5. Apprehend the suspect(s), or by ensuring that only the proper amount of force is used to make any arrests consistent with the guidelines in directive 10.2, "Use of Moderate/Limited Force". If the vehicle is stopped and the occupant(s) appear to barricade themselves inside the vehicle, ensure the provisions found in Directive 10.7, "Crisis Response/Critical Incident Negotiations," regarding barricaded persons are implemented.

6. If the Initiating/Primary Unit loses sight of the suspect vehicle, terminate the pursuit immediately and notify Police Radio. Begin a search of the area where suspect vehicle was last seen as directed by the responding supervisor.

7. If any supervisor terminates the pursuit, disengage from the pursuit immediately, safely stop and park the vehicle, notify police radio of location and odometer mileage, update patrol log, and await the arrival of a supervisor.

    a. Return to a safer driving speed,

    b. Move out of sight of the fleeing vehicle,

    c. Continuously monitor Police radio as to the direction of the fleeing vehicle,

    d. Not renew pursuit of the fleeing vehicle if they should make subsequent visual contact and are in close proximity with it, and

    e. Be prepared for any reports by the flight crew that the fleeing vehicle has stopped and the suspect(s) have fled on foot.

9. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

B. Secondary Unit

1. Upon joining the Primary Unit, acknowledge to Police Radio as the "Secondary Unit".

2. Maintain visual contact with the primary unit and assume all communication responsibilities such as, reporting the continuous progress of the as indicated in Section 4-A-2, c through f of this directive.

3. If ordered by a supervisor, relinquish the Secondary Unit duties to another vehicle, immediately withdraw from the pursuit, and return to area of assignment.

4. Do not pass the Primary Unit unless requested to do so by that Unit or if other conditions exist, such as mechanical malfunction, etc.

5. Back-up and support the Primary Unit officer(s) consistent with Section 4-A-5 of this directive.

6. If either the primary unit or any supervisor/commander terminates the pursuit, immediately cease the pursuit.

8. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

C. Assigned Pursuit Supervisor shall:

1. Direct and control the pursuit and apprehension efforts by:

a. Evaluating the Primary/Initiating Unit's justification for commencing and continuing the pursuit,

b. Immediately terminating the pursuit, if necessary, considering all the facts and circumstances including, but not limited to, those factors identified in Section 4-A-1 of this directive,

> REDACTED - LAW ENFORCEMENT SENSITIVE

d. Ensuring the Primary Unit and the Secondary Unit withdraw from the pursuit if Aviation Unit assumes the pursuit and that pursuit and that they comply with the provisions of Section 4-A-8 and 4-B-7 of this directive respectively.

e. Monitoring all radio transmissions, and ensuring Police Radio is kept informed of location, direction, speed, weather and road conditions, vehicle and pedestrian traffic, etc.

f. Limiting the involvement and radio use by other units.

g. Coordinating other units to respond to strategic locations to possibly apprehend the suspects,

h. Arriving at the scene of any apprehension as soon as possible to ensure the provisions of Directive 10.2, regarding the use of force and, if necessary, Directive 10.7 regarding barricaded persons are strictly observed.

2. If the pursuit was terminated by any supervisor, meet the Primary Unit and Secondary Units and inspect the vehicle odometers, sign officer's log noting location, odometer mileage, and mileage recorded by Police Radio.

3. After any pursuit, if appropriate, make sure officers have sufficient time to calm down and regain their composure before returning to patrol.

4. Supervisors must be proactive at the end of the pursuit to ensure that arrests are made in accordance with departmental policy. Supervisors will be held accountable if they fail to take appropriate action.

5. If a pursued vehicle is found unattended it should be guarded for prints in an attempt to identify and apprehend the driver and the occupants.

D. Police Radio Responsibilities

1. Police Radio Dispatcher

a. When a Police Radio Dispatcher is notified that an officer is involved in a vehicular pursuit, the dispatcher will:

1) Immediately notify a Radio Room Supervisor and 'J' band of the pursuit,

2) Contact and assign the initiating officer's direct supervisor or an available district supervisor to the pursuit, who shall then direct and control the pursuit and any apprehension efforts,

REDACTED - LAW ENFORCEMENT SENSITIVE

4) Monitor and broadcast the relevant information received from the Initiating/Primary Unit,

5) Once a Secondary Unit has joined in the pursuit, use the Secondary Unit as the communications vehicle unless the Primary Unit is a two-officer vehicle,

6) If the pursuit is terminated by any supervisor, request the location and odometer mileage from the terminated unit and dispatch a supervisor to that location,

7) Assign a separate District Control Number for every pursuit.

2. Radio Room Supervisor Responsibilities

a. Upon being notified by a Police Dispatcher of a pursuit, the Radio Room Supervisor:

1) Will physically respond to the involved console and begin monitoring the pursuit ensuring all responsibilities of the Police Dispatcher in Section 4-D-1 are completed,

2) If no justification for the pursuit is given by the initiating unit or if the initiating unit's supervisor or available district supervisor fails to respond to Police Radio, will immediately terminate the pursuit,

NOTE: If a pursuit is terminated because the initiating unit's supervisor or available District Supervisor failed to respond, the appropriate supervisor's Commanding Officer, Divisional Inspector and the Regional Operations Command will be notified via a Blackberry message.

3) Ensure the notification of Aviation Unit and their availability.

4) When the pursuit results in an auto accident or injury to police or the suspect vehicle, the Pursuit Broadcast Tapes will be forwarded to the appropriate Commanding Officer.

5) Will generate a daily report of all pursuits, along with a printed copy of all radio transmissions of the pursuit, to the appropriate Commanding Officer for immediate action.

REDACTED - LAW ENFORCEMENT SENSITIVE

F. District/Unit Commanders

1. Will continuously assess the decisions of the assigned supervisor and take control/action if necessary considering all the facts and circumstances including, but not limited to, the factors identified in Section 4-C-1-b of this directive.

2. Shall ensure that copies of the Pursuit Memoranda (city and state) found in Appendix "A" of this directive, the Pursuit Report generated by Police Radio and the radio transmissions are forwarded to the appropriate Deputy Commissioner and the Commanding Officer of the Police Academy, Accident Prevention Section within five (5) calendar days of the pursuit date.

*6 3. The District/Unit Commanders should ensure a copy of the Pennsylvania Police Pursuit Report is forwarded to the Research and Analysis Unit, on the first business day after the pursuit. The original PSP Report will be submitted with the pursuit packet through the chain of command. This is further detailed in Appendix "A" page 6, of this directive.

4. Shall ensure the appropriate actions, up to and including formal disciplinary recommendations (75-18s), are taken against any subordinate who has violated any provision of this directive.

G. Appropriate Deputy Commissioner

1. Shall review the Pursuit Memoranda, the Pursuit Report generated by Police Radio and the radio transmissions to ensure that officers and supervisors comply with the procedures and policies set forth in this directive.

---

| RELATED PROCEDURES: | Directive 9.7, | Safe Operation of Police Vehicles |
| | Directive 10.2, | Use of Moderate/Limited Force |
| | Directive 10.7, | Crisis Response/Critical Incident Negotiations |
| | Disciplinary Code | |

---

## BY COMMAND OF THE POLICE COMMISSIONER

| FOOTNOTE # | GENERAL # | DATE SENT | REVISION |
|------------|-----------|-----------|----------|
| *1 | 2450 | 01-14-09 | Clarification |
| *2 | 4193 | 01-16-09 | Deletion of 1-B-1-b-3 |
| *3 | 4830 | 08-18-15 | Additions/Changes |
| *4 | 1141 | 09-01-15 | Change |
| *5 | 1023 | 04-29-16 | Changes |
| *6 | 4131 | 06-16-16 | Addition |

| Issued Date: 12-31-08 | Effective Date: 12-31-08 | Updated Date: 04-29-16 |

## SUBJECT:  POLICE VEHICLE PURSUIT MEMORANDUM

This memorandum is to be completed regardless of whether or not the violator is apprehended, the length, or duration of the pursuit, or whether or not an accident had taken place.

A copy of the Complaint or Incident Report (75-48) will be included with this memorandum. When available and appropriate, a copy of Accident Report (AA-500 or 75-48C) will accompany it.  It is very important that any vehicle accident involving a police vehicle, the fleeing vehicle, any other civilian or city-owned vehicle or any combination thereof ,be described not only in the AA-500 or 75-48C and the 75-48, but also in this Pursuit Memorandum and the Pennsylvania Police Pursuit Report.

\*3/\*4  This memorandum must be submitted through the chain of command for review to the Police
\*5     Academy, Accident Prevention Section within thirty days.  The Police Academy will retain copies of all State Police Pursuit Reports and AA-500 or 75-48Cs.  The Commanding Officer of the initiating district/unit must ensure that the State Police Pursuit Report is sent to the Research and Analysis Unit.

MEMORANDUM

TO      : CHIEF INSPECTOR, TRAINING BUREAU
FROM   :
SUBJECT: PHILADELPHIA POLICE DEPARTMENT PURSUIT MEMORANDUM

DATE OR OCCURRENCE   TIME OF OCCURRENCE_____DAY_____

DISTRICT OF OCCURRENCE ____DIST. CONTROL NUMBER_____

LOCATION PURSUIT INITIATED_____

LOCATION PURSUIT TERMINATED_____

NUMBER OF POLICE UNITS INVOLVED_____

DURATION OF PURSUIT (MINUTES)____DISTANCE (CITY BLOCKS)_____

JUSTIFICATION FOR PURSUIT AND SPECIFIC VIOLATIONS_____

_____

VIOLATIONS DURING PURSUIT_____

TRAFFIC CONDITIONS (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

PEDESTRIAN TRAFFIC (CIRCLE ONE):  HEAVY  MEDIUM  LIGHT  NONE

WEATHER CONDITIONS (CIRCLE ONE):

1 - NO ADVERSE CONDITIONS
2 - RAINING
3 - SLEET, HAIL, FREEZING RAIN
4 - SNOWING
5 - FOG AND SMOKE
6 - RAIN AND FOG

ROAD CONDITIONS (CIRCLE ONE): DRY WET SNOW COVERED ICE COVERED

PRIMARY UNIT  NAME AND RANK OF OFFICER_____

BADGE #_____PAYROLL #--------------------------

DISTRICT OR UNIT/SQUAD AND GROUP___APPOINTMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE_____

SECONDARY UNIT:  NAME AND RANK OF OFFICER_____

BADGE#_____PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____APPOINMENT DATE___/___/___

RECORDER'S NAME_____BADGE #_____ PAYROLL #_____

DISTRICT OR UNIT/SQUAD AND GROUP_____

VEHICLE NUMBER_____TYPE OF POLICE VEHICLE

VIOLATOR'S VEHICLE: MAKE____MODEL_____YEAR_____

COLOR___TAG_____OPERATOR'S NAME_____
DATE OF BIRTH_____ADDRESS_____

CITY/STATE_____

VIOLATOR'S CHARGES_____

OWNER OF VEHICLE_____

PRIMARY OFFICER'S NARRATIVE:  Outline the specifics of the pursuit, including justification. (Use 8" x 11" sheet of white paper should additional space be required.)

_____

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SECONDARY OFFICER'S NARRATIVE:  Outline the specifics of your involvement in the pursuit.  (Use 8" x 11" sheet of paper should additional space be required.)

_____

_____

_____

_____

_____

OFFICER'S SIGNATURE_____DATE_____

SUPERVISOR MONITORING PURSUIT: NAME/RANK_____

DISPOSITION OF PURSUIT: PURSUIT TERMINATED  YES___  NO___

 (IF YES BY WHOM) NAME/RANK_____

REASON FOR TERMINATION: EXPLAIN_____

_____

_____

ANY MOTOR VEHICLE ACCIDENTS AS A RESULT OF THIS PURSUIT? YES__ NO__

(THIS INCLUDES ALL POLICE VEHICLES, THE FLEEING VEHICLE, AND OTHER
CIVILIAN OR CITY-OWNED VEHICLES THAT MAY HAVE BECOME INVOLVED IN
AN ACCIDENT AS A DIRECT OR INDIRECT RESULT OF THE POLICE PURSUIT.)
(IF YES, EXPLAIN AND ATTACH COPY OF THE 75-48, AND WHEN AVAILABLE, AN
AA-500 OR 75-48C)

_____

_____

ANY POLICE OR CIVILIANS INJURED IN A VEHICULAR ACCIDENT AS A RESULT OF
THIS PURSUIT?  YES__ NO__  (IF YES, EXPLAIN AND GIVE EXTENT OF INJURIES.)
_____

_____

ANY POLICE OR CIVILIAN DEATHS AS A RESULT OF THIS PURSUIT?
YES__ NO _____

IF YES, EXPLAIN_____

_____

_____

ANY VIOLATIONS OF DIRECTIVE 41? YES___  NO___

 (IF YES, EXPLAIN)_____

_____

SUPERVISOR'S NARRATIVE: PER DEPARTMENT POLICY, WAS THIS PURSUIT
JUSTIFIED? YES___ NO___ EXPLAIN AND INCLUDE RECOMMENDATIONS

_____

_____

_____

_____

SUPERVISOR'S SIGNATURE_____BADGE #_____DATE_____

DISTRICT COMMANDING OR COMMAND INSPECTIONS BUREAU COMMENTS:
(Per Department policy, was this pursuit justified?) YES__ NO__

RECOMMENDATIONS_____

_____

_____

_____

COMMANDING OFFICER'S SIGNATURE_____ DATE_____

*5   INSPECTOR'S
     RECOMMENDATIONS_____

_____

_____

_____

INSPECTOR'S SIGNATURE_____ DATE_____

*5   CHIEF INSPECTOR'S
     RECOMMENDATIONS_____

_____

_____

_____

CHIEF INSPECTOR'S SIGNATURE_____ DATE_____

**DIRECTIVE 9.4 - 5**
**APPENDIX "A"**

*5   DEPUTY COMMISSIONER'S
     RECOMMENDATIONS_____

     _____

     _____

     _____

     DEPUTY COMMISSIONER'S SIGNATURE_____ DATE_____

     ACCIDENT PREVENTION SECTION:

     DATE RECEIVED_____BY WHOM_____

     RECOMMENDATIONS:_____

     _____

     _____

     TRAINING BUREAU CHIEF'S ACKNOWLEDGEMENT:
     (Per Department policy, was this pursuit justified?) YES___ NO___

                         _____
                         CHIEF INSPECTOR'S SIGNATURE

                         DATE_____

## PENNSYLVANIA POLICE PURSUIT REPORT

Act 154 of 1994 requires police departments in Pennsylvania to make a record of all vehicle pursuits and to report them to the Pennsylvania State Police. The Pennsylvania State Police is required to collect these reports, and to compile an annual summary of information to be reported to various entities. Completion and submission of this form for all pursuits, which occur on or after January 1, 1996, will ensure compliance with the reporting requirements of Act 154.

The detailed information collected through the use of this form will be used to help identify both positive and negative factors influencing the outcome of vehicular pursuits, validate or refute the merits of pursuit policies and apprehension techniques, and to recognize training successes and deficiencies. It is intended that this will enable police departments throughout the Commonwealth to enhance the safety of their officers and the public they serve.

The form should be completed by either the primary pursuing police officer or their supervisor, at the discretion of the individual police department. It has been designed to be completed and read without the need for code sheets or overlays. The form may also be completed by agencies assisting the primary pursuing agency. Forms completed by assisting agencies shall not be submitted to the Pennsylvania State Police.

*3/*4   The Commanding Officer of the initiating district/unit shall ensure that original, completed forms are submitted directly to the Research and Analysis Unit as soon as possible. The Research and Analysis Unit shall submit it to the Pennsylvania State Police, upon receipt from the Commanding Officer of the initiating district/unit. Blank forms may be duplicated as necessary. Only original, completed forms shall be submitted to the Pennsylvania State Police. Copies should be made for your records.

Questions concerning the completion of this report should be directed to:

Pennsylvania State Police
Bureau of Research and Development
1800 Elmerton Avenue
Harrisburg, PA  17110
ATTN: Pursuit Reporting Coordinator
(717) XXX-XXXX

## BLOCK INSTRUCTIONS

1. REPORTING AGENCY:  Enter the name of the reporting agency.  For agencies having stations at multiple locations, also list the location.

2. REPORTING OFFICER:  Enter the full name of the individual preparing the report.

3. SIGNATURE:  Self-explanatory.

4. INCIDENT NUMBER:  Enter the Incident Number (or case number, etc.) your agency assigns the incident.  If an additional vehicle(s) is actively pursued as part of the same incident, that pursuit shall be reported on a separate form, with a supplemental incident number, e.g., A01123456A.

   PSP: Enter the Incident Number as follows: A01123456, S13123456

5. PURSUIT DATE: Enter the date the pursuit began in the following format:

   010296 for January 2, 1996

6. PURSUIT TIME: Enter the time (24 hour clock) the pursuit began.

7. SUPERVISOR'S INITIALS AND BADGE NO.: Self-explanatory.

8. JURIS NUMBER: Enter the Juris Number assigned by the Pennsylvania State Police in the five boxes of the block. If your department has not been assigned a Juris Number, contact the Pennsylvania State Police, Bureau of Research and Development, Management Information and Uniform Crime Reporting Section, at (717) XXX-XXXX.

   PSP: Use the appropriate Station Code, preceded by the number 9 (i.e., 91110 would be entered for Greensburg, Station Code 1110).

9. REASON INITIATED: Mark the choice which best describes the offense or suspected offense for which the officer INITIALLY decided to pursue the vehicle. If more than one choice applies, mark the most serious. Use only an offense known or suspected at the time the attempt to stop was initiated.

   EXAMPLE:     If a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked. If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked.

   DUI OR SUSPECTED - The driver was known to be or suspected of Driving Under the Influence.

   OTHER TRAFFIC - Any other traffic violation.

   SUMMARY CRIMINAL - Any known or suspected summary criminal offense.

   MISDEMEANOR CRIMINAL - Any known or suspected misdemeanor criminal offens

   FELONY CRIMINAL - Any known or suspected felony criminal offense, except those relating to the vehicle known to be or suspected of being stolen.

   STOLEN OR SUSPECTED - The vehicle is known or suspected to be stolen.

10. TYPE VEHICLE PURSUED: Mark the choice, which best described the vehicle pursued.

    AUTOMOBILE - Passenger cars and mini-vans regardless of the manner in which they are registered.

    VAN/PICK-UP/SUV - Full size vans, all pick-up trucks, and sport utility vehicles, even though they may be registered as station wagons.

    MOTORCYCLE - All two-wheeled motorcycles, mopeds, motor-driven pedacycles.

OTHER - All other vehicles.

11. APPREHENSION: Mark the choice which best describes the apprehension, if any, of the violator.

NONE - VIOLATOR SUCCESSFULLY ELUDED POLICE - Self-explanatory.

NONE - DECISION MADE TO TERMINATE - The pursuit was terminated due to a decision made by the pursuing officer(s) or a supervisor, even though officer(s) were able to continue the pursuit.

NONE - STOPPED, BUT ESCAPED ON FOOT - The pursuit resulted in the violator vehicle being stopped, but the violator escaped on foot.

APPREHENDED DURING PURSUIT - The violator was apprehended during pursuit. This includes during any foot pursuit or search conducted as an immediate continuation of the original pursuit.

DELAYED - AFTER TERMINATION OF PURSUIT - The violator is apprehended after the pursuit is terminated. This includes cases in which the violator is identified through investigation, or if the violator is identified during the pursuit, the decision is made to terminate the pursuit and apprehend the violator at a later time.

12. REASON TERMINATED - Mark the choice which best describes the reason for termination of the pursuit.

PURSUIT DISCONTINUED - Use if the pursuit was terminated by a decision to discontinue.

POLICE ACCIDENT - The pursuit was terminated because the pursuing police vehicle was involved in an accident.

POLICE VEHICLE DISABLED - The pursuit was terminated because the pursuing police vehicle suffered a mechanical failure other than that caused by an accident or collision.

VIOLATOR STOPPED VOLUNTARILY - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, and surrendered.

VIOLATOR ABANDONED VEHICLE - The violator stopped voluntarily, without the use of road spikes, roadblocks, induced stops, or other apprehension techniques, then fled on foot.

VIOLATOR STOPPED BY COLLISION OR ACCIDENT - The violator was involved in a collision or accident, which terminated the pursuit.

VIOLATOR VEHICLE DISABLED - The pursuit was terminated because the violator vehicle suffered a mechanical failure other than that caused by an accident or other police action.

STOPPED BY OTHER POLICE ACTION - The violator was stopped by apprehension techniques other than trailing pursuit, e.g., roadblock, induced stop, etc.

13. COLLISION TYPE: Mark the choices, which describe any collisions occurring during the pursuit.

NO COLLISION – Self-explanatory.

VIOLATOR ACCIDENT - If an accident occurs involving only the violator vehicle.

POLICE ACCIDENT - If an accident occurs involving only a pursuing police vehicle.

UNINVOLVED ACCIDENT - If an accident occurs involving only a vehicle or vehicles not involved in the pursuit, and the accident is a result of the actions of either the violator or police vehicles, e.g., the violator forces an uninvolved vehicle off the road.

VIOLATOR - POLICE ACCIDENT - If an accident occurs involving the violator and pursuing police vehicles.

VIOLATOR - UNINVOLVED ACCIDENT - If an accident occurs involving the violator vehicle and an occupied vehicle not involved in the pursuit.

UNINVOLVED - POLICE ACCIDENT - If an accident occurs involving an occupied vehicle not involved in the pursuit and a pursuing police vehicle.

VIOLATOR - POLICE DEL. INT. (Deliberate intent) - If the violator vehicle was deliberately driven into a police vehicle.

VIOLATOR - UNINVOLVED DEL. INT. - (Deliberate intent) - If the violator vehicle was deliberately driven into an uninvolved vehicle.

POLICE - VIOLATOR LEGAL INTER. (Legal Intervention) - If a police vehicle was deliberately driven into the violator vehicle as an act of legal intervention.

14. APPREHENSION TECHNIQUES:

USED: Mark each apprehension technique used during the pursuit.

END PURSUIT: Mark one technique most responsible for ending the pursuit, if the violator vehicle was stopped.

TRAILING PURSUIT - Following the violator vehicle in an attempt to stop it.

ROAD SPIKES - Road Fangs, Spike Strips, Stop Sticks, or other devices designed to deflate the tires of a pursued vehicle.

PARTIAL ROADBLOCK - A roadblock intended to stop or slow the pursued vehicle while allowing the vehicle to pass through or around the roadblock.

TOTAL ROADBLOCK - A roadblock, which completely blocks the pursued vehicle's path, preventing the vehicle from passing through or around the roadblock without striking the roadblock.

ROLLING ROADBLOCK - One or more police vehicles being driven in front of, and in the same direction as, the pursued vehicle. The police vehicles are then slowed to force the violator vehicle to stop.

OTHER INDUCED STOP - One or more police vehicles being used to force the pursued vehicle to stop. For the purposes of this report, in an induced stop, there is no attempt to make contact with the pursued vehicle.

LEGAL INTERVENTION - For the purposes of this report, deliberately driving a police vehicle into the violator vehicle in an attempt to stop the vehicle.

FIREARMS - Firearms or long guns discharged at the pursued vehicle or driver.

REDACTED - LAW ENFORCEMENT SENSITIVE

15. NONPURSUIT RELATED CHARGES:  List the charges filed against the operator and occupants of the pursued vehicle, which are not a result of their conduct during the pursuit, if they are apprehended during the pursuit.  This includes charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9.  If there are more than four, list the four most serious charges here.  Charges filed in another state should be entered as if they were filed in Pennsylvania.  Check the appropriate space if there are additional non-pursuit-related charges and list them in the continuation/synopsis.

EXAMPLE:    A violator is the subject of an outstanding warrant for burglary and criminal trespass.  During the pursuit, the violator attempts to ram a pursuing police vehicle.  The violator is apprehended during the pursuit, and a search of the vehicle, incident to the violator's arrest, reveals illegal drugs.  CC3502 and CC3503 would be entered in this block (CC2702, aggravated assault, would be entered under Pursuit Related Charges, and the drug violations would be listed under Other Pursuit Related Charges.)

In the first two blocks, enter one of the following codes:

CC - Crimes Code
CS - Controlled Substance, Drug, Device and Cosmetic Act
FW - Fireworks Law
GM - Game Law
LL - Liquor Law
VC - Vehicle Code

In the next four blocks, enter the section number. For violations of the Controlled Substance, Drug, Device, and Cosmetic Act, delete the (a). Section 13(a)30 would be coded as 1330.

16. ROAD SURFACE:   Mark the choice which best described the condition of the road surface during the pursuit.

17. VISIBILITY:   Mark the choice which best described the visibility conditions during the pursuit.

DAY/CLR - Daylight, with no atmospheric obscurement, such as fog, rain, snow, etc.

DAY/OBSC - Daylight, with atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/CLR - Dusk or dawn, with no atmospheric obscurement, such as fog, rain, snow, etc.

DUSK/DAWN/OBSC - Dusk or dawn, with atmospheric obscurement, such as fog, rain, snow, etc.

DARK/CLR - Dark, with no atmospheric obscurement, such as fog, rain, snow, etc.

DARK/OBSC - Dark with atmospheric obscurement, such as fog, rain, snow, etc.

18. MISC:

PRIMARY PURSUING AGENCY - Mark this if your agency was the primary pursuing agency during the pursuit.

ASSISTING AGENCY - Mark this if your agency was assisting the primary pursuing agency. Only the primary pursuing agency is required to forward this report to the Pennsylvania State Police.

PSP - This report shall be forwarded in accordance with applicable directives regardless of the status of the Pennsylvania State Police as either the primary pursuing agency or an assisting agency.

PROBABLE USE DRUGS/ALCOHOL - Mark this if it is suspected that the violator is suspected of being under the influence of drugs or alcohol, regardless of whether charges relating to the use of drugs or alcohol are filed.

PURSUED VEH. OPPOSE TRAFFIC - Mark if the pursued vehicle was driven on a one-way roadway against the normal flow of traffic.

POLICE VEH. OPPOSE TRAFFIC - Mark if any police vehicle actively pursuing the violator was driven on a one-way roadway against the normal flow of traffic.

NOTE: If a police vehicle were driven on a one-way roadway against the normal flow of traffic while not actively pursuing the violator, such as to take a position at a roadblock, this block would not be completed.

19. PURSUIT-RELATED CHARGES: Mark all the charges resulting from the violator's operation of the pursued vehicle during the pursuit.

20. OTHER PURSUIT RELATED CHARGES: Enter any other charges resulting from the violator's operation of the pursued vehicle during the pursuit.

21. HIGHWAY: Mark the type of highway(s) on which the pursuit started, traveled on during the pursuit, and on which the pursuit ended.

22. AREA: Mark the type of area(s) in which the pursuit started, traveled through, and ended.

| | |
|---|---|
| URBAN/BUS | -Urban area or business district |
| SUBURBAN | -Self-explanatory |
| RESIDENTIAL | -Self-explanatory |
| RURAL | -Self-explanatory |

BLOCKS 23 THROUGH 37 - Enter three digits, e.g., enter three as 003, ten as 010, etc.

23. MARKED VEHICLES DIRECTLY INVOLVED: Enter the number of marked police vehicles directly involved in the pursuit. Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

24. UNMARKED VEHICLES DIRECTLY INVOLVED: Enter the number of unmarked police vehicles directly involved in the pursuit. Do not include vehicles, which were only utilized in a support role, e.g., roadblocks, etc.

25. VIOLATOR INJURIES: Enter the number of persons in the violator vehicle who received injuries resulting from vehicular operation during the pursuit.

26. POLICE INJURIES: Enter the number of persons in police vehicles who received injuries resulting from vehicular operation during the pursuit.

27. UNINVOLVED INJURIES: Enter the number of uninvolved persons who received injuries resulting from vehicular operation during the pursuit.

28. VIOLATOR DEATHS: Enter the number of persons in the violator vehicle who were killed as a result of vehicular operation during the pursuit.

29. POLICE DEATHS: Enter the number of persons in police vehicles who were killed as a result of vehicular operation during the pursuit.

30. UNINVOLVED DEATHS: Enter the number of uninvolved persons who were killed as a result of vehicular operation during the pursuit.

31. VIOLATOR PROPERTY DAMAGE: Enter the estimated amount of property damage to the violator's vehicle resulting from the pursuit.

32. POLICE PROPERTY DAMAGE: Enter the estimated amount of property damage to police vehicles resulting from the pursuit.

33. UNINVOLVED PROPERTY DAMAGE: Enter the estimated amount of property damage to uninvolved property resulting from vehicular operation during the pursuit.

34. NUMBER OF PERSONS IN PURSUED VEHICLE: Self-explanatory.

35. PERSONS IN PURSUED VEHICLE ARRESTED: Self-explanatory.

36. LENGTH OF PURSUIT (MILES): Self-explanatory.

37. TIME ELAPSED DURING PURSUIT (MINUTES): Self-explanatory.

38. VEHICLE: Enter the pertinent information concerning the pursued vehicle.

39. VIOLATOR: Enter the pertinent information concerning the pursued subject.

40. CONTINUATION/SYNOPSIS: Self-explanatory.

PENNSYLVANIA POLICE PURSUIT REPORTING SYSTEM
COMMON REPORTING ERRORS

Block 8 (JURIS NUMBER)

This block must be completed. If you don't know this number, you can obtain it from the person in your department who submits Uniform Crime Report information to the Pennsylvania State Police, or call the number listed below.

Block 9 (REASON INITIATED)
Mark ONLY ONE selection. If two or more selections could be made, mark only the most serious. For example, if a violator is pursued for a speeding violation, and it is later determined that the vehicle is stolen, then OTHER TRAFFIC should be marked. If, before attempting to stop the speeder, the officer learns that the vehicle has been reported stolen, then STOLEN OR SUSPECTED should be marked. Selection should usually agree with non-pursuit-related charges in block 15.

Blocks 10(TYPE VEHICLE PURSUED), 11 (APPREHENSION), 12 (REASON TERMINATED)
    Mark only one selection in each block.

Block 13 (COLLISION TYPE)
    More than one selection may be marked.

Blocks 11(APPREHENSION), 39 (VIOLATOR)
If a violator is identified in Block 39, some type of apprehension should be indicated in Block 11.

Block 14 (APPREHENSION TECHNIQUES)
There may be more than one selection made under USED. No more than one selection may be made under END PURSUIT.

One selection under END PURSUIT must be marked, unless NONE-VIOLATOR SUCCESSFULLY ELUDED POLICE or NONE-DECISION MADE TO TERMINATE or DELAYED - AFTER TERMINATION OF PURSUIT are marked in block 11 (APPREHENSION).

Also, OTHER INDUCED STOP refers to one or more police vehicles being used to force the pursued vehicle to stop. It does not include TOTAL ROADBLOCK, ROLLING ROADBLOCK, and LEGAL INTERVENTION (in legal intervention, a police vehicle is deliberately driven into the pursued vehicle.

Block 15 (NONPURSUIT-RELATED CHARGES), 20 (PURSUIT-RELATED CHARGES)
    Listing charges:

    | RIGHT | WRONG |
    |-------|-------|
    | VC 1543 | 75 1543 |

Blocks 15, 19, 20 (NONPURSUIT AND PURSUIT-RELATED CHARGES)
If suspect was not apprehended, no charges should be indicated in Blocks 15, 19, or 20.

Include charges previously filed if the violator is fleeing to avoid their capture or the capture of any occupant of the pursued vehicle and the charge for the offense marked in Block 9.

For example, a violator is the subject of an outstanding warrant for burglary and criminal trespass. During the pursuit, the violator attempts to ram a pursuing police vehicle. The violator is apprehended during the pursuit, cocaine is found in his vehicle. CC3502 (burglary), CC3503 (criminal trespass, and CS1316 (possession of a controlled substance) would be entered in Block 15 (NONPURSUIT-RELATED CHARGES), CC2702 (aggravated assault) would be entered in Block 19 (PURSUIT-RELATED CHARGES). (The example in the original instructions indicated the drug charges would be considered pursuit-related. This was incorrect.)

NEW FOR 1997 Also include charges exceptionally cleared. For example, if a suspect is killed in the course of the pursuit or other police action related to the pursuit, but otherwise would have been charged with fleeing and eluding, recklessly endangering another person, and aggravated assault, then these charges should be listed in the appropriate blocks.

Block 19, 20 (PURSUIT-RELATED CHARGES)
Charges listed in Block 15 may be listed here also, but only if they are the result of a different incident. For example, aggravated assault is listed in Block 15 because of an outstanding warrant, then the suspect, during the pursuit, rams a pursuing vehicle, resulting in another aggravated assault charge, which would then be listed in Block 20

Blocks 23 through 37
      Enter only whole numbers, in three-digit format

      001    RIGHT
      1.0    WRONG

Blocks 31 through 33 (PROPERTY DAMAGE)
      These amounts must be reported in multiples of $100.

| For example: | 005 | $500.00 |
|---|---|---|
| | 050 | $5,000.00 |
| | 500 | $50,000.00 |

---

## BY COMMAND OF THE POLICE COMMISSIONER

---

EXHIBIT "B"

ATTORNEY: Flager & Associates                                 6·2·19

DATE OF ACCIDENT: 5·7·19

CLIENT : Ryan Miller

Witness statement of Steven Mattos.

I, Steven Mattos, reside at 5343 Eadom St. Phila, Pa 19137. My cell number is 267-339-1720.

On or about Tuesday, 5·7·19 at approximately 7:15 pm I was in my vehicle, in the parking, across the street from my house. I was waiting for my dad to move his car so I could park my car in his spot. At that time, I saw the boy on the scooter being chased by the white Ford Explorer SUV police car and the officer did not have his lights on or sirens. They came down Eadom St. and before I exited, I waited because they were flying down the street. The boy then turned into the parking and then cut through the storage unit parking lot and back onto Eadom St. going towards Fraley St. The silver unmarked police car then came down Eadom St. speeding toward the boy on the scooter. The white Ford Explorer SUV was now behind the silver unmarked car about a few hundred feet and speeding down Eadom St. I saw and heard both police vehicles engines accelerating and they were going down Eadom St. doing between 60-70 mph going through the stop sign at Kennedy St. I saw the boy turn right onto Fraley St. and the police chased him in the same direction on Fraley St. That was the last I saw them. My dad told me around 8:00 pm that the boy was killed and hit by a truck.

I did not receive any compensation for providing this statement.

Scanned with CamScanner

I have read this statement and it is true and correct to the best of my knowledge. End of statement.

WITNESS: _~signature~_ DATE: 06/02/19

This statement was obtained by Rich Strohm of Cipriano Investigations

EXHIBIT "C"

DC#: 19-15-04476

AID CASE #: 19-742

NAME: Gary Bave

SEX: M   RACE: W   AGE: 55   DOB: 1-12-64   SS#:

ADDRESS: STREET NUMBER: 4574 Melrose St.

CITY: Phila   STATE: Pa   ZIP CODE: 19124   PHONE:   HOME: ( ) -

CELL: ( ) 215 - 668

NAME OF EMPLOYER/SCHOOL: N/A

WORK/SCHOOL PHONE #: ( ) 9271

EMPLOYER/SCHOOL ADDRESS: STREET NUMBER: N/A

CITY:   STATE:   ZIP CODE:

DATES OF PLANNED VACATIONS/BUSINESS TRIPS: NONE

NAME OF CLOSE RELATIVE: NONE

ADDRESS: NONE   RELATIONSHIP: N/A

CITY:   STATE: N/A   ZIP CODE: N/A   PHONE:   HOME: ( ) - N/A

CELL: ( ) - N/A

INTERVIEW LOCATION: On Scene

INTERVIEW DATE & TIME STARTING: /
ENDING: 5-6-19 - 9:22 pm

INTERVIEWED BY: P/O Anderson #5256   WITNESSED BY:

WE ARE QUESTIONING YOU CONCERNING:

Auto Crash Bike vs. Truck

INCIDENT DATE: 1 5-6-19

INCIDENT TIME: :

WARNINGS GIVEN (75 Misc 3):

REQUEST TO CONSENT TO
INTERVIEW (75 Misc 6)

WARNINGS/CONSENT GIVEN
DATE & TIME:

ANSWERS:   (1)   (2)   (3)   (4)   (5)   (6)   (7)

Q1 - ARE you The Driver of VEH.1 or VEH2

A1 - Neither - (Witnessed) Auto Acc.

Q2 - What Type of VEH. ARE you Driving.

A.2. Ford Fusion - 2015 - (I was not involved)

Q3 - Where their Any passengers in the VEH
with you / who / position in VEH.

A-3   N/A

X Gary Bave

RECORD CHECK:   PPN#:   BMV CHECK:   CHECKED BY:

INTERVIEWEE SIGNATURE: P/O Anderson #

VIEWED BY:

D. -50

Q4 - Which way was you Driving -

A4   E/B on Farley st.

Q5 - Which wey was The second Veh. Traveling or Ped going - THe Bike was going E/B on Farley st

Q6 - How fast where you Traveling - About 5-

A-6   10 mph. I Had just turned the Corner.

Q7 - How fast was the 2nd Veh. Traveling (Appox)

A-8   Not sure - But he was going pretly fast.

Q-8 - Are you THe owner of THe Veh.

A-8       N/A

Q9 - What Happened - WHere - How - Description (Street - person - position of Veh)

I was traveling S/B on Tocony And made a right on Farley st. And a Right on James street leaded to my stop. When I got to scattergood street I saw a P/O grabbing a white male on a Bike pulling him. FHe male on the Bike pulled Away And took off on the Bike. THe male went North on E/D on street And made Right E/B on or Farly street. I made Both turns Behind the male But was about 15 to 20 feet Behind him. THe male on the Bike was traveling fast down Farley st. And Had a Red light. FHe male did not stop And tryed to go thu.

INTERVIEWEE SIGNATURE:

D. -50

Anderson 5756

The male went straight into the Back of the Truck. The Bike went straight down. it look like he tryed to turn But couldn't. The truck try to turn to the left But was unable to get out his way. I stopped But moved Because the same P/O pulled Behind me And told me to move. I got out VEH. And P/O was attending to male. Q10 Medics responded later.

Q11 WAS P/O Behind Bike when Acc. Happend

A-10 NO

DiD you hear Any Sirens or see P/O lights.

NO.

X [signature]

EXHIBIT "D"

# Philadelphia Police Department Investigation Report

| | | |
|---|---|---|
| DC Number | 2019-15-044176 | **A - Approved** |
| Report No | 2019-15-044176.1 | |
| Report Date | 7/18/2019 8:36:03 PM | Page 1 of 3 |
| Report Type | Investigation Report (75-49) | |

## Unit Control#:  2019-5400-000742-1

| | | | |
|---|---|---|---|
| Classification | 0123 - MANSLAU GROSS NEG BY CONVEYANCE, NO ARREST | Occurred On | 5/7/2019 12:00:01 AM |
| Previous Classification | 0123 - MANSLAU GROSS NEG BY CONVEYANCE, NO ARREST | Reported On | 5/7/2019 7:27:03 PM |
| Location of Occurrence | Fraley St / Tacony St | Disposition / Status | 4 - Active |
| Dist/Sect of Occurrence | 15th District PSA 2 | Clearing Unit | |
| Responding Officer | Differential Response Unit (PR 999999 / #) | Investigating Officer | P/O BARNEL ANDERSON (PR 230580 / #5756) |
| Assisted By | | Dist/Unit Preparing | 5400 - Accident Investigation Division |
| Related Cases | | | |

## Report Approval

| | | |
|---|---|---|
| Completed | 7/18/2019 8:36:03 PM | P/O BARNEL ANDERSON (PR 230580 / #5756) |
| Approved | 7/19/2019 4:39:24 PM | Sgt MARK BRADLEY (PR 219619 / #8798) |

## Report Summary

**Assignment:**
Recieved assignment on 05-08-2019 at approxiametly 8:00pm inside the A.I.D Head Quarters. I P/O Anderson#5756 the assigned investigator responded to the scene of the crash and was met by P/O Savino#5458 assigned to the 15th dist who stated in summary, Unit#2 driver stated while traveling S/B on Tacony St. and driving through intersection of Fraley st. had a steady green light. He saw a motion out of the corner of his eye and looked into his right mirror and saw a person on a small scooter. He tried swerving to the left to avoid accident but saw the person strike the rear of his trailer and disappeared from view. The driver did come to a stop and exited the truck. He saw a young white male ( operator of Unit#1 ) laying on the ground with severe head truma. He then called 911. After medics arrived, the driver of Unit#1 was pronouced. The officer also report a witness observed  Unit#1 traveling E/B on Fraley St at a high rate of speed and did drive through a steady red light at the intersection before striking the tractor trailer. Unit#1 was towed from the location. The driver of Unit#1 was transported to the E.M. office via police wagon. Uniut#2 was not damaged.

**Scene:**
A. Location: Tocony and Fraley St.
B. Traffic Control: Traffic Controls functioning properly.
C. Weather: None that affected this crash.
D. Lighting: Day Light.

**Physical Evidence:**
A. Tire marks: None
B. Debris: Plastic and fluids from Unit#1.
C. Blood: Blood present. Truma to the driver of Un it#1 head
D. Photos: Photos taken at the scene
E. Video: Video obtained but does not show crash and impact.
F. Point of impact: Tacony St. anf Fraley St.
G. Point of Rest: Same Location

**Vehicle Examination**
A. Unit#2 was examined by truck enforcement

**Witness Staement:**
A. Statement taken from Gary Bove

**Statement of Principle:**
A. Refer to the Results and Conclusion portion of this report.

**Injuries:**
A. The driver of Unit#1 (5292)

**Other Infomation:**
A. A BMV check was conducted of UNIT#1 and #2

**Results and Conclusion:**
The assigned has determined that this crash did occur in the City and County of Phila. Unit#1 was initially being pursued by Highway 14. After Unit#1 made several turns the High Way office was able to stop Unit#1. The office exited his vehicle, approached the driver and the driver again took off on the officer. Unit#1 made several turns and the High Way unit lost sight of Unit#1. Unit#1 traveled E/B on Fraley St. at a high rate of speed and did go through the red light at Fraley and Tacony and struck Unit#2 ( Tractor Trailer ). Unit#1 slipped on its side before impact. The driver struck his head on unk part of trailer. Unit#2 driver swerve to the left when he saw Unit#1 to avoid impact but was not able to. The driver stopped, exited the vehicle and saw the driver on the ground. The High Way unit pulled up shortly and saw the male as well and notified police radio. Medics arrived and pronouced the male. A safty check was conducted on Unit#2 via truck enforcement ( properly functioning ). Unit#1 was towed and the driver was tranported to the M.E Office.

# Philadelphia Police Department Investigation Report
DC Number    2019-15-044176
Report No    2019-15-044176.1
Report Date   7/18/2019 8:36:03 PM
Report Type   Investigation Report (75-49)

# A - Approved
Page 2 of 3

The causation of the crash is the driver of Unit#1. The driver ran the red light at a high rate of speed striking Unit#2. Via the witness, the High Way Unit was not behind Unit#1 at the time of the crash. The officer drove up shortly after collision.

Action:

## Classification Detail: 0123 - MANSLAU GROSS NEG BY CONVEYANCE, NO ARREST

| | | | | | | |
|---|---|---|---|---|---|---|
| Location | 053 - Highways (Outside Structure) | | | No. Prem. Entered | |
| Offense Completed? | YES | Using | | Entry Method | |
| Hate/Bias | None (No Bias) | Criminal Activity | | Type Security | |
| Domestic Violence | NO | Weapons/Force | Other | Tools | |

## Victim / Complainant V1: ESPINOSA, AUGUSTO

| | | | | | |
|---|---|---|---|---|---|
| Address | 3009 Longshore Ave | DOB | | Officer Payroll # | |
| CSZ | Philadelphia, PA  19149 | Age / Race / Sex | 58 / White / Male | District / Unit | |
| Home Phone | 215 852-9853 | Ethnicity | Hispanic Origin | SSN | |
| Cell Phone | | Occupation/Grade | | OLN | |
| Beeper | | Employer/School | | OLN State / Country | / |
| Email | | Emp/Sch Address | | Injury | |
| Work Phone | | Emp/Sch CSZ | | Circumstances | Other Negligent Killings |
| Found Date | | Found Location | | Reason for Absence | |
| Reason for Cancellation | | Found City | | | |
| PCIC/NCIC | | | | | |
| Notification | | | | | |
| Victim Notes | | | | | |

### Interview Section
| | | | | |
|---|---|---|---|---|
| Interview Date | | Interviewed By | (PR / #) | 75-483 Completed |
| Interview Location | | Others Present | | |
| Interview Summary | | | | |

# Property

| Description | | Reported Value | Recovered Value |
|---|---|---|---|
| | TOTAL | $0 | $0 |

## Suspect S1: Miller, Rayn

| | | | | | |
|---|---|---|---|---|---|
| AKA | | DOB | 12/25/2003 | SSN | |
| Alert(s) | | Age / Race / Sex | 15 / White / Male | OLN | |
| Address | 5723 Charles St | Ethnicity | Not of Hispanic Origin | OLN State / Country | / United States of America |
| CSZ | Philadelphia, PA  19135 | Place of Birth | | | |
| Home Phone | | Occupation/Grade | | Build | |
| Cell Phone | | Employer/School | | Scars/Marks/Tattoos | |
| Beeper | | Emp/Sch Address | | Teeth | |
| Email | | Emp/Sch CSZ | | Facial Hair | |
| Work Phone | | Height / Weight | / | Complexion | |
| Attire | | Eye / Hair Color | / | Hair Style / Length | / |
| Jewelry | | Artif. Body Prts/Aids | | Blood Type | |
| Suspect Notes | | | | | |

### Interview Section
| | | | | |
|---|---|---|---|---|
| Interview Date | | Interviewed By | (PR / #) | 75-483 Completed |
| Interview Location | | Others Present | | |
| Interview Summary | | | | |

NetRMS_CR.rtf v2f

Printed: August 14, 2019 - 2:07 PM

# Philadelphia Police Department Investigation Report

DC Number   **2019-15-044176**
Report No   **2019-15-044176.1**
Report Date   **7/18/2019 8:36:03 PM**
Report Type   **Investigation Report (75-49)**

# A - Approved

Page 3 of 3

**Case Facts**

**MO**

**Actions Taken**

AA-500S TX

Incident Number: **201915044176**

# Commonwealth of Pennsylvania Police Crash Report

PAGE 1

**Crash Involves:** ○ DUI ◉ Fatality ○ Hit and Run ◉ Commercial Vehicle ○ State Police Vehicle ○ Local Police Vehicle  REPORTABLE CRASH
○ N/A ○ Work Zone ○ ATV ○ Snowmobile ○ Commonwealth Vehicle ○ Local Gov Vehicle

## Police Agency Data

| | | |
|---|---|---|
| Agency Name **PHILADELPHIA** | Case Closed **NO** | Patrol Zone **03** | Investigation Date **05/08/2019** |

| Dispatch Time **19:47** hrs. | Arrival Time **20:00** hrs. | Investigator **SAVINO, CHRISTOPHER** | Badge Number **05458** |
| Approval Date | Reviewer | Reviewer Badge Number |

## Crash Data

| Date of Crash **05/07/2019** | Time of Crash **19:27** hrs. | Day of the Week **TUESDAY** | Crash Description **SIDESWIPE (OPPOSITE DIRECTION)** |
|---|---|---|---|
| County **PHILADELPHIA** | | Municipality **PHILADELPHIA CITY** | |
| Weather Conditions **NO ADVERSE CONDITIONS** | | Relation to Roadway **ON TRAVEL LANES** | |
| Illumination **DUSK** | | Road Surface Conditions **DRY** | |

| # of Units **002** | # of People **002** | # of Injured **000** | # Killed **001** |
|---|---|---|---|

| School Bus Related **NO** | School Zone Related **NO** | PennDOT Notified **NO** | Type of Intersection **"T" INTERSECTION** | Special Location **NOT APPLICABLE** |

## Work Zone

Work Zone **NO**  Work Zone Type   Where in Work Zone

Speed Limit  Workers Present  Officer Present  Work Zone Characteristics
☐ Lane Closure  ☐ Road Closed with Detour  ☐ Work on Shoulder or Median  ☐ Intermittent or Moving Work  ☐ Flagger Control  ☐ Other

## Principal Road

| Route Signing **LOCAL ROAD OR STREET** | Route Number **0000** | Segment Number | Travel Lanes **02** | Speed Limit **35 MPH** | Orientation **SOUTH** |
|---|---|---|---|---|---|
| House Number | Street Name **TACONY** | | | | St. Ending **STREET** |

## Intersecting Rd.

| Used in Intersection Crashes | Route Signing **LOCAL ROAD OR STREET** | Route Number **0000** | Segment Number | Travel Lanes **01** | Speed Limit **25 MPH** | Orientation **EAST** |
|---|---|---|---|---|---|---|
| | Street Name **FRALEY** | | | | | St. Ending **STREET** |

## Distance From Landmark / Used for Mid-Block Crashes

| Landmark 1 | Route Number | Or Mile Post | Tenths | Or Segment Marker | Ramp Use Only | Feet |
|---|---|---|---|---|---|---|
| | Street Name | | | Street Ending | | Or Miles | Tenths |

| Landmark 2 | Route Number | Or Mile Post | Tenths | Or Segment Marker | Ramp Use Only | The above entry is the distance from the Crash Scene to Landmark 1 |
|---|---|---|---|---|---|---|
| | Street Name | | | Street Ending | | |

## GPS

| Latitude: | Degrees **40** | Minutes **00** | Seconds **34** | Decimal **520** | Longitude: | Degrees **75** | Minutes **03** | Seconds **50** | Decimal **830** |
|---|---|---|---|---|---|---|---|---|---|

## TCD

Traffic Control Device **TRAFFIC SIGNAL**  Traffic Control Functioning **DEVICE FUNCTIONING PROPERLY**

## Lane

| Lane Closed **FULLY** | Lane Closure Direction **ALL (N,S,E,W)** | Traffic Detoured **YES** | Estimated Time Closed **1-3 HRS** |
|---|---|---|---|

## Environmental / Roadway Potential Factors (E/R)

| Factor 1 **NONE** | Factor 2 | Factor 3 |
|---|---|---|

## Event Information

| First Harmful Event in the Crash | Most Harmful Event in the Crash |
|---|---|

| Unit Number **001** | Harmful Event **HIT UNIT 2** | Unit Number **001** | Harmful Event **HIT UNIT 2** |
|---|---|---|---|

| Indicated Prime Factor **DRIVER ACTION** | Unit Number **001** | Prime Factor Driver Action **RUNNING RED LIGHT** |
|---|---|---|

Prime Factor Environmental/Roadway   Prime Factor Vehicle Failure   Prime Factor Pedestrian Action

| Road Surface Type **BLACKTOP** | Special Jurisdiction **NO SPECIAL JURISDICTION** |
|---|---|

# Commonwealth of Pennsylvania Police Crash Report

**Crash Involves:** ○ DUI ◉ Fatality ○ Hit and Run ◉ Commercial Vehicle ○ State Police Vehicle ○ Local Police Vehicle **REPORTABLE CRASH**
○ N/A ○ Work Zone ○ ATV ○ Snowmobile ○ Commonwealth Vehicle ○ Local Gov Vehicle

| Unit Number | Type Unit | | | Commercial Vehicle | |
|---|---|---|---|---|---|
| 001 | Motor Vehicle in Transport | | | No | |

| First Name | MI | Last Name | | Suffix | DOB | Telephone Number |
|---|---|---|---|---|---|---|
| RYAN | | MILLER | | | 12/25/2003 | |

| Street Address | City | | State | Zip Code |
|---|---|---|---|---|
| 5723 CHARLES ST | PHILADELPHIA | | PA | 19135 |

| Gender | License Number | License State | Class | Expiration Date | Owner/Driver |
|---|---|---|---|---|---|
| MALE | 00000000 | PA | ID | 12/25/2020 | UNKNOWN |

| Driver Presence | Physical Condition |
|---|---|
| DRIVER OPERATED VEHICLE | APPARENTLY NORMAL |

**Driver/Pedestrian Information**

| Violation 1 | Person Charged |
|---|---|
| FAILURE TO STOP AT RED SIGNAL | N - NOT CHARGED |

| Violation 2 | Person Charged |
|---|---|
| | |

| Violation 3 | Person Charged |
|---|---|
| | |

| Violation 4 | Person Charged |
|---|---|
| | |

| Alcohol/Drugs Suspected | Alcohol Test Type | Alcohol Test Results |
|---|---|---|
| UNKNOWN | UNKNOWN IF TEST GIVEN | |

| Drug Test Type | Drug Test Results |
|---|---|
| UNKNOWN IF TEST GIVEN | UNKNOWN IF TESTED FOR DRUGS |

| Driver Action | RUNNING RED LIGHT |
|---|---|

| Pedestrian Action | Pedestrian Signals | Pedestrian Clothing | Pedestrian Location |
|---|---|---|---|
| | | | |

| 1st Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
|---|---|---|---|
| HIT UNIT 2 | | YES | |

| 2nd Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
|---|---|---|---|
| | | | |

| 3rd Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
|---|---|---|---|
| | | | |

| 4th Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
|---|---|---|---|
| | | | |

| Owner First Name | | Owner MI | Owner Last Name or Business Name | | Suffix |
|---|---|---|---|---|---|
| RYAN | | | MILLER | | |

| Street Address | City | | State | Zip Code | Telephone Number |
|---|---|---|---|---|---|
| 5723 CHARLES ST | PHILADELPHIA | | PA | 19135 | |

| Vehicle Type | Vehicle Automation | Special Usage | Government Equipment Number |
|---|---|---|---|
| OTHER TYPE SPEC VEH | NO AUTOMATION | NOT APPLICABLE | |

| Model Year | Vehicle Make | Vehicle Model | Vehicle Color | VIN |
|---|---|---|---|---|
| | YAMAHA | SCOOTER | BLACK | RKRSEB1Y8GA001274 |

| License Plate | Reg. State | Est. Speed | Vehicle Towed | Towed By |
|---|---|---|---|---|
| 000000 | | 999 | YES | PHILA POLICE TOW SQUAD |

| Insurance | Insurance Company | Policy Number | Expiration Date |
|---|---|---|---|
| NO | | | |

**Vehicle Information**

| Direction of Travel | Vehicle Position | Vehicle Movement | Initial Impact Point |
|---|---|---|---|
| EAST | LEFT LANE | TURNING LEFT | 12 O'CLOCK |

| Damage Indicator | Gradient | Road Alignment | Possible Vehicle Failures |
|---|---|---|---|
| DISABLING | LEVEL | STRAIGHT | NONE |

**Trailing Units**

| # of Units | Type Unit 1 | Tag Number | Tag Year | Tag State |
|---|---|---|---|---|
| 0 | | | | |

| Unit Make | | | Unit Owner | |
|---|---|---|---|---|
| | | | | |

| Type Unit 2 | | Tag Number | Tag Year | Tag State |
|---|---|---|---|---|
| | | | | |

| Unit Make | | | Unit Owner | |
|---|---|---|---|---|
| | | | | |

**Motorcycle**

| Engine Size | Passenger? | Saddle Bag/Trunk? | Trailer? | Driver Education? |
|---|---|---|---|---|
| cc | | | | |

| Driver Helmet Type | Helmet Stayed On? | DOT/Snell Designation? | Eye Protection? | Long Sleeves? | Long Pants? | Over Ankle Boots? |
|---|---|---|---|---|---|---|
| | | | | | | |

| Passenger Helmet Type | Helmet Stayed On? | DOT/Snell Designation? | Eye Protection? | Long Sleeves? | Long Pants? | Over Ankle Boots? |
|---|---|---|---|---|---|---|
| | | | | | | |

**Pedal cycle**

| Passenger? | Helmet? | Head Lights? | Rear Reflectors? |
|---|---|---|---|
| | | | |

# Commonwealth of Pennsylvania Police Crash Report

**Crash Involves:** ○ DUI  ◉ Fatality  ○ Hit and Run  ◉ Commercial Vehicle  ○ State Police Vehicle  ○ Local Police Vehicle  **REPORTABLE CRASH**
○ N/A  ○ Work Zone  ○ ATV  ○ Snowmobile  ○ Commonwealth Vehicle  ○ Local Gov Vehicle

## Driver/Pedestrian Information

| Unit Number | Type Unit | | Commercial Vehicle |
|---|---|---|---|
| 002 | Motor Vehicle in Transport | | Yes |

| First Name | MI | Last Name | | Suffix | DOB | Telephone Number |
|---|---|---|---|---|---|---|
| AUGUSTO | | ESPINOSA | | | 02/03/1961 | (215) 852-9853 |

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 3009 LONGSHORE AVE | PHILADELPHIA | PA | 19149 |

| Gender | License Number | License State | Class | Expiration Date | Owner/Driver |
|---|---|---|---|---|---|
| MALE | 26439174 | PA | A | 02/14/2023 | PRIVATE VEHICLE OWNED/LEASED BY DRIVER |

| Driver Presence | Physical Condition |
|---|---|
| DRIVER OPERATED VEHICLE | APPARENTLY NORMAL |

| | Person Charged |
|---|---|
| Violation 1 | |
| Violation 2 | |
| Violation 3 | |
| Violation 4 | |

| Alcohol/Drugs Suspected | Alcohol Test Type | Alcohol Test Results |
|---|---|---|
| NO | TEST NOT GIVEN | |

| Drug Test Type | Drug Test Results |
|---|---|
| NONE | NO DRUGS REPORTED |

| Driver Action |
|---|
| NO CONTRIBUTING ACTION |

| Pedestrian Action | Pedestrian Signals | Pedestrian Clothing | Pedestrian Location |
|---|---|---|---|
| | | | |

| 1st Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
|---|---|---|---|
| STRUCK BY UNIT 1 | | YES | |
| 2nd Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
| 3rd Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |
| 4th Harmful Event | Left or Right Side | Most Harmful | Utility Pole Number |

## Vehicle Information

| Owner First Name | | Owner MI | Owner Last Name or Business Name | | Suffix |
|---|---|---|---|---|---|
| AUGUSTO | | | ESPINOSA | | |

| Street Address | City | State | Zip Code | Telephone Number |
|---|---|---|---|---|
| 3009 LONGSHORE AVE | PHILADELPHIA | PA | 19149 | (215) 852-9853 |

| Vehicle Type | Vehicle Automation | Special Usage | Government Equipment Number |
|---|---|---|---|
| LARGE TRUCK | NO AUTOMATION | TRACTOR TRAILER | |

| Model Year | Vehicle Make | Vehicle Model | Vehicle Color | VIN |
|---|---|---|---|---|
| 1999 | OTHER | 4800 | WHITE | 1XKWDB9X1XJ815567 |

| License Plate | Reg. State | Est. Speed | Vehicle Towed | Towed By |
|---|---|---|---|---|
| AG83997 | PA | 025 | NO | |

| Insurance | Insurance Company | Policy Number | Expiration Date |
|---|---|---|---|
| UNKNOWN | | | |

| Direction of Travel | Vehicle Position | Vehicle Movement | Initial Impact Point |
|---|---|---|---|
| SOUTH | RIGHT LANE "CURB" | GOING STRAIGHT | 5 O'CLOCK |

| Damage Indicator | Gradient | Road Alignment | Possible Vehicle Failures |
|---|---|---|---|
| FUNCTIONA | LEVEL | STRAIGHT | NONE |

### Trailing Units

| # of Units | Type Unit 1 | Tag Number | Tag Year | Tag State |
|---|---|---|---|---|
| 1 | SEMI-TRAILER | 2365256 | 2016 | ME |

| Unit Make | Unit Owner |
|---|---|
| HERCULES GALION | TREND INTERMODEL CHASSIS LEASING |

| Type Unit 2 | Tag Number | Tag Year | Tag State |
|---|---|---|---|
| | | | |

| Unit Make | Unit Owner |
|---|---|
| | |

### Motorcycle

| Engine Size | Passenger? | Saddle Bag/Trunk? | Trailer? | Driver Education? |
|---|---|---|---|---|
| cc | | | | |

| Driver Helmet Type | Helmet Stayed On? | DOT/Snell Designation? | Eye Protection? | Long Sleeves? | Long Pants? | Over Ankle Boots? |
|---|---|---|---|---|---|---|
| | | | | | | |

| Passenger Helmet Type | Helmet Stayed On? | DOT/Snell Designation? | Eye Protection? | Long Sleeves? | Long Pants? | Over Ankle Boots? |
|---|---|---|---|---|---|---|
| | | | | | | |

### Pedalcycle

| Passenger? | Helmet? | Head Lights? | Rear Reflectors? |
|---|---|---|---|
| | | | |

# Commonwealth of Pennsylvania Police Crash Report

**Crash Involves:** ○ DUI ⊙ Fatality ○ Hit and Run ⊙ Commercial Vehicle ○ State Police Vehicle ○ Local Police Vehicle **REPORTABLE CRASH**
○ N/A ○ Work Zone ○ ATV ○ Snowmobile ○ Commonwealth Vehicle ○ Local Gov Vehicle

## Commercial Vehicle

| Unit Number | Number of Axles | Carrier Name | | | | Phone Number | | |
|---|---|---|---|---|---|---|---|---|
| 2 | 05 | WORLD LOGISTICS USA INC | | | | (609) 259-6102 | | |

| Street Address | City | | State | Zip Code |
|---|---|---|---|---|
| 173 ROUTE 526 | ALLENTOWN | | NJ | 08501 |

| Cargo Body Type | Vehicle Configuration | | GVWR |
|---|---|---|---|
| VAN / ENCLOSED BOX | TRACTOR / SEMI-TRAILER(S) | | 080000 |

| Oversize Load | USDOT Number | ICC Number | PUC Number | Hazardous Materials |
|---|---|---|---|---|
| NO | 00823590 | | | NO |

| HazMat Class 1 | Release Indicator 1 |
|---|---|
| | |

| HazMat Class 2 | Release Indicator 2 |
|---|---|
| | |

| HazMat Class 3 | Release Indicator 3 |
|---|---|
| | |

| HazMat Class 4 | Release Indicator 4 |
|---|---|
| | |

## Fatality

| Unit # | Driver Restrictions Compliance | Driver Endorsement Compliance | Driver License Compliance |
|---|---|---|---|
| 1 | NOT A PENNSYLVANIA DRIVER | NONE REQUIRED | NOT A PENNSYLVANIA DRIVER |

| Principal Impact Point | Avoidance Maneuver |
|---|---|
| 12 O'CLOCK | INCONCLUSIVE |

| Under Ride Indicator | Emergency Use |
|---|---|
| UNDERRIDE, NO COMPARTMENT INTRUSION | NOT IN EMERGENCY USE |

## People Information

| Unit # | Person No. | First Name | MI | Last Name | Suffix | DOB |
|---|---|---|---|---|---|---|
| 001 | 001 | RYAN | | MILLER | | 12/25/2003 |

| Street Address | City | | State | Zip Code |
|---|---|---|---|---|
| 5723 CHARLES ST | PHILADELPHIA | | PA | 19135 |

| Phone Number | EMS Transport | Person Type | Gender |
|---|---|---|---|
| | NO | DRIVER | MALE |

| EMS Agency | Medical Facility |
|---|---|
| PHILADELPHIA FIRE DEPT | NONE |

| Injury Severity |
|---|
| FATAL INJURY |

| Seat Position | Safety Equipment 1 |
|---|---|
| DRIVER - ALL VEHICLES | NONE USED / NOT APPLICABLE |

| Safety Equipment 2 | Extrication |
|---|---|
| NONE USED / NOT APPLICABLE | NOT APPLICABLE |

| Ejection | Ejection Path |
|---|---|
| NOT APPLICABLE | NOT EJECTED/NOT APPLICABLE |

## People Information

| Unit # | Person No. | First Name | MI | Last Name | Suffix | DOB |
|---|---|---|---|---|---|---|
| 002 | 002 | AUGUSTO | | ESPINOSA | | 02/03/1961 |

| Street Address | City | | State | Zip Code |
|---|---|---|---|---|
| 3009 LONGSHORE AVE | PHILADELPHIA | | PA | 19149 |

| Phone Number | EMS Transport | Person Type | Gender |
|---|---|---|---|
| (215) 852-9853 | NO | DRIVER | MALE |

| EMS Agency | Medical Facility |
|---|---|
| | NONE |

| Injury Severity |
|---|
| NOT INJURED |

| Seat Position | Safety Equipment 1 |
|---|---|
| DRIVER - ALL VEHICLES | LAP AND SHOULDER BELT USED |

| Safety Equipment 2 | Extrication |
|---|---|
| NONE USED / NOT APPLICABLE | NOT EXTRICATED |

| Ejection | Ejection Path |
|---|---|
| NOT EJECTED | NOT EJECTED/NOT APPLICABLE |

## Witness

| First Name | MI | Last Name | Suffix | Phone Number |
|---|---|---|---|---|
| GARY | | BOVE | | (215) 668-9271 |

| Street Address | City | | State | Zip Code |
|---|---|---|---|---|
| 4574 MELROSE ST | PHILADELPHIA | | PA | 19124 |

## Notified

| Person\Business Notified | Phone Number | Date Notified | Time Notified |
|---|---|---|---|
| ACCIDENT INVESTIGATON | (215) 685-3181 | 05/07/2019 | 20:00 |

| Reason for Notification |
|---|
| FATAL ACCIDENT |

Crash Involves:    ○ DUI   ◉ Fatality   ○ Hit and Run   ◉ Commercial Vehicle   ○ State Police Vehicle   ○ Local Police Vehicle   **REPORTABLE CRASH**
                    ○ N/A   ○ Work Zone   ○ ATV   ○ Snowmobile   ○ Commonwealth Vehicle   ○ Local Gov Vehicle

**Diagram**



FRALEY ST

TACONY ST

## NARRATIVE

**Crash Synopsis**
  **SEE NOTES**

**Crash Details**

ON TUESDAY 5/7/19 AT APPROX 7:47PM I RESPONDED TO THE AREA OF 5400 TACONY ST FOR A REPORT OF AN AUTO ACCIDENT INVOLVING A PEDESTRIAN AS WELL AS A TRACTOR TRAILER. I ARRIVED ON SCENE AT APPROX 8PM AND WAS MET BY DRIVER OF UNIT #2 WHO STATED TO POLICE THAT WHILE TRAVELING S/B ON TACONY ST AND DRIVING THROUGH INTERSECTION WITH FRALEY ST AND WITH THE STEADY GREEN LIGHT HE SAW MOTION OF OUT THE CORNER OF HIS EYE AND LOOKED INTO HIS RIGHT REAR VIEW MIRROR AND SAW A PERSON ON A SMALL SCOOTER AND HE TRIED SWERVING TO THE LEFT TO AVOID ACCIDENT BUT SAW THE PERSON STRIKE THE REAR OF HIS TRAILER AND DISAPPEAR FROM VIEW. DRIVER DID COME TO A STOP, AND WHEN HE EXITED HIS TRUCK, HE SAW A YOUNG WHITE MALE (OPERATOR #1) LAYING ON THE GROUND WITH SEVERE HEAD TRAUMA. AFTER CALLING 911, THE OPERATOR OF VEHICLE #1 WAS PRONOUNCED AT 7:30 PM BY MEDIC 32.
ABOVE WITNESS STATED TO POLICE THAT WHILE ON TACONY ST, HE OBSERVED OPERATOR #1 TRAVELING E/B ON FRALEY ST AT A HIGH SPEED AND HE DID DRIVE THROUGH A STEADY RED LIGHT AT INTERSECTION BEFORE STRIKING THE TRACTOR TRAILER.

# DRIVER/VEHICLE EXAMINATION REPORT

Aspen 3.0.0.17

| | |
|---|---|
| PA State Police - Commercial Vehicle Safety Div.<br>1800 Herr St. (Tent Bldg.)<br>Harrisburg, PA. 17103<br>FAX: (717) 772-1558<br>Data Challenges : http://dataqs.fmcsa.dot.gov | Report Number: PAM610000878<br>Inspection Date: 05/07/2019<br>Start: 10:30 PM ET    End: 11:35:00 PM ET<br>Inspection Level: I - Full<br>HM Inspection Type: None |

| | |
|---|---|
| WORLD LOGISTICS USA INC<br>173 ROUTE 526<br>ALLENTOWN, NJ 08501<br>USDOT#: 00823590    Phone#: (609)259-6102<br>MC/MX#: 365777    Fax#:<br>State#: | Driver: ESPINOSA, AUGUSTO<br>License#: 26439174    State: PA<br>Date of Birth: 02/13/1961<br>CoDriver:<br>License#:    State:<br>Date of Birth: |

| | | |
|---|---|---|
| Location: 5400 TACONY ST | MilePost:    Shipper: | |
| Highway: | Origin: PHILADELPHIA, PA | Bill of Lading: |
| County: PHILADELPHIA, PA | Destination:PHILADELPHIA, PA | Cargo: INTERMODAL |

## INTERMODAL EQUIPMENT PROVIDER INFORMATION

The inspector indicated the intermodal equipment below is owned or leased by the motor carrier. If you believe this is incorrect, we invite you to submit a request for a data review through DataQs at https://dataqs.fmcsa.dot.gov.

## VEHICLE IDENTIFICATION

| Unit | Type | Make | Year | State | Plate # | Equipment ID | VIN | GVWR | CVSA # | CVSA Issued # | OOS Sticker |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | TT | KW | 1999 | PA | AG83997 | | 1XKWDB9X1XJ815567 | 80,000 | | | |
| 2 | IC | HERC | 2016 | ME | 2365256 | | 5K8CG4027GH001891 | 18,000 | | | |

## BRAKE ADJUSTMENTS

| Axle # | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|
| Right | 3/4 | 7/8 | 1 3/8 | 1 1/2 | 1 |
| Left | 1/2 | 1/2 | 1 1/4 | 1 1/4 | 1 1/4 |
| Chamber | C-20 | C-30 | C-30 | C-30 | C-30 |

## VIOLATIONS ATTRIBUTABLE TO THE MOTOR CARRIER

| Vio Code | Section | Unit | OOS | Citation # | Verify | Crash | Violations Discovered |
|---|---|---|---|---|---|---|---|
| 393.9 | 393.9(a) | 1 | N | | N | N | Inoperable Required Lamp: Right rear turn signal on power unit is inoperable |
| 393.11 | 393.11 | 1 | N | | N | N | No or defective lighting devices or reflective material as required: No reverse lamp on power unit |

## VIOLATIONS ATTRIBUTABLE TO THE INTERMODAL EQUIPMENT PROVIDER  : No Violations Were Discovered.

**HazMat:** No HM Transported.    **Placard:** No    **Cargo Tank:**

**Special Checks:** Post Crash

---





# DRIVER/VEHICLE EXAMINATION REPORT

Aspen 3.0.0.17

| | |
|---|---|
| **PA State Police - Commercial Vehicle Safety Div.**<br>**1800 Herr St. (Tent Bldg.)**<br>**Harrisburg, PA. 17103**<br>**FAX: (717) 772-1558**<br>Data Challenges : http://dataqs.fmcsa.dot.gov | **Report Number:** PAM610000878<br>**Inspection Date:** 05/07/2019<br>**Start:** 10:30 PM ET **End:** 11:35:00 PM ET<br>**Inspection Level: I - Full**<br>**HM Inspection Type:** None |

| | |
|---|---|
| WORLD LOGISTICS USA INC<br>173 ROUTE 526<br>ALLENTOWN, NJ 08501<br>**USDOT#:** 00823590 **Phone#:** (609)259-6102<br>**MC/MX#:** 365777 **Fax#:**<br>**State#:** | **Driver:** ESPINOSA, AUGUSTO<br>**License#:** 26439174 **State:** PA<br>**Date of Birth:** 02/13/1961<br>**CoDriver:**<br>**License#:** **State:**<br>**Date of Birth:** |

| | | |
|---|---|---|
| **Location:** 5400 TACONY ST | **MilePost:** | **Shipper:** |
| **Highway:** | **Origin:** PHILADELPHIA, PA | **Bill of Lading:** |
| **County:** PHILADELPHIA, PA | **Destination:** PHILADELPHIA, PA | **Cargo:** INTERMODAL |

All violations listed on this report which are not designated as out-of-service MUST be corrected within 15 days OR before the vehicle's next trip, WHICHEVER OCCURS FIRST. If out of service violations are listed, they MUST be corrected in accordance with the out of service statement listed on this report.

RETURN ADDRESS: Sign and return this report ONLY if violations are entered in the violation section. Fax or Mail it to the Pennsylvania State Police at the address listed in the upper left corner of this report.

DO NOT SEND TRAFFIC CITATIONS OR ANY PAYMENTS TO THIS ADDRESS. If issued, Citations MUST be returned to the COURT whose address appears on the top left of the citation.

For more information visit our web site at:

http://cvsd.pa.gov

MOTOR CARRIER CERTIFICATION: The undersigned certifies that all violations on this report have been corrected and action has been taken to ensure compliance with the Motor Carrier Safety and HM Regulations insofar as they are applicable to motor carriers and drivers. This certification MUST BE SIGNED by the Motor Carrier and returned WITHIN 15 DAYS to the return address, as instructed above.

Signature Of Motor Carrier X:_____ Title:_____ Date:_____

| | | | |
|---|---|---|---|
| Report Prepared By:<br>CHRISTOPHER SAVINO | Badge #:<br>M9806 | Copy Received By:<br>AUGUSTO ESPINOSA | Page 2 of 2 |



AUGUSTO ESPINOSA
CITY 010

# MEMO
## from the desk of
## Captain Mark Overwise #90
### Commanding Officer, Accident Investigation District

CAMERAS on EADOM ST.

5335 EADOM    RESIDENCE
5337
5343

5400 — GOOD DEAL SELF STORAGE
5401 RESIDENCE

NETS
NORTHEAST TREATMENT CENTER



**Philadelphia Police Department**

| ACCIDENT INVESTIGATION INTERVIEW RECORD | PHILADELPHIA POLICE DEPARTMENT ACCIDENT INVESTIGATION DIVISION | DC#: |
|---|---|---|
| | | AID CASE #: |

| NAME: JENNIFER SCHEFFIELD | F | W | 51 | 09-09-1967 | SS#: |
|---|---|---|---|---|---|

| ADDRESS: | 7246 CHARLES STREET | | HOME: |
|---|---|---|---|
| | PHILA PA, 19135 | 2 | 215-954-9140 |

UNEMPLOYED                                    WORK/SCHOOL PHONE #:

| EMPLOYER/SCHOOL ADDRESS: | STREET NUMBER: |
|---|---|
| | CITY:        STATE:        ZIP CODE: |

| 7246 CHARLES STREET | 05-08-19  11:15AM |
|---|---|

| INTERVIEWED BY:  P/O JACKSON #5962 | N/A |
|---|---|

| BRIDGE STREET, (INVOLVING  A PHILA POLICE OFFICER BEING STRUCK BY A DIRT BIKE) | 05-07-19 |
|---|---|
| | 7:pm |

| N/A | REQUEST TO CONSENT TO INTERVIEW (75 Misc. 6) | WARNINGS/CONSENT GIVEN DATE & TIME: |
|---|---|---|

ANSWERS:        (1)        (2)        (3)        (4)        (5)        (6)        (7)

Q: DO YOU READ AND UNDERSTAND THE ENGLISH LANGUAGE?

A:  YES.

Q: ARE YOU CURRENTLY UNDER THE INFLUENCE OF ANYTHING WHICH WILL AFFECT YOUR MEMORY OR DECISION MAKING?

A:  NO

Q: WERE YOU INVOLVED IN AND AUTO ACCIDENT?

A\. NO

Q.ARE YOU THE REGISTERED OWNER OF THIE VEHICLE THAT WAS INVOLVED?

    A.   NO

Q. WHAT WERE YOU DOING AT THE TIME OF THE ACCIDENT?

    A.  N/A

Q. CAN YOU EXPLAIN WHAT HAPPENED?

    A...THE OFFICER WAS DRIVING AND THE KID ON THE DIRT BIKE RAN INTO THE REAR OF THE PATROL CAR, AND THEN TOOK OFF. THE POLICE OFFICER CHASED HIM.

INTERVIEWEE SIGNATURE:

A.I.D. -50

Page      of

Q. DID YOU ACTUALLY SEE THE ACCIDENT?

A. YES I SEEN THE ACCIDENT WHEN THE KID ON THE DIRT BIKE HIT THE BACK OF THE POLICE OFFICER CAR AND THE OFFICER GOT OUT OF HIS CAR AND THEN GOT BACK INTO THE POLICE CAR, BECAUSE THE DIRT BIKE OR SCOOTER TOOK OFF. AND IT MAY HAVE BEEN A GIRL, BECAUSE THE PERSON HAD LONG BLONDE HAIR. SO THE PERSON TOOK OFF ON THE OFFICER AND AFTERWARDS THE OFFICER TOOK OFF AFTER THE DIRT BIKE AND ANOTHER CAR FOLLOWED BEHIND THE PATROL OFFICER. THE OTHER CAR WAS LIGHT BLUE 4 DOOR CAR.

Q .WAS THE OFFICER EMERGENCY LIGHTS & SIRENS ON?

A. NO NOT AT ANYTIME, NOT EVEN THE HORN.

Q. DO YOU NOW HOW FAR HE CHASED THE DIRT BIKE?

A. ONLY TO THE END OF THE STREET, WHERE I COULD NOT SEE THEM ANYMORE.

Q. WHERE WERE YOU WHEN THE DIRT BIKE RAN INTO THE BACK OF THE PATROL CAR?

A. WE WERE AT FIBBER MAGEE BAR ON BRIDGE STREET JUST BEFORE TACONY.

Q. HOW LONG HAD YOU BBEEN THERE?

A. WE HAD JUST ARRIVED AND STILL SITTING INSIDE THE CAR AND THE CAR WAS RUNNING.

Q. WHO WAS WITH YOU WHY YOU WERE SITTING INSIDE OF THE CAR?

A. ME AND MY HUSBAND JUST (GEORGE KEENAN) AND NICHOLAS NEWMAN. ME AND MY HUSBAND LIVES AT 7246 CHARLES STREET.

Q. WHEN DID YOU FIRST NOTICE THE PATROL CAR?

A. WHEN I HEARD THE CRASH AND THE PATROL CAR BEGAN BRAKING.

Q. WHAT WAS THE POLICE OFFICER DEMEANOR AFTER BEING HIT BY THE DIRT BIKE?

A. HE LOOKED VERY ANGRY AND PISSED , IT LOOKED LIKE THE OFFICER WENT TO GRAB THE KIDS HAIR AND THE KID TOOK OFF AND THE POLICEOFFICER FOLLOWED HIM.

Q. HOW DID HEAR ABOUT THE DEATH OF THE KID ON THE DIRT BIKE?

A. FACEBOOK AND IT WAS ABOUT 45 MINUTES TO AN HOUR AFTERWARDS.

Q. DID YOU KNOW THAT WAS THE KID ON THE DIRT BIKE THAT YOU OBSERVED ON BRIDGE STREET EARLIER?

A.NO NOT UNTIL SOMEONE FROM AID CAME INTO THE BAR AS THE 76ERS WAS STILL ON AND WAS LOSING.

Q. HOW DID YOU BECOME INVOLVED?

A. THE OFFICER HAD CAME INTO THE BAR AND ASKED IF THERE WERE ANY CAMERAS INSIDE AND OUTSIDE, AND ASKED IF THIS WAS PERTAINING TO THE KID ON THE DIRT BIKE RAN INTO THE BACK OF THE PATOL CAR, AND HE REPLIED YES! THE OFFICERWASNTED TO INTERVIEW ME AT THAT TIME, BUT I ASKED IF IT CAN BE DONE TOMORROW. SO I GAVE HIM MY NUMBER AND ADDRESS.

Q. YOU EXPLAINED THAT NICOLAS NEWMAN WAS INSIDE OF THE CAR WITH YOU AND YOUR HUSBAND?

A. YES, BUT HE DOES NOT WANT TO TALK TO THE POLICE.

Q. MAY I HAVE THE PLOICE CONTACT NICHOLAS NEWMAN?

A. YES I HAVE TO GET HIS NUMBER FROM MY HUSBAND.

Q. WAS THE POLICE OFFICER ALONE IN THE PATROL CAR?
A. YES.

# ACCIDENT INVESTIGATION INTERVIEW RECORD

## PHILADELPHIA POLICE DEPARTMENT
### ACCIDENT INVESTIGATION DIVISION

DC#:

AID CASE #:

| NAME: Jennifer Schiffield | SEX: F | RACE: W | AGE: 51 | DOB: 9-9-67 | SS#: |

**ADDRESS:** STREET NUMBER: 2246 Charles
CITY: Phila STATE: Pa ZIP CODE: 19185

PHONE:

HOME:

CELL: 215-954-9140

NAME OF EMPLOYER/SCHOOL:

WORK/SCHOOL PHONE #:

EMPLOYER/SCHOOL ADDRESS: STREET NUMBER:
CITY: STATE: ZIP CODE:

PLACE OF INTERVIEW: PHONE 215-954-9140

INTERVIEW DATE & TIME STARTING:

INTERVIEWED BY: P/O JACKSON #5962

WITNESSED BY:

WE ARE QUESTIONING YOU CONCERNING: Badge 82

INCIDENT DATE: 5-7-19

INCIDENT TIME:

WARNINGS GIVEN (75 Misc. 3): N/A

REQUEST TO CONSENT TO INTERVIEW (75 Misc. 6)

WARNINGS/CONSENT GIVEN DATE & TIME:

| ANSWERS: | (1) | (2) | (3) | (4) | (5) | (6) | (7) |

**Q: DO YOU READ AND UNDERSTAND THE ENGLISH LANGUAGE?**

A: Yes

**Q: ARE YOU CURRENTLY UNDER THE INFLUENCE OF ANYTHING WHICH WILL AFFECT YOUR MEMORY OR DECISION MAKING?**

A: No

**Q: WERE YOU INVOLVED IN AND AUTO ACCIDENT?**

A: No

**Q. ARE YOU THE REGISTERED OWNER OF THIE VEHICLE THAT WAS INVOLVED?**

A. No

**Q. WHAT WERE YOU DOING AT THE TIME OF THE ACCIDENT?**

A. N/A

**Q. CAN YOU EXPLAIN WHAT HAPPENED?**

The officer was Driving at the kid on the Dirtbike Ran into the
Rear of the patrol car and then took off. The Police chased him.

INTERVIEWEE SIGNATURE:

A.I.D. -50

Page of
CITY 014

Jenny Shiffield 5/8/19

# ACCIDENT INVESTIGATION INTERVIEW RECORD CONTINUATION SHEET

**PHILADELPHIA POLICE DEPARTMENT**
ACCIDENT INVESTIGATION DIVISION

DC#:

AID CASE #:

Q. DID YOU ACTUALLY SEE THE ACCIDENT?

A. Yes, I seen the accident when the Kid on the Dirt Bike

Q. WAS THERE ANYTHING OBSTRUCTING VIEW? Hit the back of the Police officers

Car, and the officer got out of his car and then got back

Q. WHERE WERE YOU SEATED IN THE CAR?

A. into the Police Car, because the Dirt bike took or scooter

and it may have been a girl or boy because the person had

Q long blonde Hair. So the person took off on the

officer and after the officer took off after the Dirt bike

another car followed behind the Patrol officer. It was

a light blue 4 Door car.

Q Was the officer emergency lights + Sirens on
A NO Not at anytime, not even the horn.

Q Do You Know how Far he chased the dirt bike
A Only to the end of the street, where I could not
see them anymore

INTERVIEWEE SIGNATURE:

A.I.D. -50

| ACCIDENT INVESTIGATION INTERVIEW RECORD CONTINUATION SHEET | PHILADELPHIA POLICE DEPARTMENT ACCIDENT INVESTIGATION DIVISION | DC#: |
|---|---|---|
| | | AID CASE #: |

Q. DID YOU ACTUALLY SEE THE ACCIDENT? Where were you at when witnessed the

A. Dirt bike Run into the back of the patrol Car

Q. WAS THERE ANYTHING OBSTRUCTING VIEW? The name is Fibber Magee on Bridge & Right beside Trscony.

Q. WHERE WERE YOU SEATED IN THE CAR? How long had you been there

A. We had just arrived, we were still sitting inside of the car and the car was still Running.

Q.

Q. Who was with you while sitting inside the car.

A. Me and my husband George Keenan, and we live together here at 7246 Charles, & Nicholas Keenan

Q. When Did you 1st notice the Patrol Car

A. When I heard the crash and then the patrol car began braking.

Q. What was the officers demeanor after being hit by the bike

A. He looked very angrey and pissed, it looked like the officer went to grab the Kids bike and the Kid took off and

INTERVIEWEE SIGNATURE: the police officer followed behind him.

A.I.D. -50

Page ____ of ____
CITY 016        Jenny Shifford  5/8/19

4 205

Q: ~~DID YOU ACTUALLY SEE THE ACCIDENT?~~ You said that Nicholas Newman

A. was inside the car

Q: ~~WAS THERE ANY THING OBSTRUCTING VIEW?~~

A: Yes, but he does not want to talk to police.

Q: ~~WHERE WERE YOU SEATED IN THE CAR?~~

Q: May I have Police contact Nicholas Newman

A: Yes I have to get his number from my husband.

Q: Was there anyone on the back of the Dirtbike.

A: Only the Kid

Q: Was the officer alone by himself in the Patrol Car

A: Yes

Q: How far away were you from what transpired or Berlyn

A: About 10 to 15 ft away.

Q: Could you hear the conversation from the officer

A: NO I could only hear him mumble.

INTERVIEWEE SIGNATURE:

Nieto

Q. ~~DID YOU ACTUALLY SEE THE ACCIDENT?~~ Q: How did you hear about the
A. death of the Kid on the Dirtbike

Q. ~~WAS THERE ANYTHING OBSTRUCTING VIEW?~~

A: Facebook and it was on 45 mins to an hour afterwards

Q. WHERE WERE YOU SEATED IN THE CAR?

Q: Did you know that was the Kid on the Dirtbike that
you had observed on Bridge earlier

A: No, not until someone from AID had come to
the bar. the game was still on and the 76ers
were loosing.

Q: How did you become involved.

A: The officer had come into the bar and I asked
if there were any cameras inside or out and I asked
if this was pertaining to the Kid on the Dirtbike that
Ran into the back of the patrol CAR. and he replied
Yes. They wanted to interview me tonight, but I
asked if it can be done tomorrow. So I gave my
name address number.

INTERVIEWEE SIGNATURE:

Jenny Shiffer 5/8/19

# ACCIDENT INVESTIGATION INTERVIEW RECORD

## PHILADELPHIA POLICE DEPARTMENT
### ACCIDENT INVESTIGATION DIVISION

DC#: 19-15-04476

AID CASE #: 19-742

NAME: Gary Bove

SEX: M  RACE: W  AGE: 55  DOB: 1-12-64  SS#:

ADDRESS: STREET NUMBER: 4574 Melrose St.

CITY: Phila  STATE: Pa  ZIP CODE: 19124  PHONE:

HOME: ( ) -
CELL: ( ) 215 - 668

NAME OF EMPLOYER/SCHOOL: N/A  WORK/SCHOOL PHONE #: ( ) 9271

EMPLOYER/SCHOOL ADDRESS: STREET NUMBER: N/A

CITY:  STATE:  ZIP CODE:

DATES OF PLANNED VACATIONS/BUSINESS TRIPS:

NAME OF CLOSE RELATIVE: NONE

ADDRESS: NONE  RELATIONSHIP: N/A

CITY:  STATE: N/A  ZIP CODE: N/A  PHONE:

HOME: ( ) - N/A
CELL: ( ) - N/A

INTERVIEW LOCATION: On Scene

INTERVIEW DATE & TIME STARTING: /
ENDING: 5-6-19 - 9:22pm

INTERVIEWED BY: P/O Anderson #5256  WITNESSED BY:

WE ARE QUESTIONING YOU CONCERNING:
Auto Crash Bike vs. Truck.

INCIDENT DATE: 5-6-19

INCIDENT TIME: :

WARNINGS GIVEN (75 Misc 3):

REQUEST TO CONSENT TO INTERVIEW (75 Misc 6)

WARNINGS/CONSENT GIVEN DATE & TIME:

ANSWERS: (1)  (2)  (3)  (4)  (5)  (6)  (7)

Q1 - ARE you The Driver of VEH.1 or VEH2.

A1 - Neither - (Witnessed) Auto Acc.

Q2 - What Type of VEH. ARE you Driving.

A.2. Ford Fusion - 2015 - (I was not involved)

Q3 - Where their any passengers in the VEH
with you / who / position in VEH.

A-3    N/A

X [signature]

RECORD CHECK:  PPN#:  BMV CHECK:  CHECKED BY:

INTERVIEWEE SIGNATURE: P/O Anderson #

VIEWED BY:

D. -50

Page 01

CITY 019

Q4 - Which WAY WAS you Driving -

A4    E/B on FARley st.

Q5 - WHich wey was THe Second UEH. Traveling or PED going. - THe Bike was going E/B on FARley st

Q6 - How fast where you Traveling - ABout 5-

A-6    10 mph. I HAd just turned the Corner.

Q7 - How fast was the 2nd PEH. Traveling (Appox)

A-7    Not sure - BuT he was going preTTy fast.

Q-8 - ARE You THE Owner of THe UEH.

A-8        N/A

Q9 - What Happened - WHere - How - Description (STreet - person - position of UEH)

I was traveling S/B on Tocony And made a right on FARley st. And a Right on James street leaded to my stop. when I got to scattergood street I saw a P/O grabbing a white male on a Bike pulling him. THe male on the Bike pulled Away And took off on the Bike. THe male went North on EDon street And made Right E/B on on farly street. I made Both turns Behind the male But was about 15 to 20 feet Behind him. THe male on the Bike was traveling fast down FARley st. And Had a Red lislT. The male did not stop And tryed to go thu.

INTERVIEWEE SIGNATURE:

D. -50

Anderson 5756

THe male went straight into the Back of the Truck. THe Bike went straight down. it look like he tryed to turn But couldn't. THe truck try to turn to the left But was unable to get out his way. I stopped But moved Because the same P/O pulled Behind me And told me to move. I got out VEH. And p/o was attending to male. Q10 Medics responded later.

Q10 WAS P/O Behind Bike when ACC. Happend
A-10  NO

DiD you hear Any Sirens or see P/O lights.
NO.

X _____ (signature)

# ACCIDENT INVESTIGATION INTERVIEW RECORD

## PHILADELPHIA POLICE DEPARTMENT
### ACCIDENT INVESTIGATION DIVISION

DC# 19-15-044176
AID CASE #: 19-

NAME: Augusto Espinosa   SEX: M   RACE: W   AGE: 58   DOB: 2-13-61   SS# 082764879

ADDRESS:
STREET NUMBER: 3009 Longshore Ave
CITY: Phila   STATE: PA   ZIP CODE: 19149

PHONE:
HOME:
CELL: 215 852 9853

NAME OF EMPLOYER/SCHOOL: Word Logistics   WORK/SCHOOL PHONE:

EMPLOYER/SCHOOL ADDRESS:
STREET NUMBER:
CITY: PHILA   STATE: PA   ZIP CODE:

DATES OF PLANNED VACATIONS/BUSINESS TRIPS: NONE

NAME OF CLOSE RELATIVE: MARIA ELANA BERMUDEZ   RELATIONSHIP: Girlfriend

ADDRESS:
CITY:   STATE:   ZIP CODE:
PHONE:
HOME:
CELL:

PLACE OF INTERVIEW: VIA TELEPHONE   INTERVIEW DATE & TIME STARTING: 5-7-19 9:35P
ENDING:

INTERVIEWED BY: P/O MIDDLETON #5311   WITNESSED BY:

WE ARE QUESTIONING YOU CONCERNING:   INCIDENT DATE: 5-7-19
INCIDENT TIME:

WARNINGS GIVEN (75 Misc 3):   REQUEST TO CONSENT TO INTERVIEW (75 Misc 6) YES   WARNINGS/CONSENT GIVEN DATE & TIME:

ANSWERS:   (1)   (2)   (3)   (4)   (5)   (6)   (7)

Q: MY NAME IS P/O MIDDLETON #5311 AND I AM ASKING TO INTERVIEW YOU IN REFERENCE TO AN AUTO ACCIDENT.

A.

Q: DO YOU READ, WRITE AND UNDERSTAND THE ENGLISH LANGUAGE?

A. Yes

RECORD CHECK:   PPN#:   BMV CHECK:   CHECKED BY

INTERVIEWEE SIGNATURE: Middleton #5311
REVIEWED BY: A.O. Depifoso

A.I.D. -50

Page 1 of 5

CITY 022

Q. Are you currently taking any medication?

A. No

Q. You're a local truck Driver?

A Yes

Q. Company name?

A World Logistics. 856 444 3991  1811 Delsea Dr. Deptford, NJ 08056

Q Which way were you traveling at the time of the Accident?

A. I was traveling S/B on Tacony in the Right lane. I had the green light

Q What Did you see?

A. I was in the intersection of Tacony and Friley St. I saw out of my window that the guy on the scooter was coming towards me. I switched lanes to try and Avoid the guy on the scooter. I saw him hit the back area of the trailer by the tires. Out of Right window Traveling E/B on Friley St.

Q Did he look like he was going to stop?

A. No. He was moving too fast. He was flying.

INTERVIEWEE SIGNATURE: _[signature]_

Q What did you do after he made contact with your truck.?

A. I immediately came to stop. And went to check on the person who hit the truck. When I got out of the truck I saw a cop at the corner where the guy was.

Q. when you first saw the operator of the scooter, Did you see a police officer following him?

A. NO. I didn't see a cop until I got out of my truck

Q were you done your route for the day?

A. Yes. I was on my way home.

Q Could you tell which part of operator or scooter made contact with your truck?

A. No. When I swerved to avoid him I lost sight of him. I last saw him at the rear of trailer in the area of the tires.

Q What time did you start work today?

A. I started at 9 o'clock this morning.

INTERVIEWEE SIGNATURE: _A.W.Rapinson_

..I.D. -50

Q How fast do you think you think you were traveling at the time of the Accident?

A. Approximately 25-30 mph.

INTERVIEWEE SIGNATURE: _[signature]_

**Q: HAVE YOU REVIEWED THIS STATEMENT FOR ITS ACCURACY AND CORRECTED ANY MISTAKES?**

A: Yes

**Q: HAVE YOU BEEN TRUTHFUL TO THE BEST OF YOUR RECOLLECTION IN YOUR ANSWERS IN THIS STATEMENT?**

A: Yes

**Q: IS THERE ANYTHING YOU WISH TO ADD TO THIS STATEMENT?**

A: NO

INTERVIEWEE SIGNATURE: P/O _[signature]_ # 5311

DATE: 5-7-19    TIME: 10:15  (PM)

FOR DIAGRAM & DRAWING USE:

RAWN BY (SIGNATURE):

I.D. -50

NAME P/O Wolk #6734 | AGE | RACE | DOB

ADDRESS Highway Patrol | APT. NO: | PHONE NO: 215-686-3103

NAME OF EMPLOYER/SCHOOL | PHONE NO:

ADDRESS OF EMPLOYER | DEPARTMENT | PHONE NO:

DATES OF PLANNED VACATIONS

DATES OF PLANNED BUSINESS TRIPS

NAME OF CLOSE RELATIVE

ADDRESS | PHONE NO:

PLACE OF INTERVIEW AID HQ | DATE 5-07-19 | TIME 11:pm

WE ARE QUESTIONING YOU CONCERNING: Crash, 5400 Tacony St. | DATE | TIME

WARNINGS GIVEN BY    Y☐ N☐ | REQUEST TO CONSENT TO INTERVIEW (75Misc6)  Y☐ N☐ | DATE | TIME

ANSWERS    (1)    (2)    (3)    (4)    (5)    (6)    (7)

Q: Were you working the 6pm X 2am tour of duty on 5-7-19?
A: Yes.

Q: What was your assignment?
A: Highway 14, solo.

Q: Did your tour bring you in to the area of Bridge and Tacony Streets?
A: Yes.

Q: What was the nature of your assignment?
A: Routine patrol.

Q: Did you come into contact with a scooter?
A: Yes. I was traveling northbound on Tacony St when I noticed a person operating a multi-colored scooter, northbound on Tacony St without a license plate. I activated my emergency lights and sirens in order to conduct a traffic stop. The operator of the scooter refused to stop, instead, the scooter sped up and entered the southbound travel lanes of Tacony St. The operator of the scooter was approaching a blind turn, in the wrong lane of traffic. I Speed up and passed the scooter in an attempt to get to the blind curve before the scooter.

Q: Why did you drive past the scooter?
A: There is no way oncoming southbound vehicle traffic would see the scooter in time, and I wanted to avoid a collision. I actually thought he may be suicidal or DUI. I wanted to alert oncoming traffic of the scooter approaching the bend in the wrong travel lane.

Q: Did the scooter come back into the northbound lanes after you passed it?
A: No. As I approached the bend, I looked into the rearview mirror and saw the operator make a U-Turn.

Q: What did you do next?
A: I made a U-Turn and caught up to scooter on the 5400 block of James St and again attempted to stop it but the operator again refused to stop. It turned onto Scattergood St and I followed. My vehicle was next to the scooter on Scattergood and I yelled to the operator "STOP, STOP, JUST STOP". I pulled up to the corner of Scattergood and Eadom and exited my vehicle. The scooter was stopped behind me. The operator pushed the scooter backwards to maneuver around the rear of my vehicle. I grabbed the operator by the shirt and held ahold as the driver accelerated and the shirt ripped from the body. The operator made a northbound turn on Eadom St and that's when I lost sight of the scooter.

Q: Did you go after the scooter?
A: No. I believe my lights were off at this point.

Q: Did you see the scooter again after this interaction?
A: Yes.

Q: Where was the scooter?
A: I turned eastbound on Fraley St from Eadom and was making a turn onto James when I looked further down Fraley and noticed the scooter and the operator lying on Tacony St.

Q: What did you do?
A: I backed up from James and went down Fraley St to the accident scene and notified rescue.

Q: Did the operator of the scooter say anything to you?
A: No. He appeared to be deceased. He had a head injury.

Q: Is this the first time you got a good look at the driver?
A: Yes.

Q: Can you describe the driver?
A: White male.

Q: Do you know what caused the crash?
A: I noticed a truck was stopped just south of the accident.

Q: Was the truck involved in the crash?
A: I did not see the crash, but I later found out from the driver of the truck that he was involved with the scooter.

Q: How long did you lose sight of the scooter?
A: About one minute.

Q: Were your lights and Sirens Activated throughout the interaction with the scooter?
A: Yes.

Q: Were you chasing the scooter?
A: No. I was attempting to stop the operator to avoid a collision. The driver became erratic and I was fearful for his safety.

Q: How far did the operator travel?
A: The total distance was less than six blocks. Most of the travel was on Tacony St when I first attempted to make the stop, and he fled on the wrong side of the street.

Q: How long did this interaction take place?
A: About two minutes. That includes the minute or so that I lost sight of it.

Q: How fast was the scooter traveling on Tacony St?
A: About 35MPH.  I was able to pass by him in an attempt to alert oncoming traffic of the potential hazard.

Q: Is there anything you would like to add?
A: No.

CITY 030

Teutk
1988 KENW 1XkWD89X1X5
17,000 LBS 815567
WINDEN WeigHt
WST class
80,000 LBS 25
9.105 Comb WT Aleas 3

Augusto Espinosa
3005 Long Shore Ave
19149
OME
19-2175

Ryan Miller
12-25-2003

Wojeic
#14
#731
6

Mother
Donna Bromley
5223 Charles way
FL
215-910-7924

DC# 18-15-044176
Case # 18-742

---

From the Time Witness saw male on Bike.

The witness saw male pull away from Pho on Scattergood street. 2200 Blk.

The Bike made Right N/B, then Right onto Farly St. EADom St., then Right onto Farly St. E/B And Fans Red lisft AT TAcony And Farly St., and struck the Trailer of Truck Traveling S/B on Tacony St.

```
AIDO12-00009548 NLETS 20190508 00:02:47 00:02:47 0186000735
```

```
*
TXT
```

--- Result Summary ---
    Error Codes: 0 - VIN decoded clean. Check Digit (9th position) is correct

--- Vehicle Summary ---
    VIN: RKRSEB1Y8GA001274
    Make: YAMAHA
    Model: YW125
    Year: 2016
    Category: MOTORCYCLE

--- Vehicle Details ---
    Body Class: Motorcycle - Scooter
    Destination Market: California
    Plant Country: Taiwan
    Plant State: Hsingchu
    Plant City: Hukuo Shiang

--- Engine Summary ---

--- Engine Details ---
    KW: 7.08415
    Other Information: Displacement Range: 101 to 125cc

--- Safety Details ---

EXHIBIT "E"

| NAME P/O Wolk #6734 | AGE | RACE | DOB |
|---|---|---|---|

| ADDRESS Highway Patrol | APT. NO: | PHONE NO: 215-686-3103 |
|---|---|---|

| NAME OF EMPLOYER/SCHOOL | PHONE NO: |
|---|---|

| ADDRESS OF EMPLOYER | DEPARTMENT | PHONE NO: |
|---|---|---|

DATES OF PLANNED VACATIONS

DATES OF PLANNED BUSINESS TRIPS

NAME OF CLOSE RELATIVE

| ADDRESS | PHONE NO: |
|---|---|

| PLACE OF INTERVIEW  AID HQ | DATE  5-07-19 | TIME 11:pm |
|---|---|---|

| WE ARE QUESTIONING YOU CONCERNING: Crash, 5400 Tacony St. | DATE | TIME |
|---|---|---|

| WARNINGS GIVEN BY  Y☐ N☐ | REQUEST TO CONSENT TO INTERVIEW (75Misc6) Y☐ N☐ | DATE | TIME |
|---|---|---|---|

ANSWERS     (1)     (2)     (3)     (4)     (5)     (6)     (7)

Q: Were you working the 6pm X 2am tour of duty on 5-7-19?
A: Yes.

Q: What was your assignment?
A: Highway 14, solo.

Q: Did your tour bring you in to the area of Bridge and Tacony Streets?
A: Yes.

Q: What was the nature of your assignment?
A: Routine patrol.

Q: Did you come into contact with a scooter?
A: Yes. I was traveling northbound on Tacony St when I noticed a person operating a multi-colored scooter, northbound on Tacony St without a license plate. I activated my emergency lights and sirens in order to conduct a traffic stop. The operator of the scooter refused to stop, instead, the scooter sped up and entered the southbound travel lanes of Tacony St. The operator of the scooter was approaching a blind turn, in the wrong lane of traffic. I Speed up and passed the scooter in an attempt to get to the blind curve before the scooter.

Q: Why did you drive past the scooter?
A: There is no way oncoming southbound vehicle traffic would see the scooter in time, and I wanted to avoid a collision. I actually thought he may be suicidal or DUI. I wanted to alert oncoming traffic of the scooter approaching the bend in the wrong travel lane.

Q: Did the scooter come back into the northbound lanes after you passed it?
A: No. As I approached the bend, I looked into the rearview mirror and saw the operator make a U-Turn.

Q: What did you do next?
A: I made a U-Turn and caught up to scooter on the 5400 block of James St and again attempted to stop it but the operator again refused to stop. It turned onto Scattergood St and I followed. My vehicle was next to the scooter on Scattergood and I yelled to the operator "STOP, STOP, JUST STOP". I pulled up to the corner of Scattergood and Eadom and exited my vehicle. The scooter was stopped behind me. The operator pushed the scooter backwards to maneuver around the rear of my vehicle. I grabbed the operator by the shirt and held ahold as the driver accelerated and the shirt ripped from the body. The operator made a northbound turn on Eadom St and that's when I lost sight of the scooter.

Q: Did you go after the scooter?
A: No. I believe my lights were off at this point.

Q: Did you see the scooter again after this interaction?
A: Yes.

Q: Where was the scooter?
A: I turned eastbound on Fraley St from Eadom and was making a turn onto James when I looked further down Fraley and noticed the scooter and the operator lying on Tacony St.

Q: What did you do?
A: I backed up from James and went down Fraley St to the accident scene and notified rescue.

Q: Did the operator of the scooter say anything to you?
A: No. He appeared to be deceased. He had a head injury.

Q: Is this the first time you got a good look at the driver?
A: Yes.

Q: Can you describe the driver?
A: White male.

Q: Do you know what caused the crash?
A: I noticed a truck was stopped just south of the accident.

Q: Was the truck involved in the crash?
A: I did not see the crash, but I later found out from the driver of the truck that he was involved with the scooter.

Q: How long did you lose sight of the scooter?
A: About one minute.

Q: Were your lights and Sirens Activated throughout the interaction with the scooter?
A: Yes.

Q: Were you chasing the scooter?
A: No. I was attempting to stop the operator to avoid a collision. The driver became erratic and I was fearful for his safety.

Q: How far did the operator travel?
A: The total distance was less than six blocks. Most of the travel was on Tacony St when I first attempted to make the stop, and he fled on the wrong side of the street.

Q: How long did this interaction take place?
A: About two minutes. That includes the minute or so that I lost sight of it.

Q: How fast was the scooter traveling on Tacony St?
A: About 35MPH.  I was able to pass by him in an attempt to alert oncoming traffic of the potential hazard.

Q: Is there anything you would like to add?
A: No.

CITY 029

EXHIBIT "F"

# COMPLAINT/INVESTIGATION WORKSHEET

**19-1066**  **CLOUGH JAMES, LIEUT #0127**

*C/O App Init*

**INVESTIGATION CLASSIFICATION:**  **DEPARTMENTAL VIOLATIONS**

**INVESTIGATION DISPOSITION:**  **SUSTAINED**

| TACONY STREET AND FRALEY STREET | 5/7/2019 | Tuesday | 7:25 PM | 19-15-044176 | No |
|---|---|---|---|---|---|
| *INCIDENT LOCATION* | *DATE* | *DAY* | *TIME* | *INCIDENT DC#* | *ARREST?* |

---

### OFFICER/EMPLOYEE # 1

**206826  WOLK JOSEPH  P/OFF #6734  HIGHWAY PATROL**

*Separated*  *Off Duty* No  *Gnioteked* No  *Arrested* No

*Date of Separation:*

**ALLEGATION INVESTIGATED**

*1* DEPT VIOL-PPD DIRECTIVES VIOLATION-SEE PPD#
  *PPDD 9.4-Vehicle Pursuits*

**INVESTIGATIVE FINDING**

SUSTAINED

C/I OPR App Init

*Data Ctr Use Only  IA Pro Updated:*

10-11-19  CAL

Date  Init

DEFENSE 000001

# INTERNAL INVESTIGATION

## I.A.D. #19-1066

## LT. JAMES CLOUGH #127

**REVIEWED AND APPROVED BY:**

C.O., I.A.D.: *Deborah Faries*

Date: *10·3·19*

C/I, O.P.R.: *[signature]*

Date: *9 OCT 19*

DEFENSE 000002

INDEX

A. MEMORANDUM TO POLICE COMMISSIONER

B. WHITE PAPERS

C. INTERVIEWS

   ROBERT MATTOS
   P/O JOSEPH WOLK #6734, HIGHWAY PATROL

D. DOCUMENTS

   NOGUNZONE BLOG POSTINGS
   AID WHITEPAPER
   GARY BOVE INTERVIEW BY AID
   AUGUSTO ESPINOSA INTERVIEW BY AID
   P/O WOLK #6734 INTERVIEW BY AID
   JENNIFER SCHEFFIELD INTERVIEW BY AID
   RADQ DC# 19-15-044176
   AA-500
   DRIVER/VEHICLE EXAMINATION REPORT
   NEIGHBORHOOD SURVEY
   VIDEO TIMELINE
   EMAILS/CORRESPONDENCE REGARDING SECURITY COMPANY CAMERAS
   HIGHWAY PATROL ASSIGNMENT SHEET / PATROL LOGS 5-7-19
   PHOTOGRAPHS OF H-14 AND THE MOTOR SCOOTER
   GOOGLE MAPS
   CERTIFIED LETTER # 7017 0190 0000 9539 4160 TO GARY BOVE
   RETURNED / UNCLIAMED CERTIFIED LETTER #7017 0190 0000 9539 4160
   MESSAGE DELIVERY TO GARY BOVE
   RADIO REPRODUCTIONS
   SURVEILLANCE VIDEOS

# MEMORANDUM

POLICE
CITY OF PHILADELPHIA
DATE: 9-25-19

TO  :   Police Commissioner

FROM  :  Commanding Officer, Internal Affairs Division

SUBJECT: **INTERNAL INVESTIGATION IAD# 19-1066**

## ALLEGATION:

On Wednesday, 5-8-19, the Internal Affairs Division was notified of an auto accident that occurred on Tuesday, 5-7-19, at approximately 7:27 PM, at Tacony Street and Fraley Street, that involved a tractor trailer and a motorized scooter. The operator of the motorized scooter died as a result of the accident. Additional information was received via social media postings, that alleged the motorized scooter was being pursued by police at the time of the accident. IAD #19-1066 was issued.

On Tuesday, 5-7-19, at approximately 7:27 PM, P/O Joseph Wolk #6734, Highway Patrol, arrived at the scene of an auto accident at Tacony Street and Fraley Street involving a male on a motorized scooter and a tractor trailer. The male that had been operating the motorized scooter was pronounced deceased by Philadelphia Fire Department personnel (Medic 32) at 7:30 PM. The auto accident was investigated by the Accident Investigation District (AID) and #19-0742 was assigned.

On Wednesday, 5-8-19, Internal Affairs Division personnel were made aware of postings on a social media platform that alleged the operator of the motorized scooter was being pursued by police at the time of the accident. IAD personnel immediately responded to the area of Tacony Street and Fraley Street. IAD and AID personnel recovered surveillance video that showed various portions of the motorized scooter fleeing from RPC H-14 prior to the accident.

**A check of the computerized personnel database revealed:**

**P/O Joseph Wolk #6734, PR# 206826, was appointed on 3-26-90, and assigned to the Highway Patrol on 12-16-97.**

On Wednesday, 5-8-19, Lt. James Clough #127, Internal Affairs Division, was assigned the investigation.

## INVESTIGATIVE ANALYSIS:

On 5-7-19, at 11:00 PM, P/O Joseph Wolk #6734 responded to the AID Headquarters and provided a witness statement to P/O Mark Eib #1568. When interviewed by P/O Eib, P/O Wolk described that he had noticed a motorized scooter traveling northbound on Tacony Street. P/O Wolk noticed that the scooter did not have a license plate so P/O Wolk initiated his emergency lights and siren in an attempt to initiate a traffic stop. According to P/O Wolk, the operator of the scooter failed to stop; it actually sped up and began to travel northbound on Tacony Street in the southbound lanes

1

DEFENSE 000004

of traffic. P/O Wolk described that the scooter was approaching a blind curve, while still operating in the wrong lane of traffic. P/O Wolk sped his police vehicle past the scooter in an attempt to get to the curve ahead of the scooter. Fearing that the operator of the scooter may have been Driving Under the Influence, or possibly suicidal, P/O Wolk wanted to warn southbound traffic of the potential danger ahead.

Once he passed the scooter, P/O Wolk observed the operator of the scooter make a U-turn. P/O Wolk made a U-turn and caught up to the scooter in the 5400 block of James Street and once again attempted to initiate a traffic stop. P/O Wolk drove alongside the scooter on Scattergood Street and instructed the operator to stop. P/O Wolk stopped in front of the scooter at Scattergood Street and James Street, where P/O Wolk exited his vehicle. P/O Wolk grabbed the operator of the scooter by his shirt. The scooter operator managed to push the scooter backwards, drive around the police vehicle, and flee northbound on Eadom Street.

P/O Wolk turned eastbound onto Fraley Street from Eadom Street and then began to turn onto southbound James Street, when he noticed the scooter and the operator lying on the highway at Tacony Street and Fraley Street. P/O Wolk arrived at the scene of the accident and requested medics.

Personnel from AID conducted witness interviews on the night of 5-7-19. One witness, **Gary Bove, 55/W/M, 4574 Melrose Street, Philadelphia, PA 19124, was interviewed on 5-7-19, at Tacony Street and Fraley Street, by P/O Barnel Anderson #5756, AID.** Mr. Bove told P/O Anderson that he was not involved in the accident; he merely witnessed the auto accident. Mr. Bove related that he had been driving his vehicle in the area of Scattergood Street, when he noticed a police officer attempting to grab a white male on a "bike" by pulling him. The white male pulled away and took off on the bike. The male fled northbound on Eadom Street and made a right onto Fraley Street. Mr. Bove stated he made both turns as he followed the bike from a distance of approximately 15-20 feet behind the bike.

Mr. Bove stated that the bike had been traveling fast down Fraley Street and it had a red light at Tacony Street. Mr. Bove said that the bike did not stop for the red light and it tried to go through. As the bike entered the intersection, it went straight into the back of a truck.

A second witness, **Augusto Espinosa, 58/W/M, 3009 Longshore Avenue, Philadelphia, PA 19149, was interviewed on 5-7-19, by P/O Jeffrey Middleton #5311, AID.**

Augusto Espinosa stated he was driving a truck southbound on Tacony Street. As Mr. Espinosa approached the intersection of Tacony Street and Fraley Street, he noticed he had a green light and noticed a male on a scooter that had been coming eastbound on Fraley Street, towards him. Mr. Espinosa noticed the male on the scooter was traveling fast and did strike the rear of the trailer, near the tires. Mr. Espinosa stopped the truck and went to check on the person, when he noticed a police officer at the corner where the male on the scooter was.

Mr. Espinosa stated when he first noticed the scooter; he did not see a police vehicle following the scooter. Mr. Espinosa first noticed the police officer after he had exited the truck following the collision.

2

DEFENSE 000005

A third witness, **Jennifer Scheffield, 51/W/F, 7246 Charles Street, Philadelphia, PA 19136, was interviewed, by telephone, by P/O Ronald Jackson #5962, AID.**

Jennifer Scheffield stated that she had been outside of Fibber Magee's Bar, in a vehicle. The bar is located at Bridge Street, right before Tacony Street. Ms. Scheffield saw the kid on the dirt bike run into the rear of the patrol car, and then take off. The officer got out of his car and tried to grab the kid on the dirt bike. The officer then got back into his car when the kid took off. The police chased him [dirt bike]. Ms. Scheffield saw another car, a light blue four door car, follow behind the officer's vehicle. Ms. Scheffield stated that the officer's emergency lights and sirens were not on, nor operating.

**Robert Mattos, 53/W/M, 5343 Eadom Street, Philadelphia, PA 19137, was interviewed at the Internal Affairs Division Headquarters, by Lt. Clough #127 on 5-23-19.**

Mr. Mattos stated he had been outside of his house, servicing his vehicle on 5-7-19, at approximately 7:20 PM - 7:25 PM, when he observed a motor scooter being chased by a police SUV southbound on Eadom Street. Mr. Mattos believed that the motor scooter had slowed down, to a near stop, and the police SUV was trying to get in front of the motor scooter. The kid on the motor scooter went over the sidewalk, into a driveway, and over the grassy island at the storage place. The motor scooter continued eastbound on Kennedy Street towards James Street, with the police officer going after the motor scooter. Mr. Mattos lost sight of them at that time.

Approximately two minutes after losing sight of the motor scooter and the officer, Mr. Mattos heard a motor scooter coming. Mr. Mattos looked and saw the motor scooter being chased by a silver car past where Mr. Mattos was standing. Approximately 10 seconds later, the police SUV passed Mr. Mattos. All three vehicles went through the stop sign at Kennedy Street [at Eadom Street], turned right (eastbound) onto Fraley Street towards State Road (Tacony Street).

Mr. Mattos stated he did not see any emergency lights activated, nor was the siren activated on the police vehicle. Additionally, Mr. Mattos did not see the silver vehicle having any warning lights or sirens, nor was the silver vehicle flashing any lights or beeping its horn. Mr. Mattos stated that he believed that the motor scooter was being pursued by the silver car when it had passed him the second time as it traveled northbound on Eadom Street.

Mr. Mattos estimated that the motor scooter had been traveling approximately 35-40 mph when it passed him the second time as it traveled northbound on Eadom Street. Mr. Mattos estimated that the silver car was three houses (45 feet) away from the motor scooter, when they had passed him. Mr. Mattos estimated that the police vehicle was approximately 150-160 feet behind the motor scooter, when it passed him the second time, as they traveled northbound on Eadom Street. Mr. Mattos added that he believed that the police SUV had given up the chase and let the silver car "take the chase". Mr. Mattos figured that the silver car was faster than the police SUV. Mr. Mattos added that the silver car was aggressive, like he was a police officer.

DEFENSE 000006

According to Mr. Mattos, he believed that the silver car was traveling at approximately the same speed as the motor scooter when the vehicles passed him. Mr. Mattos estimated that the police SUV was traveling at a slower speed than the motor scooter and the silver car. Mr. Mattos believed that all three vehicles had increased their speed after they disregarded the stop sign and passed Kennedy Street.

Video footage was obtained from several surveillance cameras in the area of Tacony Street and Fraley Street. A concise breakdown of the surveillance videos is included in the documents section of this report.

**P/O Joseph Wolk #6734, PR# 206826, Highway Patrol was interviewed at the Internal Affairs Division Headquarters, by Lt. Clough #127 on 9-4-19.**

P/O Wolk stated he was assigned to RPC H-14, solo, and working the 6:00 PM to 2:00 AM tour of duty on 5-7-19. P/O Wolk stated that H-14 is the vehicle he uses most of the time. Although he cannot specifically recall performing a pre-patrol inspection on H-14 prior to the start of his tour on 5-7-19, P/O Wolk assumed all the equipment was in proper working condition. P/O Wolk could not recall which Police Radio band he was monitoring, although he believed it had been J or Northeast band.

P/O Wolk stated he was in the area of Tacony Street and Bridge Street on 5-7-19, at approximately 7:25 PM. P/O Wolk observed a motor scooter, with no tag, traveling westbound on Bridge Street and turn northbound onto Tacony Street. P/O Wolk attempted to initiate a vehicle investigation by activating the vehicle's overhead lights and sirens. The motor scooter disregarded the signal and refused to stop. After a few seconds of traveling northbound on Tacony Street, in the left lane, the motor scooter entered the southbound lanes of Tacony Street, traveling northbound against the flow of traffic. The motor scooter continued northbound, in the southbound lanes, past Fraley Street and approached a blind turn. P/O Wolk recognized the danger to the operator of the motor scooter, as well as the danger to the southbound motorists (whom likely would not have been able to see the motor scooter), and drove past the motorized scooter in an attempt to warn the southbound motorists of the danger ahead. P/O Wolk added that he believed that the operator of the motor scooter may have been either intoxicated, or suicidal.

According to P/O Wolk, as he approached the blind curve ahead of the motor scooter, he noticed the motor scooter had made a U-turn and proceeded southbound on Tacony Street. P/O Wolk then made a U-turn and attempted to stop the motor scooter once again. The motor scooter turned onto Fraley Street from Tacony Street, then southbound on James Street. P/O Wolk utilized the vehicle's air horn in an attempt to get the motor scooter to stop. The motor scooter again disregarded the signal and turned onto a small street, possibly Simon Street. The motor scooter turned onto southbound Eadom Street, through a parking lot, and double backed, traveling northbound on Eadom Street. P/O Wolk briefly lost sight of the motor scooter. P/O Wolk followed the motor scooter down a small street and onto southbound James Street. P/O Wolk continued to blow the air horn in an attempt to get the motor scooter to stop. The motor scooter continued on James Street and turned westbound onto Scattergood Street.

4

DEFENSE 000007

P/O Wolk pulled alongside of the motor scooter on Scattergood Street and told the operator to stop before he had gotten himself hurt. The operator stopped the motor scooter and P/O Wolk pulled in front of the motor scooter. P/O Wolk exited his vehicle and approached the operator at the rear of his police vehicle. As P/O Wolk approached, the motorcyclist began to push his motor scooter backwards. P/O Wolk grabbed the male by his shirt. The motorcyclist was able to accelerate the motor scooter and get away by turning northbound on Eadom Street.

P/O Wolk recalled seeing a male that is familiar to him named Gary, who is a local tow truck operator, in the northeast section of the city. P/O Wolk could not recall if he had seen Gary on Scattergood Street or Eadom Street. P/O Wolk saw the motor scooter leave the area northbound on Eadom Street, from Scattergood Street, with Gary driving his vehicle in the same direction as the motor scooter. P/O Wolk lost visual contact with the motor scooter at that point.

P/O Wolk began to drive northbound on Eadom Street and although he could not see the motor scooter, he was able to see the rear of Gary's silver vehicle approximately a block and a half ahead of him. P/O Wolk reached Fraley Street and turned right (eastbound) towards Tacony Street. While traveling eastbound on Fraley Street, prior to reaching Tacony Street, P/O Wolk began to turn right (southbound) onto James Street. As P/O Wolk turned onto James Street, he noticed the motor scooter on the ground at Fraley Street and Tacony Street. P/O Wolk went to Tacony Street and Fraley Street and noticed the male lying on the ground. P/O Wolk notified Police Radio and requested a medic unit.

P/O Wolk stated the elapsed time that passed from the time he initially attempted to stop the motor scooter at Tacony Street and Bridge Street, until the collision occurred, had been approximately two minutes. P/O Wolk added that he had not notified Police Radio of the incident until he noticed the motor scooter and the male on the ground. P/O Wolk believed that his emergency equipment had been activated the entire time.

P/O Wolk stated that no other police personnel had participated in the attempts to stop the motor scooter. P/O Wolk added that he knows Gary Bove as a local tow truck operator. P/O Wolk did not request any assistance from Mr. Bove and P/O Wolk had no idea where Mr. Bove had come from, or how he had become involved. P/O Wolk stated that he had no interaction, nor communication, with Mr. Bove during the following of the motor scooter.

P/O Wolk denied that he had seen the accident between the motor scooter and the tractor trailer. P/O Wolk said that he last saw the motor scooter when it turned northbound on Eadom Street from Scattergood Street. P/O Wolk denied that the motor scooter and his police vehicle ever made any physical contact. P/O Wolk stated that he was not physically hurt during the incident; although he has been seeking therapy from a psychiatrist because of the incident.

A Google Maps distance measuring feature indicated the travel distance as described by P/O Wolk (and corroborated by the obtained surveillance videos) is 2,767 feet (0.5241mile). The route calculated is: Tacony Street and Fraley Street, westbound Fraley Street, southbound James Street, westbound Simon Street, southbound Eadom Street, northbound Eadom Street, eastbound Larue Street, southbound James Street, westbound Scattergood Street to Eadom Street.

DEFENSE 000008

Note: On 5-8-19, Lt. Clough #127 and Lt. Newsome #142 responded to the Highway Patrol Headquarters to visually inspect and photograph RPC H-14. No evidence was noticed that would indicate that the motor scooter and RPC H-14 had made any physical contact. The photographs taken have been included in the documents section of this report.

A Philadelphia Police Radio audio reproduction of Northeast band on 5-7-19, was obtained and has been added to this investigation. The audio reproduction contains the following, in relation to the incident, that occurred at Tacony Street and Fraley Street, at approximately 7:27 PM.

7:26:02 PM, H-14 broadcasted a report of a kid hit by a scooter at Tacony Street and Fraley Street. H-14 requested rescue.

Additional radio transmissions on Northeast band were merely responding personnel for the scene, traffic control, request for notifications and AID.

Note: "Straight run" recordings of T Band, J Band, and Northeast Band were obtained and reviewed. No transmissions regarding the attempts to stop, or the erratic operation of the motor scooter were broadcasted by P/O Wolk.


James Clough
Lieutenant                                    #127
Internal Affairs Division


Approved by:


Danielle Vales
Captain                                       #13
Internal Affairs Division

6

DEFENSE 000009

## CONCLUSION:

This investigation has **SUSTAINED** the following violations of Police Department Directive 9.4 against P/O Joseph Wolk #6734, PR# 206826, Highway Patrol.

P/O Wolk was assigned to RPC H-14 and on routine patrol in the area of Tacony Street and Fraley Street on 5-7-19, at approximately 7:25 PM. P/O Wolk attempted to stop a motor bike / motor scooter for not having a license plate. The motor scooter disregarded the signal to stop and continued to operate northbound on Tacony Street. After a brief amount of time, the operator of the motor scooter began traveling in the wrong lane, against the flow of traffic. Fearing the operator had been drunk or suicidal, P/O Wolk passed the motor scooter in an attempt to warn oncoming motorists. The motor scooter turned around and P/O Wolk continued to attempt to stop the operator.

P/O Wolk attempted to apprehend the operator at Scattergood Street and Eadom Street, but the motor scooter operator managed to elude the officer, who was on foot at that time. The driver failed to yield, fled northbound on Eadom Street and eventually collided into the side of a truck. The motor scooter's operator was killed as a result of the collision. **Directive 9.4 Section 1-B-2** states, "In all other circumstances initiating a vehicular pursuit is strictly prohibited. Accordingly, initiating a pursuit solely for stolen vehicles and traffic violations, including Driving Under the Influence (DUI), is strictly prohibited."

When interviewed by the assigned Internal Affairs investigator, P/O Wolk stated that he believed that his emergency equipment had been activated the entire time he had been following and attempting to stop the motor scooter. Numerous surveillance video recordings were obtained and show that the red/blue lights were initially used on Tacony Street, but other video recordings show that the red/blue lights were not on as the pursuit traveled through the residential area west of Tacony Street. Witness statements were obtained by IAD and AID personnel and the witnesses stated that they did not see, nor hear, any emergency equipment on the police vehicle. **Directive 9.4 Section 3-J** states, "All marked radio patrol sedans engaged in a pursuit must have, and will operate the police vehicle with emergency equipment activated continuously throughout the pursuit. This includes both light bars and red/blue lights and sirens."

RPC H-14 is a marked Chevrolet Tahoe Sport Utility Vehicle (SUV). **Directive 9.4 Section 3-P** states, "Vehicles, other than a marked Radio Patrol Car (i.e., unmarked cars, EPW, SUV, Motor scooter, etc.) shall not, barring exigent circumstances, initiate a vehicle pursuit."

P/O Wolk failed to notify Police Radio that he had initiated a vehicular pursuit. **Directive 9.4 Section 4-A-2** states: "If a pursuit is initiated, immediately inform the radio dispatcher of:

a. The fact that a pursuit has been initiated, along with the justification,
b. The initial location, direction, and estimated distance to the suspect vehicle,
c. The approximate speed of both the suspect and police vehicles,
d. The vehicle description and, if possible, license information and a physical and clothing description of the occupants along with approximate ages,

DEFENSE 000010

e. The continuous progress of the pursuit and if headed towards another district, division, or jurisdiction,

f. Upon arrival of a Secondary Unit, relinquish communication responsibilities to the Secondary Unit.

P/O Wolk failed to prepare and submit the relevant pursuit memoranda following the pursuit of the motor scooter. **Directive 9.4 Section 3-T** states, "Barring extenuating circumstances, all sworn personnel involved in a pursuit in any manner will complete and submit the relevant portion of both Pursuit Memoranda (city and state) found in Appendix "A" of this directive within three (3) days."

A copy of this report is to be sent to the Commanding Officer, Police Board of Inquiry for necessary action.

Deborah R. Francis
Staff Inspector
Internal Affairs Division

DEFENSE 000011

On 05-08-19, Internal Affairs was notified of comments made on an "Instagram" page that alleged an officer was chasing a scooter that was involved in an auto accident on 05-07-19 at Tacony and Fraley Streets. The operator of the scooter died as a result of the auto accident.

Lt. James Clough #127 contacted Sgt. Joseph Rossa #482, Accident Investigation, and requested information on the investigation. Sgt. Rossa confirmed that there had been an encounter between P/O Joseph Wolk #6734 and the decedent prior to the accident. Sgt. Rossa provided all pertinent paperwork, including interviews that were conducted by Accident Investigation.

Review of witness statements appear to show that P/O Wolk was not at the location of the accident when it happened. Video was recovered from three (3) locations by Northeast Detective Division. The video appears to corroborate the witness statements and P/O Wolk's statement.

The Police Radio tapes that coincide with the incident were ordered.

Neighborhoods will be conducted this evening closer to the time of the accident. This investigation is ongoing.

A check of the computer files shows:

**P/O Joseph Wolk #6734, PR# 206826, was appointed to the Philadelphia Police Department on 03-26-90, and assigned on 12-16-97, to Highway Patrol.**

Prepared on 05-08-19 by Lt. Louis Higginson #156

Commanding Officer
Internal Affairs Division  *H.J.F.*

To *Capt. 4 Sgt.*

MAY 09 2019

☐ Action and Reply
☒ Action and Report
☐ Action No Report
☐ Information & File
Suspense Date *9-5-19*

*Departmental Violation*
*- Failure to Follow*
*Departmental Policy*
*Clough*

*Clough*
*5-8-19*

UPDATED INFORMATION:

On Wednesday, 5-8-19, video surveillance footage was retrieved by members of the Northeast Detective Division and provided to Internal Affairs. The video footage was recovered from 5400 Eadom St., 5443 Eadom St., and 2200 Fraley St. The video footage shows the motor scooter eluding police throughout the neighborhood, with H-14 (P/O Joseph Wolk #6734 Highway Patrol), and a civilian vehicle pursuing the scooter prior to the accident.

Internal Affairs personnel canvassed the area of 5300 Eadom St., 5300 James St., 2200 Bridge St., 2200 Simon St., 2200 Scattergood St., 2200 Fraley St. for any additional witnesses and video surveillance footage and witnesses. Lt. Higginson and Lt. Duccilli recovered video footage from the Maritime Charter School, located at 2275 Bridge St. The scooter is seen traveling eastbound on Bridge St. and the police vehicle is approximately one block back when the accident occurs.

RPC H-14 was visually inspected and photographed at Highway Patrol Headquarters. The scooter was inspected and photographed at the Police Garage at Macalester and Whitaker. No damage was evident to the RPC, and the scooter had minimal damage.

| Officer | Badge | Payroll # | Appointment Date | District | Date Assigned |
|---|---|---|---|---|---|
| Joseph Wolk | 7078 | 206826 | 3-26-90 | 5300 | 12-16-97 |

| Duty Status | Outside Employment | Uniform | Arrested | Injured |
|---|---|---|---|---|
| On | No | Yes | No | No |

Assigned: Lt. James Clough #127

DEFENSE 000013

STATEMENT OF : Robert Mattos 53/W/M  DOB: 11-5-65
5343 Eadom Street
Philadelphia, PA 19137
267-777-0066

DATE AND TIME : 5-23-19  4:34 PM

PLACE : Internal Affairs Headquarters
7790 Dungan Rd
Philadelphia, PA 19111

CONCERNING : I.A.D. Investigation #19-1066

INTERVIEWED BY: Lt. James Clough #127

WITNESSES :

RECORDED BY : Lt. James Clough #127


I am investigating the circumstances surrounding a fatal vehicle collision that occurred at Tacony Street and Fraley Street on 5-7-19, at approximately 5:25 PM.

You are advised that this interview is non-custodial and you are free to discontinue and leave at any time.

Q. Do you understand that you can end this interview and leave at any time?
A. Yes

Q. Do you understand that any recording of this interview is strictly prohibited?
A. Yes.

Q. On 5-7-19, did you see a motorcycle being chased by a Philadelphia police vehicle?
A. Yes.

Q. Can you please tell me what you witnessed in the area of 5300 Eadom Street on 5-7-19, at approximately 7:20-7:25 PM?

A. I was outside of my house putting windshield washer fluid in my car and I saw the motorcycle being chased by a police suv, it was heading southbound on Eadom Street. They almost stopped, the kid slowed down and the police suv was trying to get his front end in front of him. The kid on the motorcycle went over the sidewalk into the driveway, over the grassy island at the storage place. The motorcycle went eastbound down Kennedy to James towards 95. The police officer made a u-turn and went after him. The officer went northbound on Eadom Street and eastbound on Kennedy Street. I lost sight of them at that time.

*Robert Mattos*

---

| Signature | Date | Page 1 |
| Robert Mattos | 5-23-19 | |

DEFENSE 000014

About two minutes later, I heard the motorcycle coming; I looked up and saw the motorcycle being chased by a silver car. It had to be about 10 seconds later, the police suv passed by. It was the motorcycle, the silver car, and a gap in time, about 10 seconds the police suv went by. They all went through the stop sign at Kennedy Street and turned right onto Fraley towards State Road (Tacony Street).

Q. Do you recall the number on the police vehicle?
A. No.

Q. Have you ever seen the silver car, or it's operator before?
A. No.

Q. Did the police vehicle have it's overhead red/blue lights and/or audible siren activated at any time that you saw?
A. No.

Q. How many times did you see the motorcycle and police vehicle pass 5300 Eadom Street where you were at?
A. Twice.

Q. Did the silver vehicle have any red/blue lights and/or siren?
A. No.

Q. Was the silver vehicle beeping it's horn or flashing it's headlights?
A. No.

Q. When you saw the motorcycle the second time travel northbound on Eadom Street, was it being pursued by another vehicle?
A. Yes, the silver car.

Q. Did the operator of the motorcycle say anything to the police officer, or the driver of the silver Vehicle as they passed you?
A. No.

Q. When you saw the motorcycle the second time travel northbound on Eadom Street, how fast would you estimate it was traveling?
A. I would say 35-40, they were moving.

Q. When you say that they wee moving, who are you referring to?
A. The motorcycle, the silver car and then the police suv.

Q. When you saw the motorcycle the second time travel northbound on Eadom Street, how far behind the motorcycle was the silver vehicle?
A. Roughly 45 feet. It was about 3 houses.

_Robert Mattos_
_____
Signature
Robert Mattos

Date
5-23-19

Page 2

DEFENSE 000015

Q. When you saw the motorcycle the second time travel northbound on Eadom Street, how far behind the motorcycle was the police vehicle?

A. At least 150-160 feet. I thought that the police suv gave up on the chase and let the silver car take the chase. I figured that the maybe the silver car was chasing the motorcycle because it was faster and the police car was an suv. The silver car was aggressive like he was a police officer.

Q. How fast would you estimate the silver vehicle was traveling as it passed you while it was following the motorcycle?

A. About the same speed as the motorcycle. They appeared to speed up as they got past Kennedy. I heard an engine speed up, I could not tell whose engine it was.

Q. How fast would you estimate the police vehicle was traveling when it passed you northbound on Eadom Street?

A. He was slower than the other two. He seemed to have sped up a little when he passed Kennedy.

Q. Did you see any actual contact between the motorcycle and the police vehicle?

A. No.

Q. Did you see any contact between the police officer and the motorcycle operator at Scattergood Street and Eadom Street?

A. No.

Q. Did all three vehicles completely disregard the stop sign at Kennedy St and Eadom Street?

A. Yes.

Q. Do you have anything else you would like to add to this interview or information that would be helpful in this investigation?

A. No.

THIS STATEMENT CONSISTING OF (3) PAGES
IS CONCLUDED AT 5:12 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (3) PAGES
AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

SIGNATURE: *Robert Mattos*

DATE: 5/23     TIME: 5:15

WITNESSES: _____

Signature
Robert Mattos

Date
5-23-19

Page 3

DEFENSE 000016

STATEMENT OF : P/O Joseph Wolk #6734
PR# 206826, Appointed 3-26-90
Assigned to the Highway Patrol on 12-16-97

DATE AND TIME : 9-4-19  11:15 AM

PLACE        :  Philadelphia Police Department
Internal Affairs Division
7790 Dungan Rd.

CONCERNING   :  I.A.D. Investigation #19-1066

INTERVIEWED BY: Lt. James Clough #127

WITNESSES    :  Danielle Nitti, ESQ.     *Danielle Nitti*

RECORDED BY  :  Lt. James Clough #127

I am investigating a possible police pursuit and a fatal auto accident involving that occurred on 5-7-19, at approximately 7:25 PM at Tacony Street and Fraley Street.

Q.  Are you represented by counsel?
A.  Yes

You are reminded that failure to cooperate in any Departmental Investigation is punishable by ten (10) days suspension to Dismissal under Article 1-§008-10 of the Disciplinary Code.

You are also reminded that lying or attempting to deceive regarding a material fact during the course of any Departmental investigation is punishable by Dismissal under Article 1-§009-10 of the Disciplinary Code.

Q.  Do you understand this?
A.  Yes

Q.  Any audio/video recording of this interview is strictly forbidden.  Do you understand this?
A.  Yes

Q.  What was your assignment and tour of duty on 5-7-19?
A.   I was working 6:00 PM to 2:00 AM and assigned to RPC H-14.

Q.  Were you using H-14, or another vehicle?
A.  Using H-14.

| Signature | Date | | Time | Page |
|---|---|---|---|---|
| P/O Joseph Wolk #6734 | 09-04-19 | | 9-4-19   12:43 PM | Page 1 |

DEFENSE 000017

Q. Were you alone, or with a partner on 5-7-19?
A. I was alone.

Q. Were you operating a marked police vehicle?
A. Yes, H-14 is a marked SUV.

Q. Did you perform a pre-patrol inspection of your emergency equipment (Emergency lights, siren, etc.) prior to the start of your patrol duties on 5-7-19?
A. I would say yes, I don't specifically recall that evenings checks.

Q. Was all of your emergency equipment in working condition when you performed the pre-patrol inspection?
A. I would assume yes, if it wasn't I would have noted it. I use that truck most the time and I know when something is not working properly. That is my assigned vehicle.

Q. What Police Radio band were you monitoring at the time that you attempted to initiate a vehicle investigation on the motorcycle / motor scooter?
A. It was either Northeast or J Band.

Q. Were you in the area of Tacony Street and Fraley Street on 5-7-19, at approximately 7:25 PM?
A. Yes.

Q. On 5-7-19, did you attempt to make a traffic stop / vehicle investigation on a motorcycle, or motorized scooter in the area of Tacony Street and Fraley Street?
A. I was at Tacony St and Bridge St and I saw the scooter traveling westbound on Bridge St and turn northbound on Tacony St. I noticed there was no tag on the motorcycle. I activated the lights and sirens and proceeded northbound on Bridge St. in the left lane. The motorcycle operator refused to stop and after a few seconds he switched lanes and began driving northbound in the southbound lanes. The motorcycle passed Fraley St and he continued to drive northbound in the southbound lanes. The driver was approaching a sharp/blind curve just ahead of him. I didn't know if he was drunk or suicidal. I passed the motorcycle at a high rate of speed to warn the oncoming southbound motorists of the danger ahead. I was trying to avoid a potential collision between the motorcyclist and any vehicles traveling southbound who likely could not see the oncoming motorcycle.

As I approached the curve, I noticed in my side view mirror that the motorcycle was making a U-turn. I made a U-turn and attempted to stop him again. The motorcycle made a right turn on Fraley St. I got behind him once again southbound on James St. I had blown my air horn in an attempt to get him to stop. It went south on James St and made a right turn on a small street, possibly Simon St. The motorcycle drove southbound on Eadom and he drove through a parking lot and doublebacked onto northbound Eadom. I lost sight of him briefly when he had gone into the parking lot. I noticed him in my rearview mirror, exiting the lot area and heading north on Eadom St.

| Signature | Date | Time | Page 2 |
|---|---|---|---|
| P/O Joseph Wolk #6734 | 09-04-19 | | |

P/o J____ 6734

12:47 PM

DEFENSE 000018

The motorcycle went down another small street towards James St. and he made a southbound turn onto James. I continued to blow the air horn for him to stop. The motorcycle turned westbound onto Scattergood St.

Once on Scattergood St I pulled alongside of the motorcyclist and told him to stop before he had gotten hurt. He stopped the motorcycle and I pulled in front of him. I exited my vehicle and went to the motorcycle. As I approached, the male began pushing the motorcycle backwards with his feet. I got close enough to grab the male by his shirt. As I grabbed him, he accelerated and began to drive away; his shirt ripped and he left Scattergood St and turned right onto northbound Eadom St.

I remember seeing a civilian vehicle, I recognized the driver as a local tow truck operator named Gary, who operates in the northeast. I saw him either on Scattergood or Eadom St. The motorcycle went northbound on Eadom St. I saw Gary turn and begin to drive the same direction as the motorcycle. I reentered my patrol vehicle, and went northbound on Eadom. I lost sight of the motorcycle, but I could see the rear of Gary's gray car. I would guess that Gary's car was about a block and a half in front of me still on Eadom St. I continued to drive northbound on Eadom and I turned eastbound on Fraley St. When I turned onto Fraley St. I did not see the motorcycle and I cannot remember if I saw Gary's car. When I got to James St. I began to turn southbound and I noticed the motorcycle on the ground at Tacony St. I went to Tacony and Fraley and saw the male on the ground and I notified Radio and requested rescue.

Later that night I gave a summarized version of the incident to AID.


Q. Where did you first attempt to initiate a traffic stop / vehicle investigation on the motorcycle / motor scooter?
A. Tacony and Bridge Sts.

Q. What equipment did you use to attempt to initiate the vehicle investigation on the motorcycle / motor scooter?
A. My overhead lights and siren along with the air horn.

Q. Did your emergency equipment appear to have been working when you activated the equipment to initiate a vehicle investigation of the motorcycle / motorscooter?
A. I believe so, yes.

Q. Did the operator of the motorcycle / motor scooter stop when you activated your emergency equipment?
A. No.

DEFENSE 000019

Q. Did you engage the motorcycle / motor scooter in a vehicular pursuit?
A. Initially, when I tried to stop him, he did not stop and he entered the lanes in the opposite flow of traffic. I went in that same direction to alert traffic at the turn, the bend in the road ahead. I had gone past him. I was more concerned about the oncoming traffic, not stopping him at that point. At some point, after I made a U-turn, I ended up back behind him and tried to stop him, he did stop at Scattergood and Eadom St. He took off again after I had exited my vehicle.

Q. Did you notify Police Radio that you had attempted to stop the motorcycle?
A. No, I was solo and it happened so quickly.

Q. When did you first broadcast anything to Police Radio regarding the motorcyclist or collision?
A. When I observed the male in the street and the motorcycle on the ground.

Q. Did you have your emergency equipment (red/blue light bar and siren) activated the entire time that you had attempted to stop / followed the motor scooter / motorcycle?
A. I thought I had it on.

Q. How long (elapsed time) do you estimate that the incident lasted?
A. From the time I first tried to stop the motorcycle until I saw the male on the ground it was about two minutes.

Q. Did you have any verbal interaction with the male operating the motorcycle / motor scooter during the pursuit?
A. On Scattergood St. I told him to stop, you're gonna get hurt.

Q. Did any other police vehicles/personnel assist/engage in the attempts to stop the motorcycle?
A. No.

Q. Who is Gary Bove?
A. I know him as a local tow truck operator. I've known him for a number of years. We are not friends, we just know each other to say hello to when we are working.

Q. Can you describe the vehicle that Gary Bove was operating?
A. It was a gray sedan, possibly a Ford.

Q. How did Gary Bove get involved in this incident?
A. I have no idea.

Q. Did you have any communication with Gary Bove during the following of the motorcycle / motor scooter?
A. No.

| Signature | Date | Time | Page 4 |
|---|---|---|---|
| P/O Joseph Wolk #6734 | 09-04-19 | 12:43 Pn | |

DEFENSE 000020

Q. Did you have an opportunity to speak with Gary Bove that night after the accident?
A. I saw him on the scene after the accident.

Q. What did Gary Bove tell you regarding the accident?
A. He said that he had seen me trying to stop the male on the motorcycle and struggle with the male.

Q. Did Gary Bove tell you that he had been chasing/pursuing the motorcycle?
A. He said that he was trying to keep an eye on him.

Q. Did you request any help from, or the assistance of Gary Bove in stopping the motorcycle / motor scooter?
A. No.

Q. Did you complete any paperwork in reference to this incident?
A. No. AID handled the accident and that report.

Q. Did you prepare a Philadelphia Police, or Pennsylvania State Police Pursuit Memorandum for the pursuit of the motorcycle / motor scooter?
A. No.

Q. At any time, did your police vehicle contact the motorcycle / motor scooter, or the operator?
A. No.

Q. At any time did the motorcycle / motor scooter contact your police vehicle?
A. No.

Q. Did you witness the collision between the motorcycle / motor scooter and the truck?
A. No.

Q. Where did you last see the motorcycle / motor scooter prior to the collision?
A. When it turned northbound on Eadom St. from Scattergood St.

Q. Did you provide a statement to an Accident Investigation District (AID) investigator on the night of the incident on 5-7-19?
A. I gave a summary of the incident to the officer.

Q. Did you review and sign the statement that you provided to the AID investigator on the night of the incident on 5-7-19?
A. I don't remember. I may have.

Q. Were you injured as a result of the incident?
A. Not physically. I have been seeking some therapy from a psychiatrist from the incident.

Q. Do you have anything else to add to this that would be useful in this investigation?
A. No.

This is an on-going investigation being conducted by Internal Affairs. By orders of the Commanding Officer of Internal Affairs you are ordered not to disclose any information discussed here to anyone other than your attorney and FOP representative.

THIS STATEMENT CONSISTING OF (6) PAGES
IS CONCLUDED AT 12:40 PM

I HAVE READ THE FOREGOING STATEMENT CONSISTING OF (6) PAGES
AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

| Signature | Date | Time | Page 6 |
|---|---|---|---|
| P/O Joseph Wolk #6734 | 09-04-19 | 12:43 pm | |

DEFENSE 000022