EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **NEAL MILLER and DONNA MILLER,** | : | |
| **Individually and as Administrators of the** | : | |
| **Estate of** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-6301** |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| **Defendants.** | : | |
| | : | |

### DEFENDANTS' INITIAL DISCOVERY DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a), the Defendants provide the following information:

**Fed.R.C.P. 26(a)(1)(A)(i):**

Defendants identify the following persons as likely to have discoverable information that may support their claims and defenses in the above-captioned matter.  All persons may be contacted through the undersigned counsel unless otherwise indicated.

1.  Police Officer Joseph Wolk
    *Defendant.*

2.  Gary Bove
    *Third-party Defendant, contact information unknown.*

3.  Police Officer Mark Eib
    *PPD Officer, observed scooter at some point.*

4.  Police Officer Barnel Anderson
    *PPD Officer, interviewed Bove at scene.*

5.  Lt. James Clough
    *PPD IAD Investigator.*

6.  Lt. Louis Higginson
    *PPD IAD Investigator.*

7.     Lt. Denise Duccilli
*PPD IAD Investigator.*

8.     Sgt. Joseph Rossa
*PPD Accident Investigator.*

9.     Christopher Savino
10.   *PPD Crash Investigator.*
.
11.   Augusto Espinosa
*Witness. Last known contact information 3009 Longshore Ave., Philadelphia, PA 19149.*

12.   Jennifer Scheffield
*Witness. Last known address 7246 Charles Street, Philadelphia, PA 19136.*

13.   Robert Mattos
*Witness. Last known address 5343 Eadom Street, Philadelphia, PA 19137.*

**Fed.R.C.P. 26(a)(1)(A)(ii):**

Defendants identify the following documents and materials that may support its claims and defenses in the above-captioned matter: all documents produced by either party during discovery, including any and all police records, medical records and police recordings.

**Fed.R.C.P. 26(a)(1)(A)(iii):**

This portion of Rule 26 is inapplicable as to Defendants.

**Fed.R.C.P. 26(a)(1)(A)(iv):**

This portion of Rule 26 is inapplicable as to Defendants.  By way of further answer, the City of Philadelphia is self-insured.

**Fed.R.C.P. No. 26(a)(2)(A):**

Defendants have not identified an expert but intend to identify one in accordance with the Court's orders and the Federal Rules of Civil Procedure.

Respectfully submitted,

Date: <u>March 1, 2021</u>                           <u>*/s/ Meghan E. Claiborne*</u>

Meghan E. Claiborne
Deputy City Solicitor
Pa. Attorney ID No. 315918
City of Philadelphia Law Dep't
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5447 (phone)
215-683-5397 (fax)
meghan.claiborne@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **NEAL MILLER and DONNA MILLER,** | : | |
| **Individually and as Administrators of the** | : | |
| **Estate of** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 20-6301** |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date below, the Defendants' Initial Disclosures were served

upon the Plaintiff by electronic mail.


Date: <u>March 1, 2021</u>          <u>/s/ *Meghan E. Claiborne*</u>

                    Meghan E. Claiborne
                    Deputy City Solicitor

4

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NEAL MILLER, et al.,              :    CIVIL
                                  :    ACTION NO.
        Plaintiffs,               :    20-6301
                                  :
    v.                            :
                                  :
CITY OF PHILADELPHIA, et al.,     :
                                  :
        Defendants.               :

**THIRD SCHEDULING ORDER**

        **AND NOW**, this **3rd** day of **April, 2023,** upon consideration of Plaintiffs' unopposed request for an extension of time, it is hereby **ORDERED** that the request is **GRANTED** for good cause shown. The Court's Second Scheduling Order (ECF No. 39) is accordingly **AMENDED** as follows:

        1.   All attorneys appearing before Judge Robreno must be registered on ECF. All official filings submitted to the Clerk of Court must be filed directly by the attorney on to ECF. All orders, opinions, and other docket entries generated from chambers will likewise be filed directly on to ECF. Notice of these chamber entries will be communicated to counsel either by ECF or ordinary mail.

        2.   All fact discovery shall be completed by **July 19, 2023.**

1

3.   All expert discovery shall be completed by **August 22, 2023.**

4.   Any motions for summary judgment shall be filed by **September 22, 2023.** Responses to any motions for summary judgment shall be filed by **October 23, 2023.**

5.   In the event a motion for summary judgment is filed, pre-trial deadlines set forth in the following paragraphs are suspended until further order of the Court.

6.   Pretrial memoranda pursuant to Local Rule of Civil Procedure 16.1(c), proposed voir dire questions, jury instructions,[1] special interrogatories, and verdict forms for a jury trial (or proposed findings of fact and conclusions of law for a non-jury trial); and any motions in limine shall be filed by **October 13, 2023.** Responses to any motions shall be filed by **October 18, 2023.**

7.   The case shall be placed in the trial pool on **October 23, 2023**, or, if a motion for summary judgment is filed, 30 days from the disposition of the motion. Once placed in the trial pool, a case may be called to trial upon twenty-four hours' notice to counsel.

---

[1]   Each proposed jury instruction should be numbered, should appear on a separate page, and should include citations to the authorities supporting the proposed instruction.

8.   If agreeable to both parties, counsel for plaintiff shall telephone Judge Robreno's Chambers to schedule a settlement conference with Magistrate Judge Richard Lloret.

9.   Plaintiff's counsel shall advise the Court promptly of settlement of the case.

**AND IT IS SO ORDERED.**

*Eduardo C. Robreno*
_____
**EDUARDO C. ROBRENO, J.**

3

EXHIBIT "C"

| From: | Derek Kane |
|-------|-----------|
| To: | Michael Levin |
| Subject: | Miller v. Wolk - Updated Disclosures |
| Date: | Monday, August 21, 2023 5:48:07 PM |

Good Evening Michael,

I will be producing two expert reports tomorrow. Those experts are identified below.

In additional, please see an update to my disclosures. Defendant identifies Detective Vincent Strain of the SVU as having information related to this case.


Update to Fed.R.C.P. 26(a)(1)(A)(i):

Defendant identifies the following person as likely to have discoverable information that may support their claims and defenses in the above-captioned matter.  All persons may be contacted through the undersigned counsel unless otherwise indicated.

1.  Detective Vincent Strain Badge No. 624
    *SVU Detective, lead detective into allegations against decedent Miller, will confirm charging decision not made before decedent's death*

Experts:

1.  Gary S. Barach, CPA, CFE, CVA, CFF, Economic Damage Expert
2.  Paul D. Doyle, Engineering Expert


Many thanks,

Derek

Derek Kane
Deputy City Solicitor
City of Philadelphia Law Department, Civil Rights Unit
Office Phone: 215-683-5374
derek.kane@phila.gov

EXHIBIT "D"

1   policy which they feel strikes a balance between

2   law enforcement needs, as well as public safety

3   needs, right?

4                    MR. KANE:  Objection to form.  You

5        can answer.

6                    THE WITNESS:  Yes.

7   BY MR. LEVIN:

8        Q.    And those are the main

9   considerations that are at play, right, because

10  you're trying to enforce the laws but not

11  unnecessarily endanger anybody?

12       A.    Yes.

13       Q.    So, just because things get heated

14  or there is something that sort of makes you want

15  to go after a person, if their conduct or the

16  facts don't fit into the directive, you're not

17  permitted to initiate that pursuit; is that fair?

18       A.    Yes.

19       Q.    So, notwithstanding what we just

20  discussed in this particular situation, it was

21  basically a traffic violation and you ended up

22  pursuing the vehicle without calling it in,

23  maintaining contact, or preparing a pursuit

24  memorandum, and at some point, a civilian seems

 1   to jump in and get himself involved; is that

 2   fair?

 3                    MR. KANE:  Objection to form.

 4                    THE WITNESS:  Yes.

 5   BY MR. LEVIN:

 6        Q.     Now, are you aware of any prior

 7   interactions that Ryan Miller had with the police

 8   within the year that this incident occurred?

 9        A.     Slightly after that incident

10   happened, someone informed me that he was being

11   investigated for a sexual crime or something like

12   that.

13        Q.     Do you have any specifics on that?

14        A.     He pulled a knife on a girl and

15   had her do a sexual favor on him or something.

16        Q.     From what my understanding is --

17   you know, the parents had been informed of what

18   had happened.

19                    My understanding is that he

20   received oral sex from a girl that was younger

21   than him, and it was captured on video.  I guess

22   he shot a cell phone video of it.

23                    Did you ever hear anything about

24   that incident in that kind of granular detail?

EXHIBIT "E"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEAL MILLER and DONNA MILLER, | : | |
| Individually and as Administrators of the Estate of | : | |
| RYAN MILLER, a Minor, Deceased | : | |
| | : | |
| v. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO. 2:20-cv-06301-ER |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES</u>**

1.      Plaintiffs, Neal and Donna Miller, 5723 Charles Street, Philadelphia, PA  19135.

Defendant, Joseph Wolk, c/o City of Philadelphia Police Department, 1515 Arch Street, 14th Floor, Philadelphia, PA  19102.

Gary Bove, 4574 Melrose Street, Philadelphia, PA  19124

The individuals identified below appear in defendant's initial disclosures:

Police Officer Mark Eib (observed the scooter at some point)
Police Officer Barnel Anderson  (interviewed Bove at scene)
Lt. James Clough (IAD investigator)
Lt. Louis Higginson (IAD investigator)
Lt. Denise Duccilli (IAD investigator)
Sgt. Joseph Rossa (PPD accident investigator)
Police Officer Christopher Savino (accident investigator)
Augusto Espinosa, witness, 3009 Longshore Avenue, Philadelphia PA 19149
Jennifer Scheffield, witness, 7246 Charles Street, Philadelphia PA 19136
Robert Mattos, witness, 5343 Eadom Street, Philadelphia PA 19137

The following individuals have been identified as witnesses through plaintiffs' investigation:

Steven Mattos, last known address 5343 Eadom Street, Philadelphia, PA 19137
Carrie Fletman, last known address 2241 Larue Street, Philadelphia, PA  19137
Luis Rosario, last known address 2231 Larue Street, Philadelphia, PA  19137
Gary Zeeger, last known address 739 Greymont Street, Philadelphia, PA  19116
Ashley Zehnder, last known address 2642 Buckius Street, Philadelphia, PA  19137
Dawn Brooks, 5315 Eadom Street, Philadelphia PA 19137


2.      (a)     Ryan Miller
         (b)     N/A

       (c)     Single
       (d)     N/A
       (e)     Donna Miller (age 43) 5723 Charles Street, Philadelphia, PA
                  Neal Miller (aged 47) 5723 Charles Street, Philadelphia, PA
       (f)     Mia Miller, 15, 5723 Charles Street, Philadelphia, PA
       (g)     N/A

3.     Bridesburg Elementary, 8th grade.

4.     5723 Charles Street, Philadelphia, PA

5.     Donna Miller, mother.  Neal Miller, father and Mia Miller, sister.

6.     N/A.

7.     N/A.

8.     N/A.

9.     Yes.  Some early investigation was conducted by Gill & Associates, and subsequent investigation conducted by Chuck Bentham.  See witness statements and other investigation materials attached in response to Defendant's Request for Production of Documents.

10.    Objection. Irrelevant and overbroad.  Without waiving the foregoing, no.

11.    The Decedent had never been arrested.  He had been questioned in connection with an alleged sexual assault in April 2019.  No charges were ever brought.

12.    Primary Care Physician:  Leonard Popawich, D.O., 2403 E York St, Philadelphia, PA 19125
Counseling with "Jessica", last name unknown to plaintiffs, at the Northeast Community Center for Behavioral Health, 7226 Castor Avenue, Philadelphia PA 19111.

13.    No.

14.    No.

15.    His friend Isaah Reyes.

17.    Both parents, his sister Mia, his friend Isaah, Police Officer Wolk, Gary Bove.  None others known to plaintiffs.

18.    Ryan's friend Kareen who goes by the nickname "Biz" was the owner. Plaintiffs don't know any further information on the identity of this individual, but knows that he was

associated with the "Bike Life" riding group. Plaintiffs will attempt to obtain further information.

19.     Unknown.

20.     No

21.     Undetermined at present.  Plaintiff has not yet retained experts for trial purposes.  Plaintiff will provide expert reports and curriculum vitae in accordance with the applicable scheduling order.

22.     To be supplied if applicable.  See 21 above.

23.     Plaintiffs reserve the right to call any fact witness with applicable knowledge as ascertained through the course of discovery, including, without limitation, all individuals identified in these answers.  All expert witnesses will be disclosed at the earliest possible date.

                                        FLAGER & ASSOCIATES, P.C.


                        By:     Michael S. Levin
                                Michael S. Levin, Esquire
                                Attorney for Plaintiffs
                                1210 Northbrook Drive, Suite 280
                                Trevose, PA 19053
                                (215) 208-3593
                                michael@flagerlaw.com

EXHIBIT "F"

1      Q.     Do you have any paperwork at all

2  that relates to this, you know, incident where

3  Ryan was questioned by police.

4      A.     No.  They never gave us anything

5  because nothing was going to come out because

6  they said that they reviewed the video and the

7  way that the girl said it happened was that he

8  was holding a knife up to her.  Couldn't of if

9  he's left handed and his hand was in the

10 corner.  You know what I mean?  So they were

11 dropping it.

12     Q.     Okay.  When you say dropping it,

13 can you clarify a little more?  What were they

14 not doing?

15     A.     They were trying to charge him

16 for aggravated rape because she tried to say

17 that he was trying to rape her.

18     Q.     Okay.  And using some kind of

19 weapon, at least according to her; is that

20 correct?

21     A.     The girl had stated to the cops

22 that Ryan had a knife to her and was forcing

23 her to do it.

24     Q.     Okay.

25     A.     But the video -- I mean, I

Donna Mirter
5/11/2023

1   didn't see it, but the cops clearly let him go

2   and there was nothing that they can hold him

3   for, so.

4        Q.    Okay.  Did a police officer tell

5   you directly that they were not going to

6   pursue that aggravated rape charge?

7        A.    They said they would get a hold

8   of me, but Ryan ended up passing away.  They

9   said they would get a hold of me if anything

10  came out of it, but --

11       Q.    Okay.

12       A.    They said of right now, they

13  don't have anything to hold him.

14       Q.    Understood.  Okay.  And then you

15  mentioned that your daughter was then having

16  issues with some of the other girls in the

17  school; is that correct?

18       A.    Yes.

19       Q.    What grade was your daughter in

20  at the time?

21       A.    They're a year -- they're a year

22  behind.

23       Q.    Okay.  And are you, you know,

24  what was happening to your daughter then?

25       A.    I got a phone call from my

EXHIBIT G

1  circle back to that incident then at school.

2  You mentioned it had something to do with Ryan

3  and a video.

4          A.      Yes.

5          Q.      So what was on that video?  What

6  is your understanding?  Have you ever seen

7  this video?

8          A.      No.

9          Q.      Okay.  It's a video he had,

10 though?

11         A.      Yes.

12         Q.      Okay.  What is your

13 understanding of what this video was?

14         A.      A girl giving him oral sex at a

15 playground.

16         Q.      Okay.  Do you know who this girl

17 is?

18         A.      It was a classmate.

19         Q.      Okay.  His classmate?

20         A.      Yes.

21         Q.      Okay.  A girl his age?

22         A.      Yes.

23         Q.      Okay.  And it's your

24 understanding that he had shown this video

25 maybe to a friend or something like that?

1        A.      Yes.

2        Q.      Okay.  Was the video ever posted

3   online, or is it something to your

4   understanding that he was just showing people

5   on his phone?

6        A.      Showing right off his phone.  It

7   was never posted.

8        Q.      And school found out about this

9   to your understanding?

10        A.      Yes.

11        Q.      Okay.  When the school found out

12   then, what do you remember happening?  What

13   did they -- what were they doing?

14        A.      They called my wife to the

15   school to come talk to them about it.

16        Q.      Okay.  Did you go or was it just

17   your wife?

18        A.      I was on my way there.  I was at

19   work.

20        Q.      Okay.  Were you ever part of

21   that conversation then with the school?

22        A.      No.

23        Q.      Okay.  What did the school tell

24   your wife, to your knowledge?

25        A.      That they -- since the content

1  was on the phone, the police had to be

2  notified.

3          Q.      Okay.

4          A.      And they snuck him out the --

5  they called my wife into the office and they

6  snuck my son out the backdoor.

7          Q.      Okay.  Out the back door where?

8          A.      Of the school.

9          Q.      Okay, but where were they

10 sending him I guess when they took him out of

11 the school?

12         A.      They waited till the cops got

13 there and they sent him with the cops.

14         Q.      Okay.

15         A.      When the parent was there, they

16 should have kept them together.

17         Q.      Is it your understanding that

18 Ryan was questioned by cops at some point

19 after this -- after the incident?

20         A.      Because of the incident?

21         Q.      Sorry.  Yeah.

22         A.      Yeah.

23         Q.      Let me repeat that question.

24         So on that day your wife was called to

25 the school, Ryan went to a police station; is