```
                  IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF PENNSYLVANIA
                              - - -


NEAL MILLER and DONNA       : No.: 2:20-cv-06301-ER
MILLER, Individually and    :
as Administrators of the    :
ESTATE OF RYAN MILLER,      :
                            :
                Plaintiffs, :
                            :
      -VS-                  :
                            :
                            :
CITY OF PHILADELPHIA,       :
et al,                      :
                            :
                Defendants. :
```

                              - - -

        Oral Deposition of DETECTIVE VINCENT

STRAIN taken at the Law Office of the City of

Philadelphia, Law Department, 1515 Arch Street, 14th

Floor, Philadelphia, Pennsylvania 19102, on Friday,

December 15, 2023, commencing at 10:00 a.m., before

Nicole DeNofa, a Registered Professional Reporter

and Notary Public.

```
 1   A P P E A R A N C E S:

 2   BY:  MICHAEL S. LEVIN, ESQUIRE
     Flager & Associates, PC
 3   1210 Northbrook Drive, Suite 280
     Trevose, Pennsylvania 19053
 4   (215)953-5200
     michael@flagerlaw.com
 5   Counsel for Plaintiffs

 6

 7

 8   BY:  DEREK R. KANE, ESQUIRE
     City of Philadelphia, Law Department
 9   1515 Arch Street, 14th Floor
     Philadelphia, Pennsylvania 19102
10   (215)683-5447
     derek.kane@phila.gov
11   Counsel for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                          – – –

 2                      I N D E X

 3                          – – –

 4

 5   WITNESS:                              PAGE:

 6     DETECTIVE VINCENT STRAIN

 7

 8   EXAMINATION:

 9     BY MR. LEVIN                        4/40

10     BY MR. KANE                         38

11

12                          – – –

13                  E X H I B I T S

14                          – – –

15   NAME                DESCRIPTION            MARKED

16   Strain-1            Packet of docs         10

17

18

19

20                          – – –

21

22

23

24
```

Page 4

· · · · · · · · · · - - -
· · · . . . DETECTIVE VINCENT STRAIN,
having been duly sworn, was examined and testified
as follows:
· · · · · · · · · · - - -
· · · · E X A M I N A T I O N
· · · · · · · - -
BY MR. LEVIN:
· · Q.· Good morning, Detective Strain.· My name
is Michael Levin.· We had a brief opportunity to
meet and talk a little bit before the deposition.
But for the record, I'm representing the Estate of
Ryan Miller in connection with an incident that
happened backed in May of 2019.
· · · · My understanding is you had been involved
in an investigation regarding Ryan Miller prior to
his death.· We asked you to come here and give fact
testimony about that.
· · · · First off, I'm going to assume the answer
is yes, but have you given a deposition before?
· · A.· I have.
· · Q.· All right.· So you basically know the
ground rules.· Wait for me to finish the question.
Try to keep your answers verbal.· If I ask you a

Page 5

question you do not know or can't remember the
answer, that's perfectly fine.· We have some
documents generated during the course of your
investigation to refer to, if that'll help you.· But
it's certainly okay if there's something you can't
remember.· It's not a test.
· · · · If I ask you a question and you don't
understand the question, I'll be glad to repeat it
or rephrase it.· Very straight forward, very narrow
subject matter we're dealing with today.· Hopefully,
we won't run into any problems, but I want you to
understand everything you're being asked at the very
least.
· · · · Have you understood all the instructions?
· · A.· I do.
· · Q.· Could you please state your full name for
the record.
· · A.· Vincent Strain, S-T-R-A-I-N.· I'm
currently assigned to the Special Victim's Unit.
· · Q.· How long have you been with the Special
Victim's Unit?
· · A.· Five years.
· · Q.· So that would have encompassed this period
in and around February 2019 when this investigation

Page 6

was taking place?
· · A.· Yes.
· · Q.· What's your current age?
· · A.· Forty-three.
· · Q.· And your rank is detective?
· · A.· Yes, it is.
· · Q.· How long have you been a detective for the
police department?
· · A.· About nine years or so.
· · Q.· I don't want to spend a lot of time on
background, but if you could give us a sense of your
educational background, your professional background
through the department?
· · A.· I have 21 years with the Philadelphia
Police Department.· I have a Bachelor's Degree in
liberal studies.
· · Q.· When did you get your Bachelor's?
· · A.· About five or six years ago, somewhere
around there.
· · Q.· And where did you get it from?
· · A.· Neumann University.
· · Q.· When you started with the Philadelphia
Police Department, did you go to the Philadelphia
Police Academy?

Page 7

· · A.· I did.
· · Q.· Now, so your job title was detective and
your assignment as of February 2019 was Special
Victim's Unit.· Did there come a time when you
became involved in an investigation concerning a
minor named Ryan Miller?
· · A.· Yes, there was.
· · Q.· And how did that come about?
· · A.· A report was taken by an officer and then
it was brought to the Special Victim's Unit.· And I
was assigned the investigator to that case.
· · Q.· Okay.· And just to, sort of, put it on the
record.· Prior to starting off today, counsel for
the city was kind enough to provide me the
opportunity to view, I guess, the video that led to
this investigation, which was a short snippet of a
video of an underaged girl giving an underaged boy
oral sex; is that a fair characterization?
· · · · MR. KANE:· Objection to the form.
· · · · You can answer.
· · · · THE WITNESS:· That's correct.
BY MR. LEVIN:
· · Q.· And my understanding is, basically,
there's an incident between this girl and this boy

Page 8

1  in or around the month of December 2018; is that
2  right?
3      A.  That's correct.
4      Q.  And that's the actual incident that was
5  depicted on the video I just referred to?
6      A.  That is correct.
7      Q.  And I'm going to, sort of, go through the
8  facts as I understand them.  Please correct me if
9  I'm wrong on any of this.  I'm trying to get through
10  the preliminaries and, sort of, I guess, the
11  sequence of events that led to your involvement and
12  then, sort of, get into the substance of your
13  investigation.
14          My understanding is these two kids, Ryan
15  Miller and the girl, who I'm going to refer to as
16  M., since she is underage and considered a victim.
17  Ryan Miller and M. knew each other prior to this
18  incident?
19      A.  That's correct.
20      Q.  And my understanding is that this actually
21  occurred when they were walking into school
22  together?
23      A.  Can you repeat that?
24      Q.  The incident that occurred that led to

Page 9

1  this investigation, that happened when they were
2  walking into school one morning?
3      A.  The incident that led up to the video, I
4  believe they left school.  It was outside the school
5  grounds.
6      Q.  Okay.  I thought it was before school; is
7  that not correct?
8      A.  I don't recall specifically.  I know they
9  had met up.  I believe it may have been they met up
10  prior to school and then went to a park and then
11  ended up going back to school --
12      Q.  Okay.
13      A.  -- after.
14      Q.  And the actual incident that's depicted in
15  that video took place in a park?
16      A.  That's correct.  Yeah, at a park.  Not on
17  school grounds.
18      Q.  Close to the school?
19      A.  I believe so, yeah.
20      Q.  And which school was that?
21      A.  I'd have to refer to the notes.
22      Q.  Is that AMY 5?
23      A.  AMY 5, yeah.
24      Q.  Where is that school located?

Page 10

1      A.  I'd have to look at the notes to see the
2  exact address.
3      Q.  Fair enough.  Why don't we make this
4  simpler for you.  I have a packet of documents that
5  was produced by counsel.  We're going to mark this
6  collectively as Strain-1.  You'll see, as you go
7  through, I have everything numbered consecutively on
8  the lower right-hand side.
9              - - -
10          (Whereupon, Strain-1 was marked for
11      identification.)
12              - - -
13  BY MR. LEVIN:
14      Q.  First, let me ask you, you had the
15  opportunity, before sitting for this deposition
16  today, to review those documents, correct?
17      A.  I did.
18      Q.  And I'll represent to you the only thing I
19  omitted from what I just handed over to you, there
20  was some photos of the cell phone, the SIM card, and
21  there was one picture of Ryan Miller and the two of
22  them were in a police station, didn't bring those,
23  but basically everything that's substantive is in
24  front of you.

Page 11

1          Now, the investigative records you have in
2  front of you, are those records that Philadelphia
3  Police Department keeps in the normal course of its
4  business activities?
5      A.  That's correct.
6      Q.  And the documents themselves, they record
7  incidents or developments in an investigation that
8  are generated at or near the time those incidents
9  occurred, right?
10      A.  That's correct.
11      Q.  They're basically considered a reliable
12  record of what transpired at various parts of the
13  investigation?
14      A.  Yes, they are.
15      Q.  All right.  So an officer was informed of
16  this incident through, my understanding is the
17  principal at school?
18      A.  That's correct.  They would have responded
19  from a 911 call that the school would've made.
20      Q.  Okay.  So, sort of, back to the genesis of
21  the whole investigation, Ryan Miller, who was, I
22  believe, 15 at the time, and the girl, M., who was
23  12 at the time, correct?
24      A.  That's correct.

Page 12

Q.  She engaged in an act of oral sex, which is the subject of a short snippet of video that Ryan took on his cell phone, right?

A.  Correct.

Q.  After that incident, the two went into school together, right?

A.  That's correct.

Q.  And from there, nothing really came of it until the following February, February 2019, a couple months later, right?

A.  Yes.

Q.  She did not report it to any adults or authorities or teachers at the school?

A.  Not that I'm aware of, no.

Q.  And my understanding is the video snippet we just saw, either kids at school found out about it or it started to make the rounds amongst the kids at school and eventually it came to the principal's attention through that?

A.  Yes.

Q.  My understanding is a couple students told the principal about it, right?

A.  Yes, they did.

MR. KANE:  Objection to the form.

Page 13

BY MR. LEVIN:

Q.  The principal then brings in the police, after -- I guess she spoke to the children prior to that, right?

A.  That's correct, yeah.

Q.  And I think it's reflected in the documents.  If you need to refer to these at all, feel free.  But just that my understanding is, sort of, how this came about, the video surfaces amongst some students at the school.  One of the students, or maybe more than one, brings it to the principal's attention.  The principal then gets Ryan, brings him down to the office or wherever, asked to see the video, right?

A.  Yes.

Q.  She viewed that, determined who the girl was in the video?

A.  I believe Ryan gave the girl's name to the principal.

Q.  And she's also a student at the school, right?

A.  Yes, she is.

Q.  And when she found out who the girl was, the girl was also brought down to the principal,

Page 14

correct?

A.  Yes, she was.

Q.  From looking at the principal's interview, it seems that the girl, M., initially denied that was her for a couple of hours, right?

A.  Yes, she did.

Q.  Her mom was brought into the school?

A.  Yes.

Q.  And at that time, that's when she says, I was raped, correct?

A.  Correct.

Q.  Specifically, what she was saying is she was held at knifepoint and forced to perform this act, right?

A.  That is correct.

Q.  There was no record of her making that allegation any time before her mom showed up at the school?

A.  Not that I'm aware of, no.

Q.  Now, it was after that, principal calls the police, and I think it said an Officer Flynn who makes the initial contact?

A.  Yes.

Q.  And is he with the Special Victim's Unit

Page 15

or with the police generally?

A.  He's an officer on the street, yeah.  So he would've answered the 911 call and been the first one to report to the school.

Q.  Now, going through Strain-1, there is just a complaint or incident report sitting right in front of you, Page 4 of this packet, is that Officer Flynn's initial report?

A.  Yes, that would have been the initial report by Officer Flynn or his partner, Office McKee.  They would've completed this,

Q.  A lot of it is really illegible.  I couldn't tell who did it.

That's the initial report.  I'm assuming that based on the nature of this allegation that involved, potentially, an act of sexual abuse against somebody very young; that's how your department gets involved, correct?

A.  That's correct, yeah.

Q.  That would be the normal course, underage victim, that type of thing?

A.  Yeah.  So the officer that responded, once there's an allegation of sexual abuse or any kind of sexual act that was unwanted or unwarranted, they

Page 16

would contact Special Victim's Unit and speak with a
supervisor to see if that would be a case that we
would handle.  In this case, you know, we did handle
the case.  And it was brought up to our unit.

Q.  Okay.  And could you just, sort of, give
me an idea how the case ends up being assigned to
you?

A.  So we work -- so I'm in a line squad at
Special Victim's Unit.  Any live jobs normally come
to the line squad.  And we work on what's called a
wheel.  So if there's three detectives working at
the time, you know, Detective A, B, C, first case
that comes in goes to A; second one, B; third one,
C.  Next one would go back to A.  That's how we
work.  So I was up for this case when it came to the
Special Victim's Unit.

Q.  Okay.  Were you considered the head of
this investigation once it was in your unit?

A.  Yes.  I would have been the assigned
detective, correct.

Q.  And I know there was some other -- I don't
know their ranks, but I don't know if they're
detectives or officers, but I know there's some
other police officers, some rank or another,

Page 17

involved in the investigation conducted by your
unit; is that correct?

A.  That is correct.

Q.  Who were they?

A.  Officer Viera, he sat on a good portion of
the forensic interview of M.  And then I believe a
Detective Gonzalez did one of the interviews of one
of the witnesses, and then Officer Wilson also did
an interview of, I believe, M.'s mother.

Q.  Okay.  So as a consequence of sitting down
for interviews and speaking to the police, victim,
victim's mom, what was your next step after that in
terms of conducting the investigation?

A.  So the witness first was brought into the
Special Victim's Unit.  All the parties were brought
to our unit.  So Ryan Miller was brought up.  He was
brought up in custody.  So he was held for a time at
our unit.  The complainant, M., was brought up and
she was forensically interviewed.

Now, how we do interviews with
children or anyone usually under 18 who was possibly
sexually assaulted, we use the PCA, which is the
Philadelphia Children's Alliance.  And they conduct
our forensic interviews.  So when they conduct these

Page 18

forensic interviews, you know, it's in a comfortable
setting, in a room, one-on-one.  So it's the
complainant and the interviewer.  And then the
assigned detective or another detective that's
available will watch the interview from another room
and then communicate with the forensic interviewer
any follow-up questions that need to be asked.

So that was done for M. at the time.  We
did a forensic interview on M.  After the forensic
interview was completed of M., I did a one-on-one
interview with some follow-up questions with M.
Ryan was in custody at the time, so I had a short
conversation with Ryan while he was in custody,
explaining what he was doing there.  I recovered
Ryan's phone.  I recovered M.'s phone.  And then I
eventually did forensic dumps of those phones, as
well as I did search warrants to M. and Ryan's
Instagram accounts.

Q.  Now, I want to go through some of the
documents that are in the packet so we're
identifying what's what.  And it looks like Pages 1
through 3 of Strain-1, looks like an application for
a search warrant, and it appears to have been
approved by an issuing authority; is that correct?

Page 19

A.  That is correct.  That would have been the
search warrant for the cell phone belonging to Ryan
Miller.

Q.  When was this application actually
approved?

A.  It was approved on March 3, 2019.

Q.  Okay.  So from the period -- all these
initial interviews, they were all February 8th of
2019; is that correct?

A.  I believe so.

Q.  So did the phone remain in police custody
from the date of that until the warrant for the
phone is actually approved?

A.  That's correct.  Yeah, it would have been
placed on a property receipt, documenting that we
had it, and then the analysis would have been done
after that.

Q.  This particular warrant, the first thing
that we have in this packet, this is for the
contents of the cell phone, so it's video, contacts,
all of that, correct?

A.  That's correct.

Q.  And how is this actually accomplished?  Do
you have somebody internal who handles it or do you

Page 20

1 use an external vendor to do these data dumps with
2 the phones?
3     A.  We do have an internal person that can do
4 it.  For any reason they wouldn't be available, we
5 have access to what's called the RCFL.  It's an FBI
6 forensic laboratory.
7     Q.  And all of those materials, including the
8 video, they were recovered from the phone, correct?
9     A.  That's correct.
10     Q.  All right.  Was there any additional
11 material that was found in that data dump from the
12 phone that was relevant to the consideration of
13 charges, any messages, emails, anything of that
14 nature that pertain to this event?
15     A.  Not that I can recall specifically from
16 the phone.  There was messages through Instagram
17 when I did the search warrants to Instagram that may
18 have been pertinent, but not specifically that I can
19 recall from his phone, other than the video.
20     Q.  Okay.  Now, moving on to, I believe, it's
21 Pages 5 through 7 of the packet.  This looks to
22 actually be -- this is the interview of M., correct?
23     A.  That's correct.  That's the follow-up
24 interview I did of M. after she was forensically

Page 21

1 interviewed by PCA.
2     Q.  Okay.  I believe this might be the only
3 interview I've seen, maybe I'm wrong.
4         MR. KANE:  For the record, so there
5     are records relating to that PCA interview, but
6     there is a video-recorded one just of M.
7     speaking with -- well, the detective can go
8     into what that is.
9         MR. LEVIN:  Okay.
10 BY MR. LEVIN:
11     Q.  You've had the opportunity to look at that
12 initial interview that was conducted by the PCA?
13     A.  Yes, that's correct.
14     Q.  Okay.  And could you summarize what you
15 recall being related in that interview?
16     A.  So when PCA does an interview, they give a
17 report summary, which is in here in this packet.
18     Q.  What page are we looking at for that?
19         MR. KANE:  Page 15 is the beginning.
20         THE WITNESS:  Page 19 would be a
21     summary of her interview with PCA.
22 BY MR. LEVIN:
23     Q.  Okay.  Now, on Page 16, I guess, this is
24 just -- there's a little box Allegations, that

Page 22

1 states:  It was referred to PCA on February 8, '19.
2         Which is the day when all these people
3 were interviewed initially, right?
4     A.  That's correct.
5     Q.  It says:  According to the referral
6 information, principal saw the video in --
7     A.  So "A.P." stands for alleged perpetrator.
8     Q.  -- in alleged perpetrator's phone of M.
9 performing oral sex.  Alleged perpetrator says M. is
10 his girlfriend and it was consensual.  Mom of M.
11 went to school and M. says it happened over school
12 break and that A.P. put a knife to her, that it was
13 not consensual.
14         Through any -- all parts of your
15 investigation, any part of the investigation, was
16 there ever any evidence that supported there was a
17 knife being held to her other than her allegation?
18     A.  No, there wasn't.
19     Q.  We didn't see that in the video, fair to
20 say?
21     A.  That's correct.
22     Q.  Nothing in terms of the audio that's on
23 the video really supports that there was any
24 coercion or threat there, right?

Page 23

1     A.  No.
2         MR. KANE:  Objection to the form.
3 BY MR. LEVIN:
4     Q.  That may have been inelegantly stated, but
5 is it fair to state that there was never anything to
6 actually corroborate that Ryan held a knife on the
7 girl?
8         MR. KANE:  Objection to the form.
9         You can answer.
10         THE WITNESS:  That is correct.
11 BY MR. LEVIN:
12     Q.  Any evidence of other type of force being
13 used in any type of manner?
14     A.  No.
15     Q.  And I only understand this through
16 counsel, but I'll ask you now on the record.  Well,
17 let me ask you a couple preliminaries.
18         You're aware that ultimately Ryan died in
19 an unrelated incident where there's a police pursuit
20 and he ends up colliding with a truck, right?
21     A.  I'm aware of that, yeah, that he died.
22     Q.  I take it that, with his death, that was
23 pretty much the end of this going anywhere in terms
24 of the investigation, right?

Case 2:20-cv-06301-MMB Document 69-4 Filed 02/16/24 Page 9 of 26

Deposition of Detective Vincent Strain                    Neal Miller and Donna Miller v. City of Philadelphia, et al.

Page 24

A. That's correct. As far as any criminal investigation, correct.

Q. There had not been a formal charging determination prior to his death, had there?

A. There had not been.

Q. And my understanding, getting around to where I was going to start off before, is that there was at least a view that he would not have been charged with any offense that involved coercion or force based on the evidence you had, right?

A. That is correct.

Q. If there was any charge to be brought, it would be brought based on the age of the victim alone, correct?

A. That is correct.

Q. And my understanding is the relevant statute deems anybody under 13, that's, like, an automatic sexual assault of some sort, right?

A. That's correct, yeah. The age of consent in Pennsylvania is 13. So M. being 12 years old, she wouldn't be able to consent. When I say the age of consent being 13, it's 13 within four years. So a 13-year-old technically could have sex with a 17-year-old. But in this case, M. being 12, she

Page 25

wouldn't be able to consent with anyone.

Q. It's based on, sort of, the person's mental capacity or maturity level to consent to a sexual relationship, right?

A. As far as why they determined 13 being the age?

Q. Regardless of what age they determined, but if you're below the age of consent, it's a presumption that you can't really consent, right?

A. That is correct.

Q. Too immature, don't know what you're consenting to, right?

A. Correct.

Q. She was a year younger than she would have been. If she had been 13 at the time, Ryan being 15, statute is not violated, correct?

A. That would be correct.

Q. So the only basis for the charge would solely be based on basically statutory -- what we used to call statutory rape, it's just sexual assault if somebody goes beneath the requisite age, right?

A. That's correct.

Q. That charge wasn't actually formally

Page 26

brought?

A. It wasn't yet. So I had received the Instagram results mid-April, around April 18th or so. It would have taken me quite some time to get through those results. It would have been, both the complainant M. and Ryan's Instagram accounts, plus both of their cell phones, so the amount of data that that would encompass is a very, very large amount. So that would have taken probably at least a month, while working on other cases, to get through that.

Q. That was -- the Instagram data, that was the subject of a different search warrant application, right? There were two?

A. So there were -- I submitted search warrants to M.'s Instagram account and then a search warrant to Ryan's Instagram account, as well as a search warrant to Ryan's cell phone. So there was three search warrants total. But then I did a consent to search on M.'s phone. So total would be two cell phone dumps and two Instagram results.

Q. All right. And in terms of the information you got from Instagram, anything relevant in terms of communications to the charges

Page 27

that were on their way to being brought?

A. As far as the communication between M. and Ryan, they did talk about the incident at some point, and it didn't appear as though it was any force used. It appeared they were talking about it in a consensual way, which led to my decision of not bringing charges for any charging of the force in the incident.

Q. My overall sense, and, obviously, you don't have to agree with this, but my sense going through the documents and everything, it sounds like it was likely something she agreed to, regardless of whether she could legally agree to, and then the fact that it got discovered, she felt, either humiliated or violated, because it's now making its way around. Is that a fair characterization?

MR. KANE: Objection to the form. You can answer.

THE WITNESS: That's very possible, you know, that that's what happened.

BY MR. LEVIN:

Q. Could that have been -- in your opinion, did that color her representations about what happened?

Page 28

MR. KANE:  Objection to the form.
You can answer.
THE WITNESS:  To me, it didn't appear
that there was force used.  It appeared she did
voluntarily, you know, do what she did, went to
the park, performed that act, and then, you
know, may have been embarrassed about it
sometime after.
BY MR. LEVIN:
Q.  And I know that, you know, it's likely
that, because there was a violation of the statute,
it seems, based on her age -- strike that.
Did M. ever change or retract any part of
her initial story to the police?
A.  Not that I recall.
Q.  Other than M.'s mother, are you aware of
any family members that had interfaced with any of
the police assigned to the investigation?
A.  I'm not, no.
Q.  Do you know the defendant in this case,
Officer Joseph Wolk?
A.  I know who he is, but I don't think I ever
had a conversation with him or anything like that.
Q.  I took his deposition a couple months

Page 29

back.  He indicated that he knew, after Ryan's
death, about this investigation.  Do you have any
sense of how he would've found out about this
investigation?
A.  I don't.
Q.  Would he have had the abilities as an
officer to log into any kind of database or anything
and pull up information that pertains to this
investigation?
A.  Possibly.  I'm not sure what sign-ons he
has or doesn't have, to be honest with you.
Q.  Has anybody ever made you aware of any
connection or potential connection between Officer
Wolk and this -- the victim, M.?
A.  No.
Q.  Are you aware of any connection between
this incident and the police pursuit that occurred
in May of 2019 where Ryan ultimately died?
A.  I'm not, no.
Q.  Now, this is two kids involved in a sexual
act, and, obviously, one was too young to be doing
that under the law, no matter what.  Is it uncommon
to bring that type of prosecution against -- I mean,
here you have somebody who is 15 and somebody who is

Page 30

12.  Is it an unusual fact pattern at all in terms
of this type of investigation?
A.  As far as charging a stat rape?
Q.  Yeah.
A.  No, it wouldn't be unusual, no.
Q.  I just don't have any sense of that.  It's
something that I, kind of, figure goes on a lot,
probably more than most parents want to know.
There's another individual involved in the
pursuit with Ryan Miller, a guy named Gary Bove.  Is
that a name you've ever heard before?
A.  Yeah, I've heard the name before.
Q.  Any idea how you heard that name before?
A.  From being a tow truck driver.  I know
he's friendly with a lot of police officers.  I've
spoken with Gary before in reference to tow truck
incidents or things.
Q.  Does he have your number?
A.  Yeah.
Q.  This guy knows everybody.
Had he ever brought up Ryan Miller at any
context to you or anybody that you work with, to the
best of your knowledge?
A.  No, not that I know of.

Page 31

Q.  Do you know if he had any association or
relationship to the victim or her mom?
A.  Not that I know of, no.
Q.  Did you or anybody that you know of that
was assigned to the investigation ever have any
communication with Gary pertaining to this
investigation of Ryan Miller?
A.  No, not that I know of.
Q.  I can see where a tow truck driver can run
into police officers on a regular, frequent basis.
It sounds like this is a guy who actually socializes
and knows a lot of police officers.  Do you have any
sense of where this individual frequents?  Are there
any bars, clubs or anything like that that you know
of that he hangs out at?
A.  No, not that I know of.
Q.  Now, let me just ask you this to clarify
for the record.  Even if Officer Wolk had learned
about this incident, this investigation prior to
there being actual charges involved, no arrest or
custodial interrogation of Ryan would have been
authorized at that time, right?
A.  Not that I'm aware of, no.
Q.  All right.  So I just want to go through,

Page 32

1  I guess, the balance of these documents real quick
2  for purposes of identification.  We've already, sort
3  of, referenced M.'s statement, which is Pages 5
4  through 7.  And this is your supplemental interview.
5  We've already discussed that, right?
6      A.  That's correct.
7      Q.  And doesn't seem that there was really
8  much discussed in terms of the incident itself, but,
9  sort of, after the fact, she blocked him on
10  Instagram, deleted Instagram from her phone, things
11  of that nature?
12      A.  That's correct.  Normally, what will
13  happen is during the forensic interview, whatever
14  detective or investigator is watching in will take
15  their own notes or take mental notes of some
16  follow-up questions they want to ask, and that's
17  basically what this is.
18      Q.  It seems to me you were thinking, maybe I
19  need to look at her Instagram data if that's how
20  they were communicating, and that's what this
21  discussion is centered on, right?
22      A.  That's correct.
23      Q.  And just during your supplemental
24  interview, she also confirmed she wasn't going to

Page 33

1  say anything, had this video not come to light?
2      A.  That's correct.
3      Q.  Next interview, which is Pages 8, 9, 10,
4  that's the interview with the principal of the
5  school, Paula Furman?
6      A.  Yes, it is.
7      Q.  And she, sort of, goes through how this
8  all came to her attention, and what kids were
9  telling her, what she did in response, right?
10      A.  Yep.
11      Q.  The next document we have in this package,
12  Pages 11 and 12, I believe this is Detective
13  Gonzalez talking to Officer Flynn?
14      A.  Yes, it is.
15      Q.  Okay.  And that's just to, sort of,
16  memorialize how the police were notified and how the
17  investigation was started up, right?
18      A.  That's correct.
19      Q.  Okay.  Going through 13 and 14, this is
20  M.'s mom's interview, right?
21      A.  Yes, it is.
22      Q.  Okay.  And this was just conducted by an
23  Officer Wilson?
24      A.  Yes.

Page 34

1      Q.  Was that just a regular officer or is that
2  a Special Victim's Unit officer?
3      A.  Officer Wilson is an investigator at the
4  Special Victim's Unit.
5      Q.  Okay.  We already briefly touched on the
6  PCA summary, which is Pages 15 through 19, correct?
7      A.  Yes.
8      Q.  And looking at the summary, you've also, I
9  guess, seen the video that this summarizes?
10      A.  I have.
11      Q.  When you were looking through the summary
12  in preparation for your deposition, did you notice
13  if there was anything that was mentioned in that
14  video or discussed in that video that you felt was
15  important that isn't recorded here in the summary?
16      A.  No.  This is an accurate summary of the
17  pertinent information.
18      Q.  You feel it's substantially complete?
19      A.  I do.
20      Q.  All right.  Next thing, Pages 20 through
21  21 is just information on Ryan and, I guess, what he
22  was wearing, what he had on him?
23      A.  Yes, it is.  It's a 229 form, which is a
24  biographical information report.  So any person that

Page 35

1  is arrested or brought into custody, this is filled
2  out by the officers that make that arrest.
3      Q.  And that gives them some identifying
4  characteristics and, I guess, keeps track of what
5  property he's got on him or if anything is taken
6  while he's in custody or anything like that?
7      A.  That's correct.
8      Q.  Pages 22 through, I guess, 24 looks just
9  to be an exchange of emails relative to this
10  information, which seems like it was probably
11  because Derek over here asked about it, and somebody
12  contacted, I guess, some folks at the Special
13  Victim's Unit to ask about the investigation; is
14  that a fair summary?
15      A.  That's correct.  Yeah, John Hewitt who is
16  listed here as a lieutenant within Special Victim's
17  Unit.
18      Q.  He's basically explaining to Colleen Brown
19  that, you know, the investigation basically ended
20  because the suspect died prior to a charging
21  decision being made, right?
22      A.  That's correct.
23      Q.  We already discussed what the likely
24  outcome of that charging decision would have been,

Page 36

1  right?
2      A.  We did.
3      Q.  Moving on, looks like the next document,
4  Pages 25 through 27, this is pertaining to the
5  Instagram records that we already discussed, right?
6      A.  That's correct.  It's a search warrant
7  affidavit that was submitted for Ryan Miller's
8  Instagram.
9      Q.  Username:  Irish Potato 215.
10         And Pages 28 through 30, this would be for
11  M.'s Instagram account?
12      A.  That is correct.
13      Q.  Okay.  I know that M. mentioned that she
14  had deleted Instagram from her phone.  Did she
15  delete her account or was there still an active
16  account?
17      A.  There was still an active account, I
18  believe.
19      Q.  And next thing, Pages 31 and 32, this
20  looks to be just the property receipt for when Ryan
21  was taken into custody; is that fair?
22      A.  31 was a property receipt for Ryan's cell
23  phone.  And it looks like 32 --
24      Q.  That's for --

Page 37

1      A.  Would have been M.'s cell phone.
2      Q.  All right.  Other than what we have here,
3  and, you know, I already referenced there was some
4  pictures of the phone and SIM card that I omitted,
5  were there any other documents, to your knowledge,
6  that were generated during the course of your
7  investigation?
8      A.  Not that I recall anything pertinent, no.
9      Q.  Okay.  So this is substantially complete
10  as well?
11      A.  That is correct.
12      Q.  All right.  Since the conclusion of your
13  investigation into Ryan Miller, have you ever heard
14  from any source, other than through counsel,
15  anything regarding the pursuit where he ultimately
16  died?
17      A.  I have not.
18      Q.  How did you learn about that pursuit?
19      A.  I don't recall specifically.  I remember
20  there being a small article on, I believe, it was on
21  Fox 29 that I printed out in reference to that.  And
22  then Lieutenant Hewitt, who was part of the email
23  chain, had asked for my file in reference to this
24  incident.  But I can't specifically recall how I

Page 38

1  first found out that Ryan died, to be honest with
2  you.
3      Q.  When you saw the article, did the name
4  ring a bell; is that what happened?
5      A.  It did, yeah.
6      Q.  All right.  Is there anything that
7  occurred or transpired during the investigation of
8  note that we haven't covered that you think is
9  relevant?
10      A.  Not that I can think of, no.
11         MR. LEVIN:  I don't have any further
12     questions.
13         MR. KANE:  Just some quick questions
14     from me.
15  BY MR. KANE:
16      Q.  On February 8, 2019, Mr. Miller was taken
17  into custody; is that correct?
18      A.  That is correct.
19      Q.  Was he arrested that day?
20      A.  He was.  He was brought up to the Special
21  Victim's Unit and placed in custody up there.
22      Q.  Would Mr. Miller have been told why he was
23  arrested that day?
24      A.  Yes.

Page 39

1      Q.  Okay.  Do you have any understanding of
2  what he would have been told?
3      A.  I don't specifically remember my
4  conversation with him.  I did explain to him why he
5  was up there, you know, why he was, you know, in the
6  cell at that point.  I believe I told him to just
7  relax and we'll explain to him when we get further
8  down in the investigation.  He was later released
9  that day after speaking with ADA Helen Park of the
10  district attorney's office.
11      Q.  Is it your understanding that Mr. Miller
12  would have been told that he was accused of forcible
13  rape on that day?
14      A.  Yes.
15      Q.  Okay.  At any point from the time that
16  Mr. Miller was arrested to the time of his death,
17  would either he or his family had ever been told
18  that no charges would be brought against him related
19  to the incident that we've been talking about?
20      A.  No.  The investigation was still pending
21  at that time.
22      Q.  And to be clear, the investigation
23  eventually was stopped because of Mr. Miller's
24  death; is that correct?

Page 40

1    A.  That is correct.
2    Q.  But are you able to tell us with any
3  confidence if any charges would have been brought
4  against Mr. Miller if he hadn't died?
5    A.  I would have submitted an affidavit for a
6  warrant in reference to the statutory rape.
7    Q.  Just to be clear, who would you have
8  submitted that to?
9    A.  The district attorney's office, the
10 charging unit.
11        MR. KANE:  Those are my questions.
12  Thank you for your time.
13 BY MR. LEVIN:
14    Q.  Ultimately, the district attorney charging
15 unit is the authority that makes the decision as to
16 whether charges are brought or not, right?
17    A.  That is correct.  I submit all my evidence
18 to them and they make the ultimate decision whether
19 a warrant will be issued or not.
20    Q.  I know I saw in the documents there is a
21 reference to Ryan saying M. was his girlfriend and
22 it was consensual.  Was there ever a formal
23 interview like we have with M., her mom, the
24 principal?  Was there any kind of formal interview

Page 41

1  with Ryan or did he invoke his right to remain
2  silent?
3    A.  No, there wasn't.  I never took a
4  statement from him, no.
5    Q.  I also saw that there was a reference to
6  Ryan's mom saying that he and M. had been seeing
7  each other for a couple of months.  Did she ever
8  give a more formal statement?
9    A.  No, she didn't.
10        MR. LEVIN:  All right.  That's all I
11  have.
12        MR. KANE:  Thank you for your time.
13        THE WITNESS:  Thank you.
14        THE COURT REPORTER:  Mr. Kane, would
15  you like a copy of the transcript?
16        MR. KANE:  Yes, digital.
17             - - -
18        (Deposition concluded.)
19
20
21
22
23
24

1                    C E R T I F I C A T I O N

2

3

4               I, NICOLE DeNOFA, a Registered

5    Professional Reporter and Notary Public in and for

6    the Commonwealth of Pennsylvania, hereby certify

7    that the proceedings and evidence are contained

8    fully and accurately in the stenographic notes taken

9    by me on the deposition of the above cause, and that

10   this copy is a correct transcript of the same.

11               I further certify that I am not a

12   relative or employee of any attorney or counsel

13   employed in the case.

14

15

16

17

18               (The foregoing Certification

19   of this transcript does not apply to any

20   reproduction of the same by any means unless under

21   the direct control and/or supervision of the

22   certifying reporter.)

23

24

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 15 of 26

Deposition of Detective Vincent Strain   Neal Miller and Donna Miller v. City of Philadelphia, et al.

## WORD INDEX

**< 1 >**
**1**  18:*21*
**10**  3:*16*  33:*3*
**10:00**  1:*19*
**11**  33:*12*
**12**  11:*23*  24:*20, 24*
*30:1*  33:*12*
**1210**  2:*3*
**13**  24:*17, 20, 22*  25:*5,*
*15*  33:*19*
**13-year-old**  24:*23*
**14**  33:*19*
**14th**  1:*17*  2:*9*
**15**  1:*19*  11:*22*  21:*19*
*25:16*  29:*24*  34:*6*
**1515**  1:*17*  2:*9*
**16**  21:*23*
**17-year-old**  24:*24*
**18**  17:*21*
**18th**  26:*3*
**19**  21:*20*  22:*1*  34:*6*
**19053**  2:*3*
**19102**  1:*18*  2:*9*

**< 2 >**
**2:20-cv-06301-ER**  1:*4*
**20**  34:*20*
**2018**  8:*1*
**2019**  4:*14*  5:*24*  7:*3*
*12:9*  19:*6, 9*  29:*18*
*38:16*
**2023**  1:*19*
**21**  6:*14*  34:*21*
**215**  36:*9*
**215)683-5447**  2:*10*
**215)953-5200**  2:*4*
**22**  35:*8*
**229**  34:*23*
**24**  35:*8*
**25**  36:*4*
**27**  36:*4*
**28**  36:*10*
**280**  2:*3*
**29**  37:*21*

**< 3 >**
**3**  18:*22*  19:*6*

**30**  36:*10*
**31**  36:*19, 22*
**32**  36:*19, 23*
**38**  3:*10*

**< 4 >**
**4**  15:*7*
**4/40**  3:*9*

**< 5 >**
**5**  9:*22, 23*  20:*21*
*32:3*

**< 7 >**
**7**  20:*21*  32:*4*

**< 8 >**
**8**  22:*1*  33:*3*  38:*16*
**8th**  19:*8*

**< 9 >**
**9**  33:*3*
**911**  11:*19*  15:*3*

**< A >**
**a.m**  1:*19*
**A.P**  22:*7, 12*
**abilities**  29:*6*
**able**  24:*21*  25:*1*  40:*2*
**abuse**  15:*16, 23*
**Academy**  6:*24*
**access**  20:*5*
**accomplished**  19:*23*
**account**  26:*16, 17*
*36:11, 15, 16, 17*
**accounts**  18:*18*  26:*6*
**accurate**  34:*16*
**accurately**  42:*8*
**accused**  39:*12*
**act**  12:*1*  14:*14*
*15:16, 24*  28:*6*  29:*21*
**active**  36:*15, 17*
**activities**  11:*4*
**actual**  8:*4*  9:*14*
*31:20*
**ADA**  39:*9*
**additional**  20:*10*
**address**  10:*2*
**Administrators**  1:*5*

**adults**  12:*12*
**affidavit**  36:*7*  40:*5*
**age**  6:*3*  24:*13, 19, 21*
*25:6, 7, 8, 21*  28:*12*
**ago**  6:*18*
**agree**  27:*10, 13*
**agreed**  27:*12*
**al**  1:*9*
**allegation**  14:*17*
*15:15, 23*  22:*17*
**Allegations**  21:*24*
**alleged**  22:*7, 8, 9*
**Alliance**  17:*23*
**amount**  26:*7, 9*
**AMY**  9:*22, 23*
**analysis**  19:*16*
**and/or**  42:*21*
**answer**  4:*19*  5:*2*
*7:20*  23:*9*  27:*18*
*28:2*
**answered**  15:*3*
**answers**  4:*24*
**anybody**  24:*17*
*29:12*  30:*22*  31:*4*
**appear**  27:*4*  28:*3*
**appeared**  27:*5*  28:*4*
**appears**  18:*23*
**application**  18:*22*
*19:4*  26:*14*
**apply**  42:*19*
**approved**  18:*24*  19:*5,*
*6, 13*
**April**  26:*3*
**Arch**  1:*17*  2:*9*
**arrest**  31:*20*  35:*2*
**arrested**  35:*1*  38:*19,*
*23*  39:*16*
**article**  37:*20*  38:*3*
**asked**  4:*17*  5:*12*
*13:13*  18:*7*  35:*11*
*37:23*
**assault**  24:*18*  25:*21*
**assaulted**  17:*22*
**assigned**  5:*19*  7:*11*
*16:6, 19*  18:*4*  28:*18*
*31:5*
**assignment**  7:*3*
**Associates**  2:*2*
**association**  31:*1*

**assume**  4:*19*
**assuming**  15:*14*
**attention**  12:*19*
*13:12*  33:*8*
**attorney**  40:*14*  42:*12*
**attorney's**  39:*10*  40:*9*
**audio**  22:*22*
**authorities**  12:*13*
**authority**  18:*24*
*40:15*
**authorized**  31:*22*
**automatic**  24:*18*
**available**  18:*5*  20:*4*
**aware**  12:*14*  14:*19*
*23:18, 21*  28:*16*
*29:12, 16*  31:*23*

**< B >**
**Bachelor's**  6:*15, 17*
**back**  9:*11*  11:*20*
*16:14*  29:*1*
**backed**  4:*14*
**background**  6:*11, 12*
**balance**  32:*1*
**bars**  31:*14*
**based**  15:*15*  24:*10,*
*13*  25:*2, 19*  28:*12*
**basically**  4:*22*  7:*23*
*10:23*  11:*11*  25:*19*
*32:17*  35:*18, 19*
**basis**  25:*18*  31:*10*
**beginning**  21:*19*
**believe**  9:*4, 9, 19*
*11:22*  13:*18*  17:*6, 9*
*19:10*  20:*20*  21:*2*
*33:12*  36:*18*  37:*20*
*39:6*
**bell**  38:*4*
**belonging**  19:*2*
**beneath**  25:*21*
**best**  30:*23*
**biographical**  34:*24*
**bit**  4:*11*
**blocked**  32:*9*
**Bove**  30:*10*
**box**  21:*24*
**boy**  7:*17, 24*
**break**  22:*12*
**brief**  4:*10*

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 16 of 26

Deposition of Detective Vincent Strain                     Neal Miller and Donna Miller v. City of Philadelphia, et al.

**briefly** 34:*5*
**bring** 10:*22* 29:*23*
**bringing** 27:*7*
**brings** 13:2, *11, 12*
**brought** 7:*10* 13:*24*
14:*7* 16:*4* 17:*14, 15,*
*16, 17, 18* 24:*12, 13*
26:*1* 27:*1* 30:*21*
35:*1* 38:*20* 39:*18*
40:*3, 16*
**Brown** 35:*18*
**business** 11:*4*

**< C >**
**call** 11:*19* 15:*3*
25:*20*
**called** 16:*10* 20:*5*
**calls** 14:*20*
**capacity** 25:*3*
**card** 10:*20* 37:*4*
**case** 7:*11* 16:2, *3, 4,*
*6, 12, 15* 24:*24* 28:*20*
42:*13*
**cases** 26:*10*
**cause** 42:*9*
**cell** 10:*20* 12:*3* 19:*2,*
*20* 26:*7, 18, 21* 36:*22*
37:*1* 39:*6*
**centered** 32:*21*
**certainly** 5:*5*
**Certification** 42:*18*
**certify** 42:6, *11*
**certifying** 42:*22*
**chain** 37:*23*
**change** 28:*13*
**characteristics** 35:*4*
**characterization** 7:*18*
27:*16*
**charge** 24:*12* 25:*18,*
*24*
**charged** 24:*9*
**charges** 20:*13* 26:*24*
27:*7* 31:*20* 39:*18*
40:*3, 16*
**charging** 24:*3* 27:*7*
30:*3* 35:*20, 24* 40:*10,*
*14*
**children** 13:*3* 17:*21*
**Children's** 17:*23*

**CITY** 1:*9, 16* 2:*8*
7:*14*
**clarify** 31:*17*
**clear** 39:*22* 40:*7*
**Close** 9:*18*
**clubs** 31:*14*
**coercion** 22:*24* 24:*9*
**collectively** 10:*6*
**Colleen** 35:*18*
**colliding** 23:*20*
**color** 27:*23*
**come** 4:*17* 7:*4, 8*
16:*9* 33:*1*
**comes** 16:*13*
**comfortable** 18:*1*
**commencing** 1:*19*
**Commonwealth** 42:*6*
**communicate** 18:*6*
**communicating** 32:*20*
**communication** 27:*2*
31:*6*
**communications**
26:*24*
**complainant** 17:*18*
18:*3* 26:*6*
**complaint** 15:*6*
**complete** 34:*18* 37:*9*
**completed** 15:*11*
18:*10*
**concerning** 7:*5*
**concluded** 41:*18*
**conclusion** 37:*12*
**conduct** 17:*23, 24*
**conducted** 17:*1*
21:*12* 33:*22*
**conducting** 17:*13*
**confidence** 40:*3*
**confirmed** 32:*24*
**connection** 4:*13*
29:*13, 16*
**consecutively** 10:*7*
**consensual** 22:*10, 13*
27:*6* 40:*22*
**consent** 24:*19, 21, 22*
25:*1, 3, 8, 9* 26:*20*
**consenting** 25:*12*
**consequence** 17:*10*
**consideration** 20:*12*
**considered** 8:*16*

11:*11* 16:*17*
**contact** 14:*22* 16:*1*
**contacted** 35:*12*
**contacts** 19:*20*
**contained** 42:*7*
**contents** 19:*20*
**context** 30:*22*
**control** 42:*21*
**conversation** 18:*13*
28:*23* 39:*4*
**copy** 41:*15* 42:*10*
**correct** 7:*21* 8:*3, 6, 8,*
*19* 9:*7, 16* 10:*16*
11:*5, 10, 18, 23, 24*
12:*4, 7* 13:*5* 14:*1, 10,*
*11, 15* 15:*18, 19*
16:*20* 17:*2, 3* 18:*24*
19:*1, 9, 14, 21, 22*
20:*8, 9, 22, 23* 21:*13*
22:*4, 21* 23:*10* 24:*1,*
*2, 11, 14, 15, 19* 25:*10,*
*13, 16, 17, 23* 32:*6, 12,*
*22* 33:*2, 18* 34:*6*
35:*7, 15, 22* 36:*6, 12*
37:*11* 38:*17, 18*
39:*24* 40:*1, 17* 42:*10*
**corroborate** 23:*6*
**Counsel** 2:*5, 11* 7:*13*
10:*5* 23:*16* 37:*14*
42:*12*
**couple** 12:*10, 21*
14:*5* 23:*17* 28:*24*
41:*7*
**course** 5:*3* 11:*3*
15:*20* 37:*6*
**COURT** 1:*1* 41:*14*
**covered** 38:*8*
**criminal** 24:*1*
**current** 6:*3*
**currently** 5:*19*
**custodial** 31:*21*
**custody** 17:*17* 18:*12,*
*13* 19:*11* 35:*1, 6*
36:*21* 38:*17, 21*

**< D >**
**data** 20:*1, 11* 26:*7,*
*12* 32:*19*
**database** 29:*7*
**date** 19:*12*

**day** 22:*2* 38:*19, 23*
39:*9, 13*
**dealing** 5:*10*
**death** 4:*17* 23:*22*
24:*4* 29:*2* 39:*16, 24*
**December** 1:*19* 8:*1*
**decision** 27:*6* 35:*21,*
*24* 40:*15, 18*
**deems** 24:*17*
**defendant** 28:*20*
**Defendants** 1:*10* 2:*11*
**Degree** 6:*15*
**delete** 36:*15*
**deleted** 32:*10* 36:*14*
**denied** 14:*4*
**DeNofa** 1:*20* 42:*4*
**Department** 1:*17*
2:*8* 6:*8, 13, 15, 23*
11:*3* 15:*18*
**depicted** 8:*5* 9:*14*
**Deposition** 1:*15* 4:*11,*
*20* 10:*15* 28:*24*
34:*12* 41:*18* 42:*9*
**DEREK** 2:*8* 35:*11*
**derek.kane@phila.gov**
2:*10*
**DESCRIPTION** 3:*15*
**DETECTIVE** 1:*15*
3:*6* 4:*2, 9* 6:*5, 7* 7:*2*
16:*12, 20* 17:*7* 18:*4*
21:*7* 32:*14* 33:*12*
**detectives** 16:*11, 23*
**determination** 24:*4*
**determined** 13:*16*
25:*5, 7*
**developments** 11:*7*
**died** 23:*18, 21* 29:*18*
35:*20* 37:*16* 38:*1*
40:*4*
**different** 26:*13*
**digital** 41:*16*
**direct** 42:*21*
**discovered** 27:*14*
**discussed** 32:5, *8*
34:*14* 35:*23* 36:*5*
**discussion** 32:*21*
**DISTRICT** 1:*1*
39:*10* 40:*9, 14*
**docs** 3:*16*

**document**  33:*11*  36:*3*
**documenting**  19:*15*
**documents**  5:*3*  10:*4*,
  *16*  11:6  13:7  18:*20*
  27:*11*  32:*1*  37:5
  40:*20*
**doing**  18:*14*  29:*21*
**DONNA**  1:*4*
**Drive**  2:*3*
**driver**  30:*14*  31:*9*
**duly**  4:*3*
**dump**  20:*11*
**dumps**  18:*16*  20:*1*
  26:*21*

**< E >**
**EASTERN**  1:*1*
**educational**  6:*12*
**either**  12:*16*  27:*14*
  39:*17*
**email**  37:22
**emails**  20:*13*  35:*9*
**embarrassed**  28:7
**employed**  42:*13*
**employee**  42:*12*
**encompass**  26:*8*
**encompassed**  5:*23*
**ended**  9:*11*  35:*19*
**ends**  16:6  23:*20*
**engaged**  12:*1*
**ESQUIRE**  2:*2*, *8*
**ESTATE**  1:*5*  4:*12*
**et**  1:*9*
**event**  20:*14*
**events**  8:*11*
**eventually**  12:*18*
  18:*16*  39:*23*
**everybody**  30:*20*
**evidence**  22:*16*
  23:*12*  24:*10*  40:*17*
  42:7
**exact**  10:*2*
**EXAMINATION**  3:*8*
**examined**  4:*3*
**exchange**  35:*9*
**explain**  39:*4*, *7*
**explaining**  18:*14*
  35:*18*
**external**  20:*1*

**< F >**
**fact**  4:*17*  27:*14*
  30:*1*  32:*9*
**facts**  8:*8*
**fair**  7:*18*  10:*3*  22:*19*
  23:*5*  27:*16*  35:*14*
  36:*21*
**family**  28:*17*  39:*17*
**far**  24:*1*  25:*5*  27:*2*
  30:*3*
**FBI**  20:*5*
**February**  5:*24*  7:*3*
  12:*9*  19:*8*  22:*1*
  38:*16*
**feel**  13:8  34:*18*
**felt**  27:*14*  34:*14*
**figure**  30:7
**file**  37:*23*
**filled**  35:*1*
**fine**  5:2
**finish**  4:*23*
**First**  4:*19*  10:*14*
  15:*3*  16:*12*  17:*14*
  19:*18*  38:*1*
**Five**  5:*22*  6:*18*
**Flager**  2:*2*
**Floor**  1:*18*  2:*9*
**Flynn**  14:*21*  15:*10*
  33:*13*
**Flynn's**  15:*8*
**folks**  35:*12*
**following**  12:*9*
**follows**  4:*4*
**follow-up**  18:7, *11*
  20:*23*  32:*16*
**force**  23:*12*  24:*10*
  27:5, *7*  28:*4*
**forced**  14:*13*
**forcible**  39:*12*
**foregoing**  42:*18*
**forensic**  17:6, *24*
  18:*1*, *6*, *9*, *16*  20:6
  32:*13*
**forensically**  17:*19*
  20:*24*
**form**  7:*19*  12:*24*
  23:*2*, *8*  27:*17*  28:*1*
  34:*23*

**formal**  24:*3*  40:22,
  *24*  41:*8*
**formally**  25:*24*
**Forty-three**  6:*4*
**forward**  5:*9*
**found**  12:*16*  13:*23*
  20:*11*  29:*3*  38:*1*
**four**  24:22
**Fox**  37:*21*
**free**  13:8
**frequent**  31:*10*
**frequents**  31:*13*
**Friday**  1:*18*
**friendly**  30:*15*
**front**  10:*24*  11:2
  15:7
**full**  5:*16*
**fully**  42:8
**Furman**  33:5
**further**  38:*11*  39:7
  42:*11*

**< G >**
**Gary**  30:*10*, *16*  31:6
**generally**  15:*1*
**generated**  5:*3*  11:8
  37:6
**genesis**  11:*20*
**getting**  24:6
**girl**  7:*17*, *24*  8:*15*
  11:22  13:*16*, *23*, *24*
  14:*4*  23:7
**girlfriend**  22:*10*
  40:*21*
**girl's**  13:*18*
**give**  4:*17*  6:*11*  16:5
  21:*16*  41:8
**given**  4:*20*
**gives**  35:*3*
**giving**  7:*17*
**glad**  5:8
**go**  6:*23*  8:7  10:6
  16:*14*  18:*19*  21:7
  31:24
**goes**  16:*13*  25:*21*
  30:7  33:7
**going**  4:*19*  8:7, *15*
  9:*11*  10:5  15:5
  23:23  24:7  27:*10*

**32:24**  33:*19*
**Gonzalez**  17:7  33:*13*
**Good**  4:*9*  17:5
**ground**  4:*23*
**grounds**  9:5, *17*
**guess**  7:*15*  8:*10*
  13:*3*  21:*23*  32:*1*
  34:9, *21*  35:*4*, *8*, *12*
**guy**  30:*10*, *20*  31:*11*

**< H >**
**handed**  10:*19*
**handle**  16:*3*
**handles**  19:*24*
**hangs**  31:*15*
**happen**  32:*13*
**happened**  4:*14*  9:*1*
  22:*11*  27:*20*, *24*  38:*4*
**head**  16:*17*
**heard**  30:*11*, *12*, *13*
  37:*13*
**held**  14:*13*  17:*17*
  22:*17*  23:6
**Helen**  39:*9*
**help**  5:*4*
**Hewitt**  35:*15*  37:22
**honest**  29:*11*  38:*1*
**Hopefully**  5:*10*
**hours**  14:*5*
**humiliated**  27:*15*

**< I >**
**idea**  16:6  30:*13*
**identification**  10:*11*
  32:2
**identifying**  18:*21*
  35:*3*
**illegible**  15:*12*
**immature**  25:*11*
**important**  34:*15*
**incident**  4:*13*  7:*24*
  8:*4*, *18*, *24*  9:*3*, *14*
  11:*16*  12:5  15:6
  23:*19*  27:*3*, *8*  29:*17*
  31:*19*  32:8  37:24
  39:*19*
**incidents**  11:7, *8*
  30:*17*
**including**  20:7

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 18 of 26

Deposition of Detective Vincent Strain                    Neal Miller and Donna Miller v. City of Philadelphia, et al.

**indicated**  29:*1*
**individual**  30:*9*  31:*13*
**Individually**  1:*4*
**inelegantly**  23:*4*
**information**  22:*6*
  26:*23*  29:*8*  34:*17*, *21*,
  *24*  35:*10*
**informed**  11:*15*
**initial**  14:*22*  15:*8, 9,*
  *14*  19:*8*  21:*12*  28:*14*
**initially**  14:*4*  22:*3*
**Instagram**  18:*18*
  20:*16, 17*  26:*3, 6, 12,*
  *16, 17, 21, 23*  32:*10,*
  *19*  36:*5, 8, 11, 14*
**instructions**  5:*14*
**interfaced**  28:*17*
**internal**  19:*24*  20:*3*
**interrogation**  31:*21*
**interview**  14:*3*  17:*6,*
  *9*  18:*5, 9, 10, 11*
  20:*22, 24*  21:*3, 5, 12,*
  *15, 16, 21*  32:*4, 13, 24*
  33:*3, 4, 20*  40:*23, 24*
**interviewed**  17:*19*
  21:*1*  22:*3*
**interviewer**  18:*3, 6*
**interviews**  17:*7, 11,*
  *20, 24*  18:*1*  19:*8*
**investigation**  4:*16*
  5:*4, 24*  7:*5, 16*  8:*13*
  9:*1*  11:*7, 13, 21*
  16:*18*  17:*1, 13*  22:*15*
  23:*24*  24:*2*  28:*18*
  29:*2, 4, 9*  30:*2*  31:*5,*
  *7, 19*  33:*17*  35:*13, 19*
  37:*7, 13*  38:*7*  39:*8,*
  *20, 22*
**investigative**  11:*1*
**investigator**  7:*11*
  32:*14*  34:*3*
**invoke**  41:*1*
**involved**  4:*15*  7:*5*
  15:*16, 18*  17:*1*  24:*9*
  29:*20*  30:*9*  31:*20*
**involvement**  8:*11*
**Irish**  36:*9*
**issued**  40:*19*
**issuing**  18:*24*

**its**  11:*3*  27:*15*

**< J >**
**job**  7:*2*
**jobs**  16:*9*
**John**  35:*15*
**Joseph**  28:*21*

**< K >**
**KANE**  2:*8*  3:*10*
  7:*19*  12:*24*  21:*4, 19*
  23:*2, 8*  27:*17*  28:*1*
  38:*13, 15*  40:*11*
  41:*12, 14, 16*
**keep**  4:*24*
**keeps**  11:*3*  35:*4*
**kids**  8:*14*  12:*16, 17*
  29:*20*  33:*8*
**kind**  7:*14*  15:*23*
  29:*7*  30:*7*  40:*24*
**knew**  8:*17*  29:*1*
**knife**  22:*12, 17*  23:*6*
**knifepoint**  14:*13*
**know**  4:*22*  5:*1*  9:*8*
  16:*3, 12, 21, 22, 23*
  18:*1*  25:*11*  27:*20*
  28:*5, 7, 10, 20, 22*
  30:*8, 14, 24*  31:*1, 3, 4,*
  *8, 14, 16*  35:*19*  36:*13*
  37:*3*  39:*5*  40:*20*
**knowledge**  30:*23*
  37:*5*
**knows**  30:*20*  31:*12*

**< L >**
**laboratory**  20:*6*
**large**  26:*8*
**Law**  1:*16, 17*  2:*8*
  29:*22*
**learn**  37:*18*
**learned**  31:*18*
**led**  7:*15*  8:*11, 24*
  9:*3*  27:*6*
**left**  9:*4*
**legally**  27:*13*
**level**  25:*3*
**LEVIN**  2:*2*  3:*9*  4:*8,*
  *10*  7:*22*  10:*13*  13:*1*
  21:*9, 10, 22*  23:*3, 11*

27:*21*  28:*9*  38:*11*
  40:*13*  41:*10*
**liberal**  6:*16*
**lieutenant**  35:*16*
  37:*22*
**light**  33:*1*
**line**  16:*8, 10*
**listed**  35:*16*
**little**  4:*11*  21:*24*
**live**  16:*9*
**located**  9:*24*
**log**  29:*7*
**long**  5:*20*  6:*7*
**look**  10:*1*  21:*11*
  32:*19*
**looking**  14:*3*  21:*18*
  34:*8, 11*
**looks**  18:*21, 22*
  20:*21*  35:*8*  36:*3, 20,*
  *23*
**lot**  6:*10*  15:*12*  30:*7,*
  *15*  31:*12*
**lower**  10:*8*

**< M >**
**M.'s**  17:*9*  18:*15*
  26:*16, 20*  28:*16*  32:*3*
  33:*20*  36:*11*  37:*1*
**making**  14:*16*  27:*15*
**manner**  23:*13*
**March**  19:*6*
**mark**  10:*5*
**MARKED**  3:*15*
  10:*10*
**material**  20:*11*
**materials**  20:*7*
**matter**  5:*10*  29:*22*
**maturity**  25:*3*
**McKee**  15:*11*
**mean**  29:*23*
**means**  42:*20*
**meet**  4:*11*
**members**  28:*17*
**memorialize**  33:*16*
**mental**  25:*3*  32:*15*
**mentioned**  34:*13*
  36:*13*
**messages**  20:*13, 16*
**met**  9:*9*
**MICHAEL**  2:*2*  4:*10*

michael@flagerlaw.co
  m  2:*4*
**mid-April**  26:*3*
**MILLER**  1:*4, 5*  4:*13,*
  *16*  7:*6*  8:*15, 17*
  10:*21*  11:*21*  17:*16*
  19:*3*  30:*10, 21*  31:*7*
  37:*13*  38:*16, 22*
  39:*11, 16*  40:*4*
**Miller's**  36:*7*  39:*23*
**minor**  7:*6*
**mom**  14:*7, 17*  17:*12*
  22:*10*  31:*2*  40:*23*
  41:*6*
**mom's**  33:*20*
**month**  8:*1*  26:*10*
**months**  12:*10*  28:*24*
  41:*7*
**morning**  4:*9*  9:*2*
**mother**  17:*9*  28:*16*
**moving**  20:*20*  36:*3*

**< N >**
**NAME**  3:*15*  4:*9*
  5:*16*  13:*18*  30:*11, 12,*
  *13*  38:*3*
**named**  7:*6*  30:*10*
**narrow**  5:*9*
**nature**  15:*15*  20:*14*
  32:*11*
**NEAL**  1:*4*
**near**  11:*8*
**need**  13:*7*  18:*7*
  32:*19*
**Neumann**  6:*21*
**never**  23:*5*  41:*3*
**Nicole**  1:*20*  42:*4*
**nine**  6:*9*
**normal**  11:*3*  15:*20*
**normally**  16:*9*  32:*12*
**Northbrook**  2:*3*
**Notary**  1:*21*  42:*5*
**note**  38:*8*
**notes**  9:*21*  10:*1*
  32:*15*  42:*8*
**notice**  34:*12*
**notified**  33:*16*
**number**  30:*18*
**numbered**  10:*7*

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 19 of 26

Deposition of Detective Vincent Strain                     Neal Miller and Donna Miller v. City of Philadelphia, et al.

< O >
**Objection** 7:*19*
 12:*24* 23:2, *8* 27:*17*
 28:*1*
**obviously** 27:9 29:*21*
**occurred** 8:*21, 24*
 11:*9* 29:*17* 38:7
**offense** 24:*9*
**Office** 1:*16* 13:*13*
 15:*10* 39:*10* 40:*9*
**officer** 7:9 11:*15*
 14:*21* 15:2, 7, *10, 22*
 17:*5, 8* 28:*21* 29:7,
 *13* 31:*18* 33:*13, 23*
 34:*1, 2, 3*
**officers** 16:*23, 24*
 30:*15* 31:*10, 12* 35:2
**okay** 5:5 7:*12* 9:*6,
 12* 11:*20* 16:5, *17*
 17:*10* 19:7 20:*20*
 21:*2, 9, 14, 23* 33:*15,
 19, 22* 34:5 36:*13*
 37:9 39:*1, 15*
**old** 24:*20*
**omitted** 10:*19* 37:*4*
**once** 15:*22* 16:*18*
**one-on-one** 18:2, *10*
**opinion** 27:*22*
**opportunity** 4:*10*
 7:*15* 10:*15* 21:*11*
**Oral** 1:*15* 7:*18* 12:*1*
 22:*9*
**outcome** 35:*24*
**outside** 9:*4*
**overall** 27:*9*

< P >
**package** 33:*11*
**Packet** 3:*16* 10:*4*
 15:7 18:*20* 19:*19*
 20:*21* 21:*17*
**PAGE** 3:*5* 15:7
 21:*18, 19, 20, 23*
**Pages** 18:*21* 20:*21*
 32:*3* 33:*3, 12* 34:*6,
 20* 35:8 36:*4, 10, 19*
**parents** 30:*8*
**park** 9:*10, 15, 16*
 28:*6* 39:*9*

**part** 22:*15* 28:*13*
 37:*22*
**particular** 19:*18*
**parties** 17:*15*
**partner** 15:*10*
**parts** 11:*12* 22:*14*
**pattern** 30:*1*
**Paula** 33:*5*
**PC** 2:2
**PCA** 17:*22* 21:*1, 5,
 12, 16, 21* 22:*1* 34:6
**pending** 39:*20*
**PENNSYLVANIA**
 1:*1, 18* 2:*3, 9* 24:*20*
 42:*6*
**people** 22:2
**perfectly** 5:2
**perform** 14:*13*
**performed** 28:*6*
**performing** 22:*9*
**period** 5:*23* 19:7
**perpetrator** 22:*7, 9*
**perpetrator's** 22:*8*
**person** 20:*3* 34:*24*
**person's** 25:2
**pertain** 20:*14*
**pertaining** 31:6 36:*4*
**pertains** 29:*8*
**pertinent** 20:*18*
 34:*17* 37:*8*
**PHILADELPHIA**
 1:9, *17, 18* 2:8, *9*
 6:*14, 22, 23* 11:2
 17:*23*
**phone** 10:*20* 12:*3*
 18:*15* 19:2, *11, 13, 20*
 20:8, *12, 16, 19* 22:8
 26:*18, 20, 21* 32:*10*
 36:*14, 23* 37:*1, 4*
**phones** 18:*16* 20:2
 26:7
**photos** 10:*20*
**picture** 10:*21*
**pictures** 37:*4*
**place** 6:*1* 9:*15*
**placed** 19:*15* 38:*21*
**Plaintiffs** 1:6 2:5
**please** 5:*16* 8:8
**plus** 26:6
**point** 27:*4* 39:6, *15*

**police** 6:*8, 15, 23, 24*
 10:*22* 11:*3* 13:2
 14:*21* 15:*1* 16:*24*
 17:*11* 19:*11* 23:*19*
 28:*14, 18* 29:*17*
 30:*15* 31:*10, 12*
 33:*16*
**portion** 17:*5*
**possible** 27:*19*
**possibly** 17:*21* 29:*10*
**Potato** 36:*9*
**potential** 29:*13*
**potentially** 15:*16*
**preliminaries** 8:*10*
 23:*17*
**preparation** 34:*12*
**presumption** 25:*9*
**pretty** 23:*23*
**principal** 11:*17*
 12:*22* 13:2, *12, 19, 24*
 14:*20* 22:6 33:*4*
 40:*24*
**principal's** 12:*18*
 13:*11* 14:*3*
**printed** 37:*21*
**prior** 4:*16* 7:*13*
 8:*17* 9:*10* 13:*3* 24:*4*
 31:*19* 35:*20*
**probably** 26:9 30:*8*
 35:*10*
**problems** 5:*11*
**proceedings** 42:7
**produced** 10:*5*
**Professional** 1:*20*
 6:*12* 42:*5*
**property** 19:*15* 35:*5*
 36:*20, 22*
**prosecution** 29:*23*
**provide** 7:*14*
**Public** 1:*21* 42:*5*
**pull** 29:*8*
**purposes** 32:2
**pursuit** 23:*19* 29:*17*
 30:*10* 37:*15, 18*
**put** 7:*12* 22:*12*

< Q >
**question** 4:*23* 5:*1, 7,
 8*

**questions** 18:7, *11*
 32:*16* 38:*12, 13*
 40:*11*
**quick** 32:*1* 38:*13*
**quite** 26:*4*

< R >
**rank** 6:*5* 16:*24*
**ranks** 16:*22*
**rape** 25:*20* 30:*3*
 39:*13* 40:*6*
**raped** 14:*10*
**RCFL** 20:*5*
**real** 32:*1*
**really** 12:8 15:*12*
 22:*23* 25:*9* 32:7
**reason** 20:*4*
**recall** 9:*8* 20:*15, 19*
 21:*15* 28:*15* 37:8, *19,
 24*
**receipt** 19:*15* 36:*20,
 22*
**received** 26:2
**record** 4:*12* 5:*17*
 7:*13* 11:6, *12* 14:*16*
 21:*4* 23:*16* 31:*18*
**recorded** 34:*15*
**records** 11:*1, 2* 21:*5*
 36:*5*
**recovered** 18:*14, 15*
 20:*8*
**refer** 5:*4* 8:*15* 9:*21*
 13:*7*
**reference** 30:*16*
 37:*21, 23* 40:6, *21*
 41:*5*
**referenced** 32:*3* 37:*3*
**referral** 22:*5*
**referred** 8:*5* 22:*1*
**reflected** 13:*6*
**regarding** 4:*16* 37:*15*
**Regardless** 25:*7*
 27:*12*
**Registered** 1:*20* 42:*4*
**regular** 31:*10* 34:*1*
**related** 21:*15* 39:*18*
**relating** 21:*5*
**relationship** 25:*4*
 31:2

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 20 of 26

Deposition of Detective Vincent Strain                    Neal Miller and Donna Miller v. City of Philadelphia, et al.

**relative** 35:9 42:12

**relax** 39:7

**released** 39:8

**relevant** 20:12 24:16 26:24 38:9

**reliable** 11:11

**remain** 19:11 41:1

**remember** 5:1, 6 37:19 39:3

**repeat** 5:8 8:23

**rephrase** 5:9

**report** 7:9 12:12 15:4, 6, 8, 10, 14 21:17 34:24

**Reporter** 1:20 41:14 42:5, 22

**represent** 10:18

**representations** 27:23

**representing** 4:12

**reproduction** 42:20

**requisite** 25:21

**responded** 11:18 15:22

**response** 33:9

**results** 26:3, 5, 21

**retract** 28:13

**review** 10:16

**right** 4:22 8:2 11:9, 15 12:3, 6, 10, 22 13:4, 14, 21 14:5, 14 15:6 20:10 22:3, 24 23:20, 24 24:10, 18 25:4, 9, 12, 22 26:14, 22 31:22, 24 32:5, 21 33:9, 17, 20 34:20 35:21 36:1, 5 37:2, 12 38:6 40:16 41:1, 10

**right-hand** 10:8

**ring** 38:4

**room** 18:2, 5

**rounds** 12:17

**rules** 4:23

**run** 5:11 31:9

**RYAN** 1:5 4:13, 16 7:6 8:14, 17 10:21 11:21 12:2 13:12, 18 17:16 18:12, 13 19:2 23:6, 18 25:15 27:3 29:18 30:10, 21 31:7,

21 34:21 36:7, 20 37:13 38:1 40:21 41:1

**Ryan's** 18:15, 17 26:6, 17, 18 29:1 36:22 41:6

**< S >**

**sat** 17:5

**saw** 12:16 22:6 38:3 40:20 41:5

**saying** 14:12 40:21 41:6

**says** 14:9 22:5, 9, 11

**school** 8:21 9:2, 4, 6, 10, 11, 17, 18, 20, 24 11:17, 19 12:6, 13, 16, 18 13:10, 20 14:7, 18 15:4 22:11 33:5

**search** 18:17, 23 19:2 20:17 26:13, 15, 16, 18, 19, 20 36:6

**second** 16:13

**see** 10:1, 6 13:13 16:2 22:19 31:9

**seeing** 41:6

**seen** 21:3 34:9

**sense** 6:11 27:9, 10 29:3 30:6 31:13

**sequence** 8:11

**setting** 18:2

**sex** 7:18 12:1 22:9 24:23

**sexual** 15:16, 23, 24 24:18 25:4, 20 29:20

**sexually** 17:22

**short** 7:16 12:2 18:12

**showed** 14:17

**side** 10:8

**sign-ons** 29:10

**silent** 41:2

**SIM** 10:20 37:4

**simpler** 10:4

**sitting** 10:15 15:6 17:10

**six** 6:18

**small** 37:20

**snippet** 7:16 12:2, 15

**socializes** 31:11

**solely** 25:19

**somebody** 15:17 19:24 25:21 29:24 35:11

**sort** 7:12 8:7, 10, 12 11:20 13:8 16:5 24:18 25:2 32:2, 9 33:7, 15

**sounds** 27:11 31:11

**source** 37:14

**speak** 16:1

**speaking** 17:11 21:7 39:9

**Special** 5:19, 20 7:3, 10 14:24 16:1, 9, 16 17:15 34:2, 4 35:12, 16 38:20

**specifically** 9:8 14:12 20:15, 18 37:19, 24 39:3

**spend** 6:10

**spoke** 13:3

**spoken** 30:16

**squad** 16:8, 10

**stands** 22:7

**start** 24:7

**started** 6:22 12:17 33:17

**starting** 7:13

**stat** 30:3

**state** 5:16 23:5

**stated** 23:4

**statement** 32:3 41:4, 8

**STATES** 1:1 22:1

**station** 10:22

**statute** 24:17 25:16 28:11

**statutory** 25:19, 20 40:6

**stenographic** 42:8

**step** 17:12

**stopped** 39:23

**story** 28:14

**straight** 5:9

**STRAIN** 1:16 3:6 4:2, 9 5:18

**S-T-R-A-I-N** 5:18

**Strain-1** 3:16 10:6, 10 15:5 18:22

**Street** 1:17 2:9 15:2

**strike** 28:12

**student** 13:20

**students** 12:21 13:10

**studies** 6:16

**subject** 5:10 12:2 26:13

**submit** 40:17

**submitted** 26:15 36:7 40:5, 8

**substance** 8:12

**substantially** 34:18 37:9

**substantiative** 10:23

**Suite** 2:3

**summarize** 21:14

**summarizes** 34:9

**summary** 21:17, 21 34:6, 8, 11, 15, 16 35:14

**supervision** 42:21

**supervisor** 16:2

**supplemental** 32:4, 23

**supported** 22:16

**supports** 22:23

**sure** 29:9

**surfaces** 13:9

**suspect** 35:20

**sworn** 4:3

**< T >**

**take** 23:22 32:14, 15

**taken** 1:16 7:9 26:4, 9 35:5 36:21 38:16 42:8

**talk** 4:11 27:3

**talking** 27:5 33:13 39:19

**teachers** 12:13

**technically** 24:23

**tell** 15:13 40:2

**telling** 33:9

**terms** 17:13 22:22 23:23 26:22, 24 30:1 32:8

**test** 5:6

**testified** 4:3

**testimony** 4:18

**Thank**  40:*12*  41:*12*, *13*
**thing**  10:*18*  15:*21*  19:*18*  34:*20*  36:*19*
**things**  30:*17*  32:*10*
**think**  13:*6*  14:*21*  28:22  38:8, *10*
**thinking**  32:*18*
**third**  16:*13*
**thought**  9:*6*
**threat**  22:*24*
**three**  16:*11*  26:*19*
**time**  6:*10*  7:*4*  11:*8*, 22, 23  14:*9*, *17*  16:*12*  17:*17*  18:*8*, *12*  25:*15*  26:*4*  31:22  39:*15*, *16*, *21*  40:*12*  41:*12*
**title**  7:*2*
**today**  5:*10*  7:*13*  10:*16*
**told**  12:*21*  38:22  39:*2*, *6*, *12*, *17*
**total**  26:*19*, 20
**touched**  34:*5*
**tow**  30:*14*, *16*  31:9
**track**  35:*4*
**transcript**  41:*15*  42:*10*, *19*
**transpired**  11:*12*  38:7
**Trevose**  2:*3*
**truck**  23:*20*  30:*14*, *16*  31:9
**Try**  4:*24*
**trying**  8:*9*
**two**  8:*14*  10:*21*  12:*5*  26:*14*, *21*  29:20
**type**  15:*21*  23:*12*, *13*  29:23  30:*2*

**< U >**
**ultimate**  40:*18*
**ultimately**  23:*18*  29:*18*  37:*15*  40:*14*
**uncommon**  29:*22*
**underage**  8:*16*  15:*20*
**underaged**  7:*17*
**understand**  5:*8*, *12*  8:*8*  23:*15*

**understanding**  4:*15*  7:*23*  8:*14*, 20  11:*16*  12:*15*, *21*  13:8  24:*6*, *16*  39:*1*, *11*
**understood**  5:*14*
**Unit**  5:*19*, *21*  7:*4*, *10*  14:*24*  16:*1*, *4*, *9*, *16*, *18*  17:*2*, *15*, *16*, *18*  34:*2*, *4*  35:*13*, *17*  38:*21*  40:*10*, *15*
**UNITED**  1:*1*
**University**  6:*21*
**unrelated**  23:*19*
**unusual**  30:*1*, *5*
**unwanted**  15:*24*
**unwarranted**  15:*24*
**use**  17:*22*  20:*1*
**Username**  36:*9*
**usually**  17:*21*

**< V >**
**various**  11:*12*
**vendor**  20:*1*
**verbal**  4:*24*
**victim**  8:*16*  15:*21*  17:*11*  24:*13*  29:*14*  31:*2*
**Victim's**  5:*19*, *21*  7:*4*, *10*  14:*24*  16:*1*, *9*, *16*  17:*12*, *15*  34:*2*, *4*  35:*13*, *16*  38:*21*
**video**  7:*15*, *17*  8:*5*  9:*3*, *15*  12:*2*, *15*  13:*9*, *14*, *17*  19:*20*  20:*8*, *19*  22:*6*, *19*, *23*  33:*1*  34:*9*, *14*
**video-recorded**  21:*6*
**Viera**  17:*5*
**view**  7:*15*  24:*8*
**viewed**  13:*16*
**VINCENT**  1:*15*  3:*6*  4:*2*  5:*18*
**violated**  25:*16*  27:*15*
**violation**  28:*11*
**voluntarily**  28:*5*
**VS**  1:*7*

**< W >**
**Wait**  4:*23*
**walking**  8:*21*  9:*2*

**want**  5:*11*  6:*10*  18:*19*  30:*8*  31:*24*  32:*16*
**warrant**  18:*23*  19:*2*, *12*, *18*  26:*13*, *17*, *18*  36:*6*  40:*6*, *19*
**warrants**  18:*17*  20:*17*  26:*16*, *19*
**watch**  18:*5*
**watching**  32:*14*
**way**  27:*1*, *6*, *16*
**wearing**  34:*22*
**well**  18:*17*  21:*7*  23:*16*  26:*17*  37:*10*
**went**  9:*10*  12:*5*  22:*11*  28:*5*
**we're**  5:*10*  10:*5*  18:*20*
**We've**  32:*2*, *5*  39:*19*
**wheel**  16:*11*
**Wilson**  17:*8*  33:*23*  34:*3*
**WITNESS**  3:*5*  7:*21*  17:*14*  21:*20*  23:*10*  27:*19*  28:*3*  41:*13*
**witnesses**  17:*8*
**Wolk**  28:*21*  29:*14*  31:*18*
**work**  16:*8*, *10*, *15*  30:22
**working**  16:*11*  26:*10*
**would've**  11:*19*  15:*3*, *11*  29:*3*
**wrong**  8:*9*  21:*3*

**< Y >**
**Yeah**  9:*16*, *19*, *23*  13:*5*  15:*2*, *19*, *22*  19:*14*  23:*21*  24:*19*  30:*4*, *12*, *19*  35:*15*  38:*5*
**year**  25:*14*
**years**  5:*22*  6:*9*, *14*, *18*  24:*20*, *22*
**Yep**  33:*10*
**young**  15:*17*  29:*21*
**younger**  25:*14*

Case 2:20-cv-06301-MMB   Document 69-4   Filed 02/16/24   Page 22 of 26

Deposition of Detective Vincent Strain                    Neal Miller and Donna Miller v. City of Philadelphia, et al.

## WORD LIST

< 1 >
1  (1)
10  (2)
10:00  (1)
11  (1)
12  (5)
1210  (1)
13  (7)
13-year-old  (1)
14  (1)
14th  (2)
15  (6)
1515  (2)
16  (1)
17-year-old  (1)
18  (1)
18th  (1)
19  (3)
19053  (1)
19102  (2)

< 2 >
2:20-cv-06301-ER  (1)
20  (1)
2018  (1)
2019  (8)
2023  (1)
21  (2)
215  (1)
215)683-5447  (1)
215)953-5200  (1)
22  (1)
229  (1)
24  (1)
25  (1)
27  (1)
28  (1)
280  (1)
29  (1)

< 3 >
3  (2)
30  (1)
31  (2)
32  (2)
38  (1)

< 4 >
4  (1)
4/40  (1)

< 5 >
5  (4)

< 7 >
7  (2)

< 8 >
8  (3)
8th  (1)

< 9 >
9  (1)
911  (2)

< A >
a.m  (1)
A.P  (2)
abilities  (1)
able  (3)
abuse  (2)
Academy  (1)
access  (1)
accomplished  (1)
account  (6)
accounts  (2)
accurate  (1)
accurately  (1)
accused  (1)
act  (6)
active  (2)
activities  (1)
actual  (3)
ADA  (1)
additional  (1)
address  (1)
Administrators  (1)
adults  (1)
affidavit  (2)
age  (9)
ago  (1)
agree  (2)
agreed  (1)
al  (1)
allegation  (4)
Allegations  (1)

alleged  (3)
Alliance  (1)
amount  (2)
AMY  (2)
analysis  (1)
and/or  (1)
answer  (6)
answered  (1)
answers  (1)
anybody  (4)
appear  (2)
appeared  (2)
appears  (1)
application  (3)
apply  (1)
approved  (4)
April  (1)
Arch  (2)
arrest  (2)
arrested  (4)
article  (2)
asked  (6)
assault  (2)
assaulted  (1)
assigned  (7)
assignment  (1)
Associates  (1)
association  (1)
assume  (1)
assuming  (1)
attention  (3)
attorney  (2)
attorney's  (2)
audio  (1)
authorities  (1)
authority  (2)
authorized  (1)
automatic  (1)
available  (2)
aware  (8)

< B >
Bachelor's  (2)
back  (4)
backed  (1)
background  (3)
balance  (1)
bars  (1)
based  (6)

basically  (8)
basis  (2)
beginning  (1)
believe  (14)
bell  (1)
belonging  (1)
beneath  (1)
best  (1)
biographical  (1)
bit  (1)
blocked  (1)
Bove  (1)
box  (1)
boy  (2)
break  (1)
brief  (1)
briefly  (1)
bring  (2)
bringing  (1)
brings  (3)
brought  (19)
Brown  (1)
business  (1)

< C >
call  (3)
called  (2)
calls  (1)
capacity  (1)
card  (2)
case  (10)
cases  (1)
cause  (1)
cell  (10)
centered  (1)
certainly  (1)
Certification  (1)
certify  (2)
certifying  (1)
chain  (1)
change  (1)
characteristics  (1)
characterization  (2)
charge  (3)
charged  (1)
charges  (7)
charging  (7)
children  (2)
Children's  (1)

**CITY** *(4)*
**clarify** *(1)*
**clear** *(2)*
**Close** *(1)*
**clubs** *(1)*
**coercion** *(2)*
**collectively** *(1)*
**Colleen** *(1)*
**colliding** *(1)*
**color** *(1)*
**come** *(5)*
**comes** *(1)*
**comfortable** *(1)*
**commencing** *(1)*
**Commonwealth** *(1)*
**communicate** *(1)*
**communicating** *(1)*
**communication** *(2)*
**communications** *(1)*
**complainant** *(3)*
**complaint** *(1)*
**complete** *(2)*
**completed** *(2)*
**concerning** *(1)*
**concluded** *(1)*
**conclusion** *(1)*
**conduct** *(1)*
**conducted** *(3)*
**conducting** *(1)*
**confidence** *(1)*
**confirmed** *(1)*
**connection** *(4)*
**consecutively** *(1)*
**consensual** *(4)*
**consent** *(8)*
**consenting** *(1)*
**consequence** *(1)*
**consideration** *(1)*
**considered** *(3)*
**contact** *(2)*
**contacted** *(1)*
**contacts** *(1)*
**contained** *(1)*
**contents** *(1)*
**context** *(1)*
**control** *(1)*
**conversation** *(3)*
**copy** *(2)*
**correct** *(68)*

**corroborate** *(1)*
**Counsel** *(7)*
**couple** *(6)*
**course** *(4)*
**COURT** *(2)*
**covered** *(1)*
**criminal** *(1)*
**current** *(1)*
**currently** *(1)*
**custodial** *(1)*
**custody** *(9)*

**< D >**
**data** *(5)*
**database** *(1)*
**date** *(1)*
**day** *(5)*
**dealing** *(1)*
**death** *(6)*
**December** *(2)*
**decision** *(5)*
**deems** *(1)*
**defendant** *(1)*
**Defendants** *(2)*
**Degree** *(1)*
**delete** *(1)*
**deleted** *(1)*
**denied** *(1)*
**DeNofa** *(2)*
**Department** *(8)*
**depicted** *(1)*
**Deposition** *(8)*
**DEREK** *(2)*
**derek.kane@phila.gov** *(1)*
**DESCRIPTION** *(1)*
**DETECTIVE** *(15)*
**detectives** *(2)*
**determination** *(1)*
**determined** *(3)*
**developments** *(1)*
**died** *(7)*
**different** *(1)*
**digital** *(1)*
**direct** *(1)*
**discovered** *(1)*
**discussed** *(5)*
**discussion** *(1)*
**DISTRICT** *(5)*

**docs** *(1)*
**document** *(2)*
**documenting** *(1)*
**documents** *(10)*
**doing** *(2)*
**DONNA** *(1)*
**Drive** *(1)*
**driver** *(2)*
**duly** *(1)*
**dump** *(2)*
**dumps** *(3)*

**< E >**
**EASTERN** *(1)*
**educational** *(1)*
**either** *(3)*
**email** *(1)*
**emails** *(1)*
**embarrassed** *(1)*
**employed** *(1)*
**employee** *(1)*
**encompass** *(1)*
**encompassed** *(1)*
**ended** *(2)*
**ends** *(2)*
**engaged** *(1)*
**ESQUIRE** *(2)*
**ESTATE** *(2)*
**et** *(1)*
**event** *(1)*
**events** *(1)*
**eventually** *(3)*
**everybody** *(1)*
**evidence** *(5)*
**exact** *(1)*
**EXAMINATION** *(1)*
**examined** *(1)*
**exchange** *(1)*
**explain** *(2)*
**explaining** *(2)*
**external** *(1)*

**< F >**
**fact** *(4)*
**facts** *(1)*
**fair** *(7)*
**family** *(2)*
**far** *(4)*
**FBI** *(1)*

**February** *(7)*
**feel** *(2)*
**felt** *(2)*
**figure** *(1)*
**file** *(1)*
**filled** *(1)*
**fine** *(1)*
**finish** *(1)*
**First** *(7)*
**Five** *(2)*
**Flager** *(1)*
**Floor** *(2)*
**Flynn** *(3)*
**Flynn's** *(1)*
**folks** *(1)*
**following** *(1)*
**follows** *(1)*
**follow-up** *(4)*
**force** *(5)*
**forced** *(1)*
**forcible** *(1)*
**foregoing** *(1)*
**forensic** *(9)*
**forensically** *(2)*
**form** *(7)*
**formal** *(4)*
**formally** *(1)*
**Forty-three** *(1)*
**forward** *(1)*
**found** *(5)*
**four** *(1)*
**Fox** *(1)*
**free** *(1)*
**frequent** *(1)*
**frequents** *(1)*
**Friday** *(1)*
**friendly** *(1)*
**front** *(3)*
**full** *(1)*
**fully** *(1)*
**Furman** *(1)*
**further** *(3)*

**< G >**
**Gary** *(3)*
**generally** *(1)*
**generated** *(3)*
**genesis** *(1)*
**getting** *(1)*

**girl**  *(9)*
**girlfriend**  *(2)*
**girl's**  *(1)*
**give**  *(5)*
**given**  *(1)*
**gives**  *(1)*
**giving**  *(1)*
**glad**  *(1)*
**go**  *(7)*
**goes**  *(4)*
**going**  *(11)*
**Gonzalez**  *(2)*
**Good**  *(2)*
**ground**  *(1)*
**grounds**  *(2)*
**guess**  *(10)*
**guy**  *(3)*

**< H >**
**handed**  *(1)*
**handle**  *(2)*
**handles**  *(1)*
**hangs**  *(1)*
**happen**  *(1)*
**happened**  *(6)*
**head**  *(1)*
**heard**  *(4)*
**held**  *(4)*
**Helen**  *(1)*
**help**  *(1)*
**Hewitt**  *(2)*
**honest**  *(2)*
**Hopefully**  *(1)*
**hours**  *(1)*
**humiliated**  *(1)*

**< I >**
**idea**  *(2)*
**identification**  *(2)*
**identifying**  *(2)*
**illegible**  *(1)*
**immature**  *(1)*
**important**  *(1)*
**incident**  *(18)*
**incidents**  *(3)*
**including**  *(1)*
**indicated**  *(1)*
**individual**  *(2)*
**Individually**  *(1)*

**inelegantly**  *(1)*
**information**  *(7)*
**informed**  *(1)*
**initial**  *(7)*
**initially**  *(2)*
**Instagram**  *(17)*
**instructions**  *(1)*
**interfaced**  *(1)*
**internal**  *(2)*
**interrogation**  *(1)*
**interview**  *(23)*
**interviewed**  *(3)*
**interviewer**  *(2)*
**interviews**  *(6)*
**investigation**  *(34)*
**investigative**  *(1)*
**investigator**  *(3)*
**invoke**  *(1)*
**involved**  *(9)*
**involvement**  *(1)*
**Irish**  *(1)*
**issued**  *(1)*
**issuing**  *(1)*
**its**  *(2)*

**< J >**
**job**  *(1)*
**jobs**  *(1)*
**John**  *(1)*
**Joseph**  *(1)*

**< K >**
**KANE**  *(16)*
**keep**  *(1)*
**keeps**  *(2)*
**kids**  *(5)*
**kind**  *(5)*
**knew**  *(2)*
**knife**  *(3)*
**knifepoint**  *(1)*
**know**  *(33)*
**knowledge**  *(2)*
**knows**  *(2)*

**< L >**
**laboratory**  *(1)*
**large**  *(1)*
**Law**  *(4)*
**learn**  *(1)*

**learned**  *(1)*
**led**  *(5)*
**left**  *(1)*
**legally**  *(1)*
**level**  *(1)*
**LEVIN**  *(17)*
**liberal**  *(1)*
**lieutenant**  *(2)*
**light**  *(1)*
**line**  *(2)*
**listed**  *(1)*
**little**  *(2)*
**live**  *(1)*
**located**  *(1)*
**log**  *(1)*
**long**  *(2)*
**look**  *(3)*
**looking**  *(4)*
**looks**  *(7)*
**lot**  *(5)*
**lower**  *(1)*

**< M >**
**M.'s**  *(9)*
**making**  *(2)*
**manner**  *(1)*
**March**  *(1)*
**mark**  *(1)*
**MARKED**  *(2)*
**material**  *(1)*
**materials**  *(1)*
**matter**  *(2)*
**maturity**  *(1)*
**McKee**  *(1)*
**mean**  *(1)*
**means**  *(1)*
**meet**  *(1)*
**members**  *(1)*
**memorialize**  *(1)*
**mental**  *(1)*
**mentioned**  *(2)*
**messages**  *(2)*
**met**  *(2)*
**MICHAEL**  *(2)*
**michael@flagerlaw.com**  *(1)*
**mid-April**  *(1)*
**MILLER**  *(21)*
**Miller's**  *(2)*

**minor**  *(1)*
**mom**  *(7)*
**mom's**  *(1)*
**month**  *(2)*
**months**  *(3)*
**morning**  *(2)*
**mother**  *(2)*
**moving**  *(2)*

**< N >**
**NAME**  *(8)*
**named**  *(2)*
**narrow**  *(1)*
**nature**  *(3)*
**NEAL**  *(1)*
**near**  *(1)*
**need**  *(3)*
**Neumann**  *(1)*
**never**  *(2)*
**Nicole**  *(2)*
**nine**  *(1)*
**normal**  *(2)*
**normally**  *(2)*
**Northbrook**  *(1)*
**Notary**  *(2)*
**note**  *(1)*
**notes**  *(5)*
**notice**  *(1)*
**notified**  *(1)*
**number**  *(1)*
**numbered**  *(1)*

**< O >**
**Objection**  *(6)*
**obviously**  *(2)*
**occurred**  *(5)*
**offense**  *(1)*
**Office**  *(5)*
**officer**  *(18)*
**officers**  *(6)*
**okay**  *(22)*
**old**  *(1)*
**omitted**  *(2)*
**once**  *(2)*
**one-on-one**  *(2)*
**opinion**  *(1)*
**opportunity**  *(4)*
**Oral**  *(4)*
**outcome**  *(1)*

outside *(1)*
overall *(1)*

**< P >**
package *(1)*
Packet *(7)*
PAGE *(6)*
Pages *(11)*
parents *(1)*
park *(5)*
part *(3)*
particular *(1)*
parties *(1)*
partner *(1)*
parts *(2)*
pattern *(1)*
Paula *(1)*
PC *(1)*
PCA *(8)*
pending *(1)*
PENNSYLVANIA *(6)*
people *(1)*
perfectly *(1)*
perform *(1)*
performed *(1)*
performing *(1)*
period *(2)*
perpetrator *(2)*
perpetrator's *(1)*
person *(2)*
person's *(1)*
pertain *(1)*
pertaining *(2)*
pertains *(1)*
pertinent *(3)*
PHILADELPHIA
*(10)*
phone *(21)*
phones *(3)*
photos *(1)*
picture *(1)*
pictures *(1)*
place *(2)*
placed *(2)*
Plaintiffs *(2)*
please *(2)*
plus *(1)*
point *(3)*
police *(20)*

portion *(1)*
possible *(1)*
possibly *(2)*
Potato *(1)*
potential *(1)*
potentially *(1)*
preliminaries *(2)*
preparation *(1)*
presumption *(1)*
pretty *(1)*
principal *(10)*
principal's *(3)*
printed *(1)*
prior *(8)*
probably *(3)*
problems *(1)*
proceedings *(1)*
produced *(1)*
Professional *(3)*
property *(4)*
prosecution *(1)*
provide *(1)*
Public *(2)*
pull *(1)*
purposes *(1)*
pursuit *(5)*
put *(2)*

**< Q >**
question *(4)*
questions *(6)*
quick *(1)*
quite *(1)*

**< R >**
rank *(2)*
ranks *(1)*
rape *(4)*
raped *(1)*
RCFL *(1)*
real *(1)*
really *(5)*
reason *(1)*
recall *(8)*
receipt *(3)*
received *(1)*
record *(9)*
recorded *(1)*
records *(4)*

recovered *(3)*
refer *(4)*
reference *(6)*
referenced *(2)*
referral *(1)*
referred *(2)*
reflected *(1)*
regarding *(2)*
Regardless *(2)*
Registered *(2)*
regular *(2)*
related *(2)*
relating *(1)*
relationship *(2)*
relative *(2)*
relax *(1)*
released *(1)*
relevant *(4)*
reliable *(1)*
remain *(2)*
remember *(4)*
repeat *(2)*
rephrase *(1)*
report *(9)*
Reporter *(4)*
represent *(1)*
representations *(1)*
representing *(1)*
reproduction *(1)*
requisite *(1)*
responded *(2)*
response *(1)*
results *(3)*
retract *(1)*
review *(1)*
right *(44)*
right-hand *(1)*
ring *(1)*
room *(2)*
rounds *(1)*
rules *(1)*
run *(2)*
RYAN *(31)*
Ryan's *(8)*

**< S >**
sat *(1)*
saw *(5)*
saying *(3)*

says *(4)*
school *(25)*
search *(11)*
second *(1)*
see *(6)*
seeing *(1)*
seen *(2)*
sense *(6)*
sequence *(1)*
setting *(1)*
sex *(4)*
sexual *(7)*
sexually *(1)*
short *(3)*
showed *(1)*
side *(1)*
sign-ons *(1)*
silent *(1)*
SIM *(2)*
simpler *(1)*
sitting *(3)*
six *(1)*
small *(1)*
snippet *(3)*
socializes *(1)*
solely *(1)*
somebody *(6)*
sort *(13)*
sounds *(2)*
source *(1)*
speak *(1)*
speaking *(3)*
Special *(14)*
specifically *(7)*
spend *(1)*
spoke *(1)*
spoken *(1)*
squad *(2)*
stands *(1)*
start *(1)*
started *(3)*
starting *(1)*
stat *(1)*
state *(2)*
stated *(3)*
statement *(3)*
STATES *(2)*
station *(1)*
statute *(3)*

Deposition of Detective Vincent Strain

Neal Miller and Donna Miller v. City of Philadelphia, et al.

statutory *(3)*
stenographic *(1)*
step *(1)*
stopped *(1)*
story *(1)*
straight *(1)*
STRAIN *(5)*
S-T-R-A-I-N *(1)*
Strain-1 *(5)*
Street *(3)*
strike *(1)*
student *(1)*
students *(3)*
studies *(1)*
subject *(3)*
submit *(1)*
submitted *(4)*
substance *(1)*
substantially *(2)*
substantiative *(1)*
Suite *(1)*
summarize *(1)*
summarizes *(1)*
summary *(8)*
supervision *(1)*
supervisor *(1)*
supplemental *(2)*
supported *(1)*
supports *(1)*
sure *(1)*
surfaces *(1)*
suspect *(1)*
sworn *(1)*

< T >
take *(3)*
taken *(8)*
talk *(2)*
talking *(3)*
teachers *(1)*
technically *(1)*
tell *(2)*
telling *(1)*
terms *(7)*
test *(1)*
testified *(1)*
testimony *(1)*
Thank *(3)*
thing *(5)*

things *(2)*
think *(5)*
thinking *(1)*
third *(1)*
thought *(1)*
threat *(1)*
three *(2)*
time *(19)*
title *(1)*
today *(3)*
told *(6)*
total *(2)*
touched *(1)*
tow *(3)*
track *(1)*
transcript *(3)*
transpired *(2)*
Trevose *(1)*
truck *(4)*
Try *(1)*
trying *(1)*
two *(7)*
type *(5)*

< U >
ultimate *(1)*
ultimately *(4)*
uncommon *(1)*
underage *(2)*
underaged *(2)*
understand *(4)*
understanding *(12)*
understood *(1)*
Unit *(21)*
UNITED *(1)*
University *(1)*
unrelated *(1)*
unusual *(2)*
unwanted *(1)*
unwarranted *(1)*
use *(2)*
Username *(1)*
usually *(1)*

< V >
various *(1)*
vendor *(1)*
verbal *(1)*
victim *(6)*

Victim's *(15)*
video *(20)*
video-recorded *(1)*
Viera *(1)*
view *(2)*
viewed *(1)*
VINCENT *(4)*
violated *(2)*
violation *(1)*
voluntarily *(1)*
VS *(1)*

< W >
Wait *(1)*
walking *(2)*
want *(6)*
warrant *(10)*
warrants *(4)*
watch *(1)*
watching *(1)*
way *(3)*
wearing *(1)*
well *(5)*
went *(4)*
we're *(3)*
We've *(3)*
wheel *(1)*
Wilson *(3)*
WITNESS *(8)*
witnesses *(1)*
Wolk *(3)*
work *(4)*
working *(2)*
would've *(4)*
wrong *(2)*

< Y >
Yeah *(15)*
year *(1)*
years *(6)*
Yep *(1)*
young *(2)*
younger *(1)*