**PHILADELPHIA POLICE DEPARTMENT**     **DIRECTIVE 10.2**

| Issued Date: 7-11-22 | Effective Date: 7-11-22 | Updated Date: |
|---|---|---|

**SUBJECT:   USE OF MODERATE/LIMITED FORCE**
**PLEAC 1.3.1, 1.3.4, 1.3.5, 1.3.6(a,b,c), 1.3.7, 1.3.8, 1.5.5, 3.1.21 (e)**

---

**INDEX**

| SECTION | TITLE | PAGE NUMBER |
|---|---|---|
| 1 | Purpose | 1 |
| 2 | Policy | 1 |
| 3 | Definitions | 2 |
| 4 | Use of Force | 3 |
|   | Use of Force Decision Chart | 4 |
| 5 | Utilizing Force (General) | 7 |
| 6 | Use of OC Pepper Spray | 9 |
| 7 | Use of Police Baton/ASP | 12 |
| 8 | Use of Other Less Lethal Force | 14 |
| 9 | Use of Force Notification Procedures | 15 |
| 10 | Use of Force Incidents Resulting in Death Or Serious Bodily Injury | 16 |
| 11 | Distribution of the Use of Force Form | 18 |
| 12 | Assault on Police Investigation Procedures | 18 |



**PHILADELPHIA POLICE DEPARTMENT**      **DIRECTIVE 10.2**

| Issued Date: 7-11-22 | Effective Date: 7-11-22 | Updated Date: |
|---|---|---|

**SUBJECT:   USE OF MODERATE/LIMITED FORCE**
**(PLEAC 1.3.1, 1.3.4, 1.3.5, 1.3.6(a,b,c), 1.3.7, 1.3.8, 1.5.5, 3.1.21e)**

---

## 1.   PURPOSE

A.   This directive outlines the proper use of force, particularly in situations involving the use of the Baton/ASP, Oleoresin Capsicum (OC) Pepper Spray, and other force, which may be used by police, as well as the required reporting of incidents in which officers are called upon to use less than deadly force.  The use of the Conducted Energy Weapon (CEW) is fully covered in Directive 10.3, "Use of Less Lethal Force: The Conducted Energy Weapon (CEW)."  The use of deadly force is fully covered in Directive 10.1 "Use of Force – Involving the Discharge of Firearms."

---

## 2.   POLICY

A.   The primary duty of all police officers is to preserve human life.  Only the amount of force necessary to protect life or to effect an arrest should be used by an officer**.  Excessive force will not be tolerated.**  Officers should exercise all safe and reasonable means of control and containment, using only the minimal amount of force necessary to overcome resistance.  The application of force by a police officer should be guided by principles found in the following "Use of Force Decision Chart," and the provisions of Chapter 5 of the Pennsylvania Crimes Code (18 Pa. C.S.A. §501, *et seq*), state and federal court decisions, and other statutory provisions. (PLEAC 1.3.1)

B.   Personnel will not unnecessarily or unreasonably endanger themselves and others in applying these guidelines to actual situations.

C.   Subjects may be physically or mentally incapable of responding to police commands due to a variety of circumstances including, but not limited to, alcohol or drugs, mental impairment, medical conditions, or language and cultural barriers.  Officers should be mindful of this whenever making use of force decisions.

D.   Officers are prohibited from carrying a Department issued CEW or OC Spray, off-duty as an alternative weapon.

E. Officers will only carry and/or use weapons approved and authorized by the Department.  The types and specifications of **ALL** Department authorized Batons/ASPs, CEWs, OC Spray, and all less lethal weapons are maintained by the Training and Education Services Bureau.

---

## 3.  DEFINITIONS

A. **Objectively Reasonable:**  Is a Fourth Amendment standard whereby an officer's belief that they must protect themselves or others from death or serious bodily injury is compared and weighed against what a reasonable or rational officer would have believed under similar circumstances.  This determination is made by reviewing all relevant facts and circumstances of each particular case, including, but not limited to, (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.

   **NOTE:**  Resisting arrest or flight alone would not justify the use of deadly force. While the U.S. Supreme Court identified three (3) factors that should be evaluated in determining whether an officer's use of force was objectively reasonable, this list was not intended to be all inclusive.  The **TOTALITY OF THE CIRCUMSTANCES** that led an officer to believe force was needed is critical.  Other factors such as, whether an individual is violent, the possibility that the individual is armed, and the number of persons with whom an officer must contend with at the time are all relevant factors to consider. **INDIVIDUAL FACTORS** alone, without additional articulable facts may be insufficient to satisfy the objectively reasonable standard.

B. **Resistance:**  Is an act by an individual that opposes an officer's lawful commands. There are two types of resistance.

   1. **Active Resistance:**  Is defined as the use of physical force to defy an officer's lawful arrest or attempt to gain control of a situation that requires police action.

   2. **Passive Resistance:**  Is defying an officer's lawful order without the use of physical force.  Behaviors may  include not moving, going limp, locking of arms or tightening of the body.

C. **Serious Bodily Injury:** is defined as bodily injury which creates a substantial risk of death, causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

**DIRECTIVE 10.2 - 2**

**4.**   **USE OF FORCE**

A.  **GOAL:**   To always attempt to de-escalate and use sound tactics in any situation where force may become necessary.  In the event force becomes unavoidable, **use only the minimal amount of force necessary to overcome an immediate threat or to effectuate an arrest.**

The amount of force, the continued use of any force, and the type of police equipment utilized, all depends upon the situation being faced by the officer.  However, once the threat has been overcome, or a subject is secured in custody, it is an officer's responsibility to de-escalate and immediately address any injuries the suspect may have sustained. Personnel will be guided by Directive 8.10, "Duty to Intervene to Prevent Police Misconduct, Unethical Behavior, or Mistakes- Active Bystandership for Law Enforcement (ABLE)."

B.  **USE OF FORCE DECISION CHART:**   The following diagram illustrates the amount of force an officer should use based on the suspect's behavior and threat. It is the suspect's behavior that places the officer and/or others in danger.  The suspect's threat is the primary factor in choosing a force option.  However, the officer should also consider the totality of the circumstances to include, but not limited to, a suspect's altered state due to alcohol or drugs, mental impairment, medical conditions, or the proximity of weapons.

**DIRECTIVE 10.2 - 3**

# USE OF FORCE DECISION CHART
## (Including SWAT less lethal)



**DE-ESCALATION**

**DEADLY FORCE**
Officer Options: Firearm

Offender Threat: Objectively reasonable belief that there is an immediate threat of death of serious bodily injury

**LESS LETHAL FORCE**
Officer Options:
Conducted Energy Weapon (CEW), Asp/Baton

Offender Threat: Physically Aggressive or Assaultive behavior with immediate likelihood of injury to the officer or others.

SWAT Only Options: Baton Rounds, Bean Bag Rounds, Bolawrap, FN-303 Launcher, Chemical Agents, Stinger Rounds.

**MODERATE/LIMITED FORCE**
Officer Options: Physical Control Holds, OC Spray

Offender Threat: Resisting and Non-Compliant

**NO FORCE**
(Use of Force Report not required)
Officer Options: Verbal Commands, Officer Presence

Offender Threat: Obedient, Compliant, Non-Aggressive

**ESCALATION**

Use the option that represents the minimal amount of force necessary to reduce the immediate threat.

**DIRECTIVE 10.2 - 4**

C.  The following are examples of how to interpret the Use of Force Decision Chart. These examples are for illustrative purposes and not intended as an exhaustive list.

1.  No force is required or authorized whenever the offender is compliant non-aggressive and responds to verbal commands.  Officers may need to handcuff such offenders but this is not considered use of force.  No use of force report is required under these circumstances.

2.  Moderate/limited use of force may be required whenever the offender is non-compliant and is resisting the officer's commands.  Such behaviors may include pushing or pulling away, locking arms, or tightening of the body.  Force including control holds, and OC Spray is authorized under these circumstances. Verbal aggression by itself does not warrant the use of force.

> **EXCEPTION:**  Whenever protestors/demonstrators that are exercising their Constitutional Rights of Free Speech or Assembly and are non-compliant and passively resisting officer's commands, OC Spray **SHALL NOT BE USED** to overcome the resistance.  Rather, officers will disengage and contact a supervisor.  If necessary, additional officers will be used to overcome the resistance.

3.  The use of the Conducted Energy Weapon (CEW) and/or Baton/ASP is authorized whenever the offender is physically aggressive or assaultive and there is a immediate likelihood that they may injure themselves or others.  Such behaviors may include punching, kicking, grabbing, or approaching with a clenched fist.

> **EXCEPTION:**  Whenever protestors/demonstrators that are exercising their Constitutional Rights of Free Speech or Assembly and are non-compliant and passively resisting officer's commands, the CEW **SHALL NOT BE USED** to overcome the resistance.  Rather, officers will disengage and contact a supervisor.  If necessary, additional officers will be used to overcome the resistance.

4.  Deadly force is authorized whenever the officer has an objectively reasonable belief that they must protect themselves or another person from the immediate threat of death or serious bodily injury.

5.  An officer may address an offender's immediate threat with any option that is equal to or lower than on the Use of Force Decision Chart .  For example, an officer may use their Baton/ASP, OC Spray, or CEW on an offender displaying assaultive behavior with a likelihood of injury to the officer or others.  They may not use a CEW on an offender who is only non-compliant.

> **NOTE**:  The mere handcuffing of a compliant individual is not considered force. A Use of Force Report is **NOT** required under these circumstances.

**DIRECTIVE 10.2 - 5**

D.  RENDERING MEDICAL AID – After employing any force, including lethal or less lethal weapons, officers shall render appropriate medical aid and request further medical assistance, necessary for the suspect and any other injured individuals, as soon as it is safe to do so.  Any aid provided shall be documented in the appropriate report. (PLEAC 1.3.5)

> **NOTE**:  Consistent with Directive 3.14, Hospital Cases (2)(A)(1), "Persons suffering from a serious penetrating wound, (e.g., gunshot, stab wound, and similar injuries of the head, neck, chest, abdomen, and groin) shall be transported to the nearest accredited trauma center.  Transportation of such cases will not be delayed to await the arrival of Fire Department paramedics."

E.  Although many officers may be at the scene of a police incident where force is being used, some officers may not be directly involved in taking police action.  As officers, we have an obligation to protect the public and other officers.  Therefore, it shall be the duty of every officer present at any scene where force is being applied to either stop or attempt to stop another officer whenever force is inappropriately used and/or no longer required.  Your actions will both protect the officer from civil or criminal liability and the civilian from serious injury.

**NOTE**:  Personnel will be guided by Directive 8.10, "Duty to Intervene to Prevent Police Misconduct, Unethical Behavior, or Mistakes- Active Bystandership for Law Enforcement (ABLE)."

F.  Officers who witness inappropriate or excessive force have a duty to intervene and to report such violations to a supervisor and Internal Affairs.

G.  As outlined in Section 9, Use of Force Notification Procedures, Internal Affairs must be informed whenever:

1.  A person is treated at a hospital (whether admitted or not) or dies while in police custody as the result of actions taken by police.

2.  Any time a person in police custody is treated at a hospital (e.g., prisoner complaining of chest pains or a prisoner assaulted by another prisoner).

3.  Any incident involving the use of force where an injury or a complaint of an injury results.

4.  Whenever a Baton/ASP has been used to strike a subject, OC Spray has been used by police, or the CEW has been used, the approximate number of strikes or discharges must be indicated on the Use of Force report.

**NOTE**: Whenever the trigger on the CEW is pulled, it is recorded in the weapon and must be reported to Internal Affairs.  Accidental discharges will be reported to Internal Affairs through the notification screen on the Police Intranet Homepage.  A Use of Force report will not be necessary.

**EXCEPTION:** Whenever a function/spark test is conducted.

5. Whenever a subject is delivered a strike with a hand, fist, foot, or other body appendage or other object.

**NOTE**: Barring exigent circumstances, officers are prohibited from striking a subject to the head or face using a closed fist.

H. The Department's Use of Force report will be completed whenever any Departmental personnel uses physical force upon another person.  Use of force includes, but is not limited to, any instance where a firearm is intentionally pointed at an individual, whenever the Baton/ASP has been used to strike an individual, OC Spray was used on an individual, another object was used to strike an individual, a canine dog has bitten or has been used to physically apprehend an individual, or a CEW has been used. (PLEAC 1.3.6c)

I. Internal Affairs will serve as the Commissioner's designee to review and evaluate all completed Use of Force reports as well as be responsible for all Use of Force Internal Investigations or Complaints Against Police.  Internal Affairs will prepare an investigative report on allegations of improper or excessive Uses of Force. (PLEAC 1.3.6 a, b, c)  These investigations include, but are not limited to:

1. Discharge of a firearm.

2. Any Use of Force that results in, or is alleged to have resulted in, any injury to another person.

3. Physical force, or is alleged to have used physical force, upon another person.

J. Determine if any body-worn camera (BWC) captured an incident involving a moderate level of force.  If so, the BWC shall be taken to the appropriate docking station, uploaded, and stored.

K. Guidelines set forth in this directive will also pertain to Police Correctional Officers (PCO) whenever appropriate and whether PCO's are on-duty at the PDU or elsewhere in the course of their official duties. (PLEAC 3.1.21 e and 1.5.5)

---

## 5.  UTILIZING FORCE (GENERAL)

A. Officers, whenever responding to any incident that may require the use of force, **WILL**:

1.  Evaluate the situation.

2.  Notify a supervisor immediately.

3.  Immediately establish control of their firearm.

4.  Whenever feasible and safe, provide some verbal warning to the individual.

5.  Illuminate the subject, whenever possible.

B.  Officers responding to any incident that may require the use of force, **WILL NOT**:

1.  Except objectively reasonable to prevent serious bodily injury to an officer or member of the public, sit, or kneel on a subject's head, face, neck, chest or back.  If this type of force is necessary, only the minimal amount of force necessary to overcome an immediate threat will be used.

2.  Offensively kick and/or stomp on a subject.

    **NOTE:**  Kicks are authorized for defensive purposes only.

3.  Use prohibited neck restraints (i.e., chokeholds, sleeper holds or hogtying).  This will include any incident where an individual attempts to ingest narcotics or other evidence.  Any subject that ingests evidence will be taken immediately to the nearest hospital. (P.L.E.A.C. 1.3.10 f)

4.  Transport an individual in a face down position, especially whenever handcuffed. This will serve to prevent positional asphyxia that occurs whenever the position of the subject's body interferes with their ability to breathe.  If an individual is having trouble breathing or is demonstrating life-threatening symptoms, medical assistance will be sought immediately.

5.  Barring exigent circumstances, strike a subject to the head or face using a closed fist.

C.  Officers, whenever force is used **WILL**:

1.  Coordinate appropriate tactics with a sufficient number of personnel to safely overcome any resistance.

2.  Use only the minimal amount of force necessary to overcome the resistance.

3.  Except whenever using a CEW, target the preferred or intermediate striking areas identified in Section 7-B-6.

**DIRECTIVE 10.2 - 8**

4.  Handcuff the individual behind the back, palms out, and ensure handcuffs are double-locked, and do so at the earliest possible time to reduce potential resistance.

5.  Ensure that the individual is checked for injuries.

6.  Take any individual who has been struck on the head, complaining of an injury or any case where a CEW or OC Spray was used to the nearest hospital or appropriate trauma center immediately.  Accordingly, an individual who has been placed under arrest and is complaining of an injury, that resulted from police use of force or from other circumstances, will be taken to the nearest hospital.  If the individual refuses treatment, note the name of the hospital and the doctor on the Complaint or Incident report (75-48) and request that the individual sign the 75-48. Note on the 75-48 if the individual refuses to sign.

    a.  An individual, who is **NOT** placed under arrest, but complains of an injury that resulted from police use of force, cannot be forced to receive medical treatment. In these cases, a supervisor will be summoned to the scene and a Complaint or Incident Report (75-48) will be prepared.  The complaining individual will be requested to sign the 75-48, which acknowledges refusal of medical treatment. Note on the 75-48 if the individual refuses to sign.

7.  Prepare a Use of Force report, which will include the description of the actions of the individual which caused the use of force, as well as the actions taken by the officer.  Officers may review footage from only their BWC prior to completing the Use of Force Report if no serious bodily injury or death is likely to occur.

8.  Prepare any other necessary paperwork relating to the incident, as required by Department policy. (PLEAC 1.3.6c)

9.  Ensure the investigator assigned is aware that force was used and whether a BWC or other footage is available.

    **NOTE**:  A description of the actions of the individual that caused the use of force, as well as the officer's actions, should be included by the assigned investigator within the Case Report.  Should injuries occur, they should also be described within the Case Report to include treatment received.

_____

## 6.   USE OF OC PEPPER SPRAY

A.  Oleoresin Capsicum (OC) Spray is an inflammatory agent that causes an intense burning sensation of the skin and mucous membranes.  It has a near immediate effect on an individual sprayed.  The effects subside after about thirty (30) minutes.

B.  If sprayed in the face, the individual's eyes will close, tear, and swell as a result. The subject may become disoriented and lose their balance.  Whenever inhaled, the respiratory tract will become inflamed and temporarily restrict breathing to short, shallow breaths. The subject may experience choking, gagging, or gasping for breath. A burning sensation of the skin may also occur.

C.  The use of OC Spray is for defense or to assist in effecting an arrest.  It may be used to:

    1.  Control an aggressively resisting subject (i.e., an involuntary commitment).

    2.  Prevent an escape from arrest.

    3.  Overcome resistance to an arrest.

    4.  Protect an officer or another person from bodily injury.

    5.  Prevent an individual from injuring themselves.

    6.  Prevent a suicide.

D.  The use of OC Spray is **not** to be used:

    1.  For the dispersal of non-violent persons.

    2.  For disorderly crowds.

    3.  In situations where people are peacefully exercising their Constitutional Rights of free speech or assembly.

    4.  At random.

    5.  As a threat to gain compliance or information.

E.  Once an individual has been placed under control, there is no further justification for the continued use of the OC Spray.

F.  Uniformed officers <u>will only carry</u> departmentally-issued OC Spray on their belt at all times while on duty.

G.  Whenever utilizing OC Spray, officers **<u>WILL</u>**:

    1.  Ensure care is taken to protect infants, children, and the elderly from exposure to the OC Spray.

    2.  Deliver the spray directly into the face (eyes, nose, mouth) and whenever practical, whenever in the range of 10-12 feet*,* in two, one-half second bursts.

**DIRECTIVE 10.2 - 10**

3. Be aware of cross-contamination, wind direction, and the presence of fellow officers before utilizing spray.

4. Safely secure the individual in handcuffs once under control.

5. Calm the individual and reassure them that the effects are temporary.

6. Expose the subject to fresh air and, if water is available, flush the contaminated areas.

   **NOTE**:  Whenever indoors, ventilate the area by opening windows and doors to disperse the OC Contaminant.

7. Immediately notify a supervisor of the use of the OC spray.

8. Transport the subject to the nearest hospital and take the spray canister along.

9. Continue to monitor the subject during transportation for respiratory distress.

10. If the subject is or becomes unconscious, transport as an emergency hospital case.

11. Have the subject wash any contaminated areas of the skin with soap and water once arriving at the hospital.

12. Whenever applicable, have the subject remove their contact lenses and wash the effected area.

    **NOTE**:  Serious eye damage can occur if contacts are not removed within 4 - 6 hours of exposure.

13. Prepare a 75-48 for the hospital case.  If the individual refuses treatment, note the name of the hospital and the doctor on the Complaint or Incident Report (75-48) and request that the individual sign the 75-48. Note on the 75-48 if the individual refuses to sign.

14. Prepare a Use of Force Report, which will include the description of the actions of the individual which caused the use of force, as well as the actions taken by the officer.

15. Prepare any other necessary paperwork relating to the incident, where necessary (i.e., 75-48).

16. Treat OC Spray as a weapon and store in a secure place when not on duty.

H. Officers, whenever utilizing OC Spray **WILL NOT**:

1. Spray directly into the eyes at a distance of less than three (3) feet, when possible.

**DIRECTIVE 10.2 - 11**

    2.   Spray into the wind or in a confined area.

    3.   Keep spray projectors in vehicles.

    4.   Store where temperatures exceed 120 degrees Fahrenheit.

I.   Miscellaneous OC Spray information:

    1.   All OC Spray will be issued by the Firearms Training Unit (FTU).

    2.   Officers should check the expiration date on each canister.  If expired, or there is a leak, damage, or the canister is empty, report to the Firearms Training Unit (FTU) for a replacement.  A memorandum will be prepared and distributed as outlined in Section 4 below.

    3.   Lost or stolen spray canisters shall be immediately reported on memorandum in triplicate to the pertinent district/unit Commanding Officer, fully explaining the circumstances.  A 75-48 and the Case Report will be submitted to the pertinent detective division.

    4.   The memorandum will be distributed as follows:

        a.   Commanding Officer, Firearms Training Unit
        b.   District/Unit file
        c.   Finance Unit

    5.   Whenever the Commanding Officer determines negligence has occurred, the officer will be subject to disciplinary action and/or required to pay for its replacement.

    6.   Commanding Officers will review and approve the memorandum and permit the officer to obtain a replacement.

    7.   Upon an officer's retirement, OC Spray canisters will be turned in to the officer's Commanding Officer and forwarded to the FTU.

---

## 7.   USE OF THE POLICE BATON/ASP

A.   The use of the Baton/ASP is for defense and to assist in effecting an arrest. It should **<u>NOT</u>** be used as an offensive weapon. It may be needed to:

    1.   Block or deflect an attack.

    2.   Counter-strike in self-defense.

    3.   Control an aggressively resisting subject.

4.   Overcome physically aggressive or assaultive behavior to effect an arrest.

5.   Protect an officer or another person from bodily injury.

6.   Prevent an individual from injuring themselves.

7.   Prevent a suicide.

B.  Whenever carrying or utilizing the Baton/ASP officers **WILL**:

1.   Carry a Baton meeting departmental specifications, which shall have an overall length of 22-24 inches and a diameter of one and one-quarter inches (1¼"), made of wood or fiberglass or carry a department-issued ASP.

2.   Carry the Baton/ASP whenever leaving the vehicle (uniformed officers and supervisors).

3.   Carry the Baton/ASP in your belt loop/holder on the opposite side of the gun holster.

4.   Carry the Baton/ASP in a non-aggressive (e.g., under arm) manner during vehicle or pedestrian stops, disturbances, crowds, or other potentially dangerous situations.

5.   Attempt to use alternate forms of control.

6.   Strike only the following locations of the body, whenever necessary.

   a.   Preferred striking areas:

      1)   Muscle in the legs (thigh and calf) and arms (forearms and biceps).  These areas are most vulnerable to an effective strike.

   b.   Intermediate striking areas:

      1)   If striking the preferred areas is not possible, unsafe to the officer or other officers, the officer should attempt to strike the intermediate areas which include the elbows, knees, and ankles.  These are secondary strike zones which may cause pain or injury, but are not intended to cause permanent damage.

7.   Immediately notify a supervisor of the use of the Baton/ASP.

**DIRECTIVE 10.2 - 13**

8. Take an injured individual or one complaining of an injury to the nearest hospital or appropriate trauma center immediately.  If the individual refuses treatment, note the name of the hospital and the doctor on the Complaint or Incident Report (75-48) and request that the individual sign the 75-48.  Note on the 75-48 if the individual refuses to sign.

9. Prepare a Use of Force Report in all cases where the Baton/ASP was used to strike an individual.

   **NOTE**:    Whenever preparing a Use of Force Report after utilizing the Baton/ASP, officers will include the approximate number of strikes and the location on the body where the individual was struck.  Also, officers will include an explanation when an individual is struck in an intermediate area or unintentionally in the head, face, throat, chest, abdomen, groin and collarbone.

10. Prepare all other necessary paperwork relating to the incident, whenever necessary (i.e., 75-48).

C. Officers, whenever carrying or utilizing the Baton/ASP **WILL NOT**:

1. Make modifications of or additions to the Baton/ASP.

2. Intentionally strike the head, face, throat, chest, abdomen, groin, spine, and collarbone of an individual.

3. Use more force than is necessary to overcome the resistance.

4. Use another object in place of the Baton/ASP, unless unusual circumstances preclude the officer from reaching or using the Baton/ASP or OC Spray. If another object is used, the involved officer will follow the same reporting procedures outlined in this directive and explain why the object was utilized. The use of other objects may be reasonable and necessary.

D. Lost or Stolen Baton/ASP Reporting Procedures:

1. Damaged, lost, or stolen Baton/ASPs shall be immediately reported on memorandum in triplicate to the pertinent district/unit Commanding Officer, fully explaining the circumstances.

2. Whenever the Commanding Officer determines negligence has occurred, the officer will be subject to disciplinary action and/or required to pay for its replacement.

3. The memorandum will be distributed as follows:

   a. Pertinent Deputy Commissioner
   b. Finance Unit

**DIRECTIVE 10.2 - 14**

     c.   Retain in district/unit file

## 8.   USE OF OTHER LESS LETHAL FORCE (PLEAC 1.3.4, 1.3.8)

A.  SWAT personnel are trained and authorized in using other Less Lethal Force such as:

    1.  Beanbag Rounds

    2.  Flashbangs

    3.  37 mm Foam Rubber Baton Rounds

    4.  37 mm Chemical Agents

    5.  Larger OC Dispersion Devices

    6.  Hand Deployed Chemical Agents (OC)

B.  SWAT personnel will be guided by the policy outlined in this directive and their Unit SOPs.

## 9.   USE OF FORCE NOTIFICATION PROCEDURE

A.  Whenever less lethal force is used by sworn personnel, the following notification process will be implemented:

    1.  Officers using force will immediately notify Police Radio over air with their badge number and location and a supervisor will be requested to respond to the location of occurrence.

    2.  The supervisor will ensure that only one (1) 75-48 will be prepared describing the circumstances of the incident, as well as information on the use of force required during that incident.  If more than one (1) officer has utilized force during that single incident only one (1) 75-48 is required, though the names of all involved officers must be included.

        a.  The on-scene supervisor will ensure that the Complaint or Incident Report (75-48) will be submitted to the Operations Room Supervisor (ORS), so the Use of Force Notification Message can be sent to Internal Affairs.

        b.  The Use of Force Notification Message (submitted through the Intranet Homepage) must be completed by the ORS before the involved officer(s) completes their tour of duty.

**DIRECTIVE 10.2 - 15**

3. The supervisor will assign one of the involved officers the responsibility for preparing a complete Use of Force Report (75-623).  If more than one officer has used force, they will only complete sections of an additional Use of Force Report that pertain to their involvement in the incident, the top line of the report, and the signature block.  The officer may review their BWC footage prior to completing their Use of Force Report if no serious bodily injury or death is likely to occur.

   **NOTE**:  All reports must be completed before the officer(s) completes their tour of duty.

4. Both the assigned Lieutenant and the Sergeant will be responsible for reviewing and ensuring completeness and accuracy of the Use of Force Report.  They will also sign the form.

5. Whenever the use of force results in death or serious life threatening injury, the on-scene supervisor will immediately notify Police Radio, their Commanding Officer or Command Inspections Bureau (CIB) commander.  Police Radio will make all normal duty hour and non-duty hour, holiday notifications according to their SOP's.

   a. Whenever the use of force results in only minor injury or no injury at all, only the Internal Affairs Notification screen needs to be completed.  No phone call to Internal Affairs from a Commander is necessary.

      **NOTE**:  If more than one officer is injured or if more than one defendant has had force used against them as a result of a single incident, separate messages must be sent via the Internal Affairs Notification screen.

6. In all cases, the ORS will ensure pertinent information is entered on the district/unit Sending and Receiving Sheet (S&R).

---

## 10.  USE OF FORCE INCIDENTS RESULTING IN DEATH OR SERIOUS BODILY INJURY (PLEAC 1.3.7)

A. First officer on the scene will be responsible for the following:

1. Immediately notify Police Radio of the occurrence and provide pertinent information.  Request Fire Rescue and a Patrol Supervisor to respond.

2. Render First Aid.

3. Ensure the provisions of Directive 4.1, "Responsibilities at Crime Scenes" are followed.

**DIRECTIVE 10.2 - 16**

    4. Inform the first Supervisor on the scene of the location(s) of the crime scenes and the general circumstances relative to the preservation and collection of physical evidence. State whether they were wearing a body-worn camera (BWC), if so, was it activated during the incident.

B. First Supervisor on the scene will be responsible for the following:

    1. Ensure that Police Radio has been notified of the incident.

    2. Ensure that the provisions of <u>Directive 4.1, "Responsibilities at Crime Scenes"</u> are carried out and protect and secure the crime scene.

    3. Ensure the detainee is transported to the hospital in accordance with <u>Directive 4.13, "Detainees in Hospitals."</u>

    4. Determine if any officer at the scene had a BWC and whether it was activated during the incident.

        a. Collect all BWCs with video of the incident.

        b. Ensure the videos are captured and stored as evidence.

        c. Following an officer involved shooting, a police discharge, an in-custody death, or a use of force incident likely to result in serious bodily injury or death, **officers shall be prohibited from viewing their BWC footage prior to providing a formal statement to the assigned Internal Affairs Division Investigator**. After providing a formal statement, officers will be permitted to review their BWC footage and provide any supplemental statement to the assigned Internal Affairs Investigator, if they desire.

    5. Ensure information concerning the location(s) of the crime scene(s) and the general circumstances relative to the preservation and collection of physical evidence is provided by the involved officer(s) and disseminated to the assigned investigator by remaining at the scene until the arrival of divisional detective(s) for incidents resulting in injury or Homicide detectives for incidents resulting in death.

        a. Ensure any equipment used in a Use of Force incident is seized by the responding Supervisor at the scene.

    6. Ensure the <u>'Use of Force Notification Procedure"</u> in Section 9 above is followed.

C. The involved officer's Commanding Officer or Command Inspections Bureau Commander **WILL**:

    1. Ensure the Commanding Officer, Internal Affairs is immediately notified.

**DIRECTIVE 10.2 - 17**

2.  Contact the Police Department's Employee Assistance Program (EAP) within five (5) business days in order to arrange confidential counseling, whenever an officer has used force which results in death or serious bodily injury (This will be the responsibility of the involved officer's Commanding Officer).

3.  Determine if any BWC was activated and if so, ensure the video is captured and stored as evidence.

D.  Chief Inspector, Office of Professional Responsibility (OPR) **WILL**:

1.  Determine the assignment status of involved personnel, including the removal from street duty. (PLEAC 1.3.7.)

2.  Return an officer to active street duty as soon as possible after the officer has attended their scheduled visit with the Employee Assistance Program (EAP); has completed the required training at the Range (if applicable); and based on the recommendation of the Internal Affairs investigating officer.

3.  Officers must be approved for return to active street duty by either the Police Commissioner or the First Deputy Commissioner.

---

## 11.  DISTRIBUTION OF THE USE OF FORCE FORM

A.  Whenever the Use of Force Report(s) (75-623) is completed, copies will be made and distributed as follows:

Original:        Internal Affairs within ten (10) days of the incident, where it will be reviewed and kept for three (3) years.

First copy:      District/Unit Commanding Officer's file, where it will be kept for three (3) years.

Second copy:   Commanding Officer, Firearms Training Unit (CEW use only).

---

## 12.  ASSAULT ON POLICE INVESTIGATION PROCEDURES

A.  In order to ensure the integrity of Assault on Police arrests and to protect all police personnel, the below guidelines will be followed.  Listed below are investigation guidelines and Command oversight for **ALL** Assault on Police Investigations.  They will be in place whether the Assault on Police is the **Primary or Secondary** charge.

B.  Supervisor's Responsibilities:

1.  A supervisor **WILL** immediately **respond to all Assault on Police/Use of Force Crime Scenes** (whether it is the primary or secondary charge).

a. As stated in previous investigation guidelines, the responding supervisor will hold or release the crime scene after conferring with a Supervisor from the pertinent investigative unit.

b. The supervisor will document all Police involved in the assault and/or arrest and supply the names, badge numbers and patrol car numbers to the Detective Division.  The Supervisor will also ensure that all personnel are interviewed by the Detective Division of occurrence.

c. The supervisor will notify the ORS whenever force has been used by an officer to ensure that the Use of Force Notification Message is sent to Internal Affairs before the end of the involved officer's tour of duty.

d. The supervisor will ensure that all civilian witnesses are documented on the Complaint or Incident Report (75-48) (include all contact information, cell phone numbers, etc.) and will be supplied to the Detective Division. Transportation to the Detective Division (for interviews) will also be arranged as needed.

e. The supervisor will observe, document and supply the information to the Detective Division for all injuries to Police and/or defendants and ensure that they receive hospital treatment.

f. Any body-worn camera (BWC) that captures a Use of Force incident, will be recovered and taken back to the district to be uploaded and stored as evidence.

g. The supervisor will ensure that all Use of Force paperwork is prepared and submitted in accordance with this Directive.

C.  ORS Responsibilities:

1. The ORS will send the Use of Force Notification Message to Internal Affairs before the end of the involved officer's tour of duty whenever force was used by the officer to overcome an immediate threat or to effect an arrest.

D.  Detective Unit Supervisor's Responsibilities:

1. A Detective Unit Supervisor **WILL** be notified immediately whenever an Assault on Police (Use of Force) arrest or investigation is received (whether it is the primary or secondary charge).  The Supervisor **WILL**:

a. Confer with the responding Supervisor on the street and determine if the crime scene will be held for processing.

b. Monitor the investigation, ensuring that all parties (Police and Civilian) are interviewed by Detectives.  Review the interviews and ensure that any follow-up questions are addressed.

**DIRECTIVE 10.2 - 19**

    c.   Ensure that all injuries (Police and Civilian) are documented and photographed.

    d.   Ensure any BWC or other video footage is properly viewed, uploaded, stored and documented.

    e.   Ensure that all interviews and evidence (photographs, property receipts, etc.) are entered in the PremierOne Records Management System (P1RMS) system (as stated in previous guidelines, ALL Preliminary Discovery is required to be entered in the P1RMS on any arrest before charges are approved by the District Attorney's Charging Unit (DACU)).

2.   **BEFORE** the arrest is entered in PARS, the Detective Supervisor **WILL** notify the Detective Division Commanding Officer (during business hours) so that they can review all paperwork involving the arrest.  The Detective Division Commanding Officer will also review all paperwork on an investigation of an Assault on Police (no arrest) **PRIOR** to the Detective submitting an Affidavit for an Arrest Warrant.

3.   If the arrest occurred during <u>non-business hours</u>, the Detective Supervisor **WILL** notify Police Radio for a Command Inspections Bureau Commander to respond and review the arrest paperwork (**PRIOR** to entry in PARS).

4.   If during business hours, the <u>Detective Division Commanding Officer is unavailable</u> (vacation, etc.), then the Detective Division Supervisor will notify the following in the listed order:

    a.   The Divisional Inspector.

    b.   The available Patrol Commanding Officer located in the Divisional Headquarters (in the same building as the Detective Division).

    c.   A District Commanding Officer in the Division of occurrence (NOT located in the Divisional Headquarters).

5.   The Detective Supervisor WILL confer with the responding Commander on the aspects of the case.  DACU will be contacted by phone if guidance is needed in the charging procedure.

6.   The Detective Supervisor will then ensure that the PARS report is submitted (and approved by the Supervisor) with the proper charges lodged.  The Supervisor will ensure that any requested follow-up by DACU is completed immediately and re-submitted for the approval of the PARS.

E.  The Assigned Detective **WILL**:

1.   Ensure their Supervisor has been notified of the Assault on Police arrest or investigation (primary or secondary charge).

**DIRECTIVE 10.2 - 20**

2. Ensure all investigative steps have been taken, including (but not limited to), crime scene processing, retrieval of available video, CCI information and/or radio tapes, etc.

3. Document and photograph all injuries (Police and Defendants).

4. Ensure all persons (Police and Civilian) involved are interviewed.  Make interviews available to Supervisory and Command personnel for their review.

5. Attempt to interview the defendant(s) (after advising their Miranda Warnings).

6. Ensure the complete investigative package is available for review by the Supervisor and Command personnel and entered into the P1RMS.

7. Ensure PARS is submitted **ONLY AFTER** the case has been approved by the Unit Supervisor and the reviewing Commander.

F.  Responding Commanding Officer Responsibilities:

1. Upon notification of an Assault on Police arrest, the assigned Commander (Detective Captain, Divisional Inspector, District Captain or CIB Commander) **WILL**:

   a.  Review all arrest and Case Report paperwork (including interviews).

   b.  Confer with the Detective Supervisor (and DACU if needed) for proper charges.  If **NO** charges are warranted, ensure the suspect(s) are released and the investigative paperwork is updated.

   c.  The responding Commanding Officer **WILL** ensure that an entry is made on the Detective Division Daily S&R, listing the rank, name, badge number, and assignment of officer(s) involved and review the Assault on Police arrest (list location of assault, DC# and Detective Control#).

   d.  Ensure that the required Use of Force Reports are completed, submitted and Internal Affairs is notified, whenever required.

---

| **RELATED PROCEDURES:** | Directive 10.1, | Discharge of Firearms by Police Personnel |
| | Directive 3.14, | Hospital Cases |
| | Directive 4.13, | Detainees in Hospitals |
| | | |
| | Directive 12.14, | Injuries on Duty & Other Service Connected Disabilities |
| | Directive 10.1, | Use of Force – Involving the Discharge of Firearms |
| | Directive 10.7, | Barricaded Persons/Hostage Situations |

**DIRECTIVE 10.2 - 21**

| Directive 10.9, | Severely Mentally Disabled Persons |
| Directive 10.10, | Off-Duty Police Actions |
| Directive 4.10, | Foot Pursuits |
| Directive 6.15, | Employee Assistance Program (EAP) |
| Directive 7.16, | Department Directives Program |
| Directive 10.3, | Use of Less Lethal Force: The Conducted Energy Weapon (CEW) |
| Directive 10.4, | Use of Force Review Board (UFRB) |

---

## BY COMMAND OF THE POLICE COMMISSIONER

---

**PLEAC** – Conforms to the standards according to the Pennsylvania Law Enforcement Accreditation Commission.

---

**DIRECTIVE 10.2 - 22**