CIVIL ACTION NO. 19-1579
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# Clark v. Merrell

Decided Jan 28, 2021

CIVIL ACTION NO. 19-1579

01-28-2021

LYESHA CLARK, ET AL. v. DWAYNE MERRELL, ET AL.

SURRICK, J.

**MEMORANDUM** SURRICK, J.

In this civil rights action, a minor child and her niece sustained significant injuries after being struck by a dirt bike being pursued in an unauthorized high-speed police chase. On the morning of the accident, Defendant Police Officer Dwayne Merrell, while working a special detail to confiscate dirt bikes and ATVs, was specifically ordered by his supervisors not to pursue dirt bike riders. Despite this clear prohibition, Officer Merrell engaged in an unauthorized high-speed chase of a dirt-bike rider. The chase resulted in an accident that injured innocent victims—Plaintiffs Lillie Mae Strubbs and minor Z.C. Plaintiffs bring a claim under 42 U.S.C. § 1983 against Officer Merrell, alleging that the high-speed pursuit created a state-created danger and violated their substantive due process rights under the Fourteenth Amendment. Officer Merrell now seeks dismissal of the Amended Complaint. (ECF No. 11.) The narrow issue before us is whether, at this early stage of the litigation, qualified immunity shields Officer Merrell from liability. We conclude that it does not.

## I. BACKGROUND

2   On April 15, 2017, Dwayne Merrell, a Philadelphia Police Officer, was on duty and assigned to a special detail to confiscate dirt bike and All-Terrain Vehicles ("ATVs") operated *2 on Philadelphia streets.[1] (Am. Compl. ¶¶ 11-12.)[2] At roll call, Officer Merrell's supervisors, Lt. Ruff and Lt. Frisco, instructed all members of the special detail to not pursue ATVs or dirt bike riders, or any vehicle unless they witnessed a violent felony. (Id. ¶¶ 13, 15.) Members of the special detail were provided copies of Philadelphia Police Directive 9.4, which strictly prohibits initiating a vehicular or ATV pursuit solely for traffic violations, and it advises that a police pursuit may not continue outside of the boundaries of Philadelphia without permission by a higher-ranking supervisor. (Id. ¶¶ 14, 16-17; Directive 9.4 at 1-4, Am. Compl. Ex. B.)

[1] At the time, Officer Merrell had worked as a Philadelphia Police Officer for twenty years. (Report 1, Am. Compl. Ex. A, ECF No. 10.) For the last eight years, he had been assigned to the 16th District. (Id.)

[2] When considering a motion to dismiss, the Court must accept as true all factual allegations in plaintiffs' complaint and construe the facts alleged in the light most favorable to the plaintiffs. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The Court "consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v.*



*Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Plaintiffs attached the following two exhibits to the Amended Complaint: the Internal Affairs Division Investigation Report ("Report") (Exhibit A); and Philadelphia Police Department Directive 9.4 ("Directive 9.4") (Exhibit B).

At about 1:05 p.m., Lt. Frisco spotted a green and white motorcycle and called for units to respond to it. (Report 18, Am. Compl. Ex. A, ECF No. 10.) Several minutes later, Officer Merrell observed Douglass operating a green and white motorcycle on Philadelphia streets.[3] (Am. Compl. ¶¶ 18-19.) Officer Merrell activated the lights and sirens on his marked police motorcycle and initiated a vehicle stop of Douglass. (*Id*. ¶¶ 12, 19.) Douglass did not stop. (*Id*. ¶ 20.)

> [3] A motorcycle is considered a type of dirt bike. (*See* Report 3, 8, 11-12.)

Douglass, followed by Officer Merrell, engaged in an eight-to-ten-minute high-speed chase, at times reaching 60 miles per hour. (*Id*. ¶¶ 23-24.) At about 1:20 p.m., Officer Merrell *3 began broadcasting his changing location. (Report 2-3, 19.) Three minutes later, over police radio, Lt. Frisco instructed Officer Merrell both to not pursue Douglass and "[l]et's try to get a last location and try to box him in."[4] (Am. Compl. ¶ 30, 54; Report 2-3.) Officer Merrell continued to pursue Douglass and broadcast his location. (Am. Compl. ¶ 31; Report 3.)

> [4] Boxing in is a technique for stopping a fleeing vehicle by surrounding the fleeing vehicle with police vehicles. (Report 18.) This technique is prohibited by Directive 9.4. (Directive 9.4 at 5; Report 18.) The Internal Affairs Division sustained a violation against Lt. Frisco for failing to recognize Officer Merrell's pursuit and for failing to correct or clarify the "box him in" recommendation. (Report 18.)

During the high-speed chase, Douglass, followed by Officer Merrell, drove through Southwest Philadelphia and crossed city lines into Upper Darby, Pennsylvania. (Am. Compl. ¶¶ 22, 24.) Some of these areas were densely populated, and there were a lot of pedestrians and vehicles. (*Id*. ¶¶ 22, 34.) Officer Merrell did not have permission from a higher-ranking supervisor to continue the pursuit outside of the boundaries of Philadelphia into Upper Darby. (*Id*. ¶ 25.) Officer Merrell did not notify his supervisors that he had crossed into Upper Darby and he stopped broadcasting his location. (*Id*. ¶¶ 25, 35.)

Meanwhile in Upper Darby, at 1:27 p.m., Lillie Mae Stubbs and her minor niece, Z.C., were crossing 69th Street in a clearly marked pedestrian crosswalk near the 69th Street Transportation Center. *(Id*. ¶ 26.) While travelling northbound on 69th Street, Douglass struck Stubbs and Z.C. (*Id*. ¶ 27.) Stubbs and Z.C. were thrown about forty-two feet, lost consciousness, and sustained serious injuries. (*Id*.) Stubbs was taken to Penn Presbyterian Hospital with head and extremity injuries, and Z.C. was taken to Children's Hospital of Philadelphia with head, neck, and extremity injuries. (*Id*. ¶ 57.) Stubbs and Z.C. underwent extensive treatment and continue to suffer from these injuries. (*Id*.) *4

Approximately 26 seconds after the collision, Officer Merrell travelled through the pedestrian crosswalk, and past Stubbs and Z.C. (Am. Compl. ¶¶ 36, 37.) He did not stop and render aid or secure the scene of the accident, nor did he notify emergency services or Upper Darby Police of the injured persons, as directed by Philadelphia Police Directive 4.1. (Am. Compl. ¶¶ 38-39; Report 16.)

Officer Merrell never notified his supervisors, police radio, or Upper Darby police about his pursuit of Douglass or Douglass's collision with Stubbs and Z.C. (*Id*.)

Upper Darby police contacted Lt. Ruff and Lt. Frisco about the pursuit and the injuries sustained by Stubbs and Z.C. (*Id*. ¶ 44.) Lt. Ruff and Lt.

Frisco each confronted Officer Merrell. (*Id.*) At first, Officer Merrell denied the pursuit of Douglass and he denied having seen Douglass's collision with Stubbs and Z.C. (*Id.*) Then, Officer Merrell admitted to the pursuit of Douglass on the green and white motorcycle, and he completed Philadelphia Police and Pennsylvania State Police pursuit memoranda. (*Id.* ¶ 47.) However, Officer Merrell stated in the memoranda that the pursuit only lasted for eight city blocks and two minutes, and he did not mention the collision. (*Id.*) Later, Officer Merrell explained that he did not previously report it accurately because "he was fearful of getting into trouble." (*Id.* ¶ 48.)

An Internal Affairs Bureau investigation concluded that: (1) Officer Merrell was in violation of Directive 9.4; (2) Officer Merrell had falsified official documents; (3) Officer Merrell had committed insubordination; (4) Officer Merrell was in violation of Directive 4.1; and (5) Officer Merrell had provided false statements to a supervisor. (Am. Compl. ¶ 51; Report 15-21.)

Plaintiffs filed an Amended Complaint, asserting a claim under 42 U.S.C. § 1983 against Officer Merrell. Specifically, Plaintiffs allege that by engaging in an unjustified and dangerous *5 high-speed chase, Officer Merrell violated Plaintiffs' Constitutional rights—specifically the Fourteenth Amendment—by creating a state-created danger. Plaintiffs also assert a *Monell* claim against the City of Philadelphia. Plaintiffs' claim against the City is not at issue in this Motion.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler*, 578 F.3d at 211. Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements. . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). *6

## III. DISCUSSION

Plaintiffs allege that, pursuant to Section 1983, Officer Merrell violated their substantive due process rights guaranteed by the Fourteenth Amendment. The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Specifically, Plaintiffs allege that by engaging in an unjustified and reckless high-speed chase that was in violation of police directive, Officer Merrell's conduct evinced a state-created danger that caused Plaintiffs' injuries.

Officer Merrell argues that the Section 1983 claim against him should be dismissed because he is entitled to qualified immunity. Qualified immunity protects government officials from civil damages for conduct that "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). When assessing a claim for qualified immunity, we must answer two questions: "One is whether the defendant's conduct violated a statutory or constitutional right. The other is whether the right at issue was clearly established when the conduct took place. We have discretion to address either inquiry first." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018) (citing *Pearson*, 555 U.S. at 236). First, we address whether Officer Merrell had fair warning that he could be subject to constitutional liability for his pursuit of Douglass. We then address whether the Amended Complaint pleads a plausible Section 1983 claim against Officer Merrell.

**A. Plaintiffs' Constitutional Rights Were Clearly Established**

We begin by assessing whether Officer Merrell had fair warning that he could be subject to constitutional liability for his pursuit of Douglass. In other words, we must determine whether *7 at the time of the accident, Officer Merrell had been put on notice that his actions violated constitution rights.

"For a constitutional right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.*, 971 F.3d 416, 426 (3d Cir. 2020) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Courts must determine "if the case law at the time of the violation would have put the official on 'fair notice' that his conduct violated the plaintiff's rights.'" *Id*. (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "In other words, the 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To determine whether a right is clearly established, we first look to applicable Supreme Court precedent. If none exists, then "it may be possible that a 'robust consensus of cases of persuasive authority' in the Courts of Appeals could clearly establish a right for purposes of qualified immunity." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247-48 (3d Cir. 2016) (citation omitted).

On April 15, 2017, the date of the accident, a police officer in the Third Circuit would have understood that he could be subjected to constitutional liability for a police pursuit if he acted with <u>an intent to cause harm</u>. Supreme Court precedent dictates this notice. In 1998, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by action under § 1983." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). A year later, the Third Circuit similarly held that "[t]he critical factor in determining whether Fourteenth Amendment liability for a high-speed chase may be imposed is whether the officer's *8 conduct can be found to *shock the conscience*, for which the evidence must show *intent to harm* the suspect physically." *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999) (emphasis added).

In light of *Lewis* and *Davis*, the standard of constitutional liability at the time of Officer Merrell's unauthorized pursuit was whether police officer actions during a high-speed chase shock the conscience and evince an intent to cause harm.[5] *See Wilson v. Doe*, No. 19-5015, 2020 U.S. Dist. LEXIS 62202, at *16 (E.D. Pa. Apr. 8, 2020) ("In light of [*Lewis* and *Davis*], the Court notes that at the time of the police pursuit in this matter [on October 25, 2017], the state of the law was such that police officers may have understood they could be exposed to constitutional liability for actions taken during a police pursuit *only when they had an intent to harm*.") (emphasis added).

casetext
Part of Thomson Reuters

5 Acknowledging the high bar created by the intent-to-harm standard of liability, in October of 2018, the Third Circuit lowered the degree of culpability required to assert a police pursuit state-created danger claim. In *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 723 (3d Cir. 2018), the Third Circuit concluded:

> Police officers now have fair warning that their conduct when engaged in a high-speed pursuit will be subject to the full body of our state-created danger case law. That law clearly establishes that the level of culpability required to shock the conscience exists on a spectrum tied to the amount of time a government official has to act. . . . [W]hen there is no compelling justification for an officer to engage in a high-speed pursuit and an officer has time to consider whether to engage in such inherently risky behavior, constitutional liability can arise when the officer proceeds to operate his vehicle in a manner that demonstrates a conscious disregard of a great risk of serious harm.

*Sauers* was decided more than a year after Officer Merrell's unauthorized pursuit. Therefore, the conscious disregard standard does not apply here. Plaintiffs do not attempt to argue that it does.

**B. Plaintiffs' Amended Complaint Pleads a Plausible State-created Danger Claim against Officer Merrell**

Next, we address whether the Amended Complaint pleads a plausible Section 1983 claim against Officer Merrell. The parties' dispute centers on whether the factual allegations support

*9 an inference that Officer Merrell acted with an intent to harm when he pursued Douglass. Again, a purpose to cause harm in a police pursuit context is shown when a police officer "[intended] to harm suspects physically or to worsen their legal plight." *Lewis*, 523 U.S. at 854. The facts alleged in the Amended Complaint plausibly support the inference that Officer Merrell acted with a purpose to cause harm.

Officer Merrell's dangerous pursuit of Douglass in defiance of a direct order from his supervisors earlier that day to not pursue any dirt bikes could support an inference that Officer Merrell acted with intent to harm. Undeterred by his supervisors' direct order, Officer Merrell pursued Douglass for eight to ten minutes, at 60 miles per hour, in the middle of the afternoon, near a major transportation center, and through densely populated areas with clearly marked pedestrian crosswalks. There was no urgency to pursue Douglass. In fact, Officer Merrell was specifically ordered *not* to pursue him. Officer Merrell's dangerous and unauthorized pursuit of Douglass could support an inference that Officer Merrell acted with the requisite intent to harm. *See, e.g.*, *Johnson v. Balt. Police Dep't*, No. 18-2375, 2020 U.S. Dist. LEXIS 61052, at *36-37 (D. Md. Apr. 7, 2020) (finding that plaintiffs had plausibly alleged a purpose to cause harm where, "without observing any suspicious or ongoing criminal conduct," officers intentionally misused a police vehicle to "spe[e]d after [plaintiffs] down residential streets, running stop signs in five different intersections, without ever activating their vehicles' emergency equipment"); *McGowan v. Cnty. of Kern*, No. 15-01365, 2018 U.S. Dist. LEXIS 96236, at *28-29 (E.D. Cal. June 7, 2018) (finding that plaintiff had plausibly alleged a purpose to cause harm where officer drove through "an intersection [with no visibility] against a red light travelling at 85 miles per hour" even though there was no "necessity and urgency" that the officer respond to the call in *10 this manner and there was "virtual certainty that he would kill someone and for a reason other than a legitimate law enforcement objective.").

Officer Merrell's repeated attempts to conceal, coverup or simply lie about the circumstances of his unauthorized pursuit of Douglass also support an inference that he acted with a purpose to cause harm. Plaintiffs allege that Officer Merrell actively and repeatedly attempted to conceal his pursuit of Douglass from his supervisors. When he crossed into Upper Darby, Officer Merrell did not notify his supervisors and he stopped broadcasting his location over police radio. When Officer Merrell ended his pursuit of Douglass, he re-entered Philadelphia and did not contact his supervisors, police radio, or Upper Darby police about the pursuit. His supervisors only learned of the pursuit when they were contacted by Upper Darby police. Then, when first confronted by his supervisors, Officer Merrell denied the pursuit altogether. When confronted a second time by his supervisors, Officer Merrell admitted only to pursuing Douglass for eight city blocks. Officer Merrell even lied about the pursuit when completing official police memoranda.

These facts support a plausible inference that Officer Merrell acted with the requisite intent to harm. *See, e.g.*, *Johnson*, 2020 U.S. Dist. LEXIS 61052, at *36-37 (finding that plaintiffs' plausible allegation that officers had intentionally misused their vehicle was further "fortified" by the allegation that the officers had also "falsified police reports" to justify their pursuit after the fact); *Knox v. City of Blue Ash*, No. 08-577, 2009 U.S. Dist. LEXIS 91639, at *12-13 (S.D. Ohio Sep. 30, 2009) (finding that plaintiff had plausibly alleged a purpose to cause harm where officer repeatedly lied to justify his pursuit); *Black v. City of Blue Ash*, No. 08-00584, 2009 U.S. Dist. LEXIS 23751, at *17 (S.D. Ohio Mar. 23, 2009) (same). Moreover, *11 Officer Merrell's repeated lies suggests that his pursuit of Douglass did not have a "legitimate" law enforcement objective. *See Lewis*, 523 U.S. at 836; *Davis*, 190 F.3d at 169.

Accordingly, the Amended Complaint's factual allegations support a plausible theory that Officer Merrell acted with an intent to cause harm. At this juncture, we will permit Plaintiffs to proceed on a Section 1983 claim against Officer Merrell.

## IV. CONCLUSION

For the foregoing reasons, Defendant Officer Dwayne Merrell's Motion to Dismiss Amended Complaint will be denied.

An appropriate Order follows.

**BY THE COURT:**

*/s/ R . Barclay Surrick*

**R. BARCLAY SURRICK**, J.

casetext
Part of Thomson Reuters